# Exhibit A

# Teaneck Board of Education

Home

< Prev    Next >

To Regulation

Search District Policies

District Policies TOC

## District Policy

### 0167 - PUBLIC PARTICIPATION IN BOARD MEETINGS

Section: Bylaws
Date Created: March 2012
Date Edited: May 2016

The Board of Education recognizes the value of public comment on educational issues and the importance of allowing members of the public to express themselves on school matters of community interest.

In order to permit the fair and orderly expression of such comment, the Board shall set aside a portion of every Board meeting, the length of the portion to be determined by the Board, for public comment on any school or school district issue that a member of the public feels may be of concern to the residents of the school district.

Public participation shall be governed by the following rules:

1. A participant must be recognized by the presiding officer and must preface comments by an announcement of his/her name, municipality, residence, and group affiliation, if applicable;

2. Each statement made by a participant shall be limited to (not less than three) 3 minutes' duration;

3. No participant may speak more than once on the same topic until all others who wish to speak on that topic have been heard;

4. All statements, questions, or inquiries shall be directed to the presiding officer and any questions or inquiries directed by a participant to another Board member shall be redirected to the presiding officer who shall determine if such statement, question, or inquiry shall be addressed by the presiding officer on behalf of the Board or by the individual Board member

5. The presiding officer may:

   a. Interrupt, warn, and/or terminate a participant's statement, question, or inquiry when it is too lengthy;

   b. Interrupt and/or warn a participant when the statement, question, or inquiry is abusive, obscene, or may be defamatory;

   c. Request any person to leave the meeting when that person does not observe reasonable decorum;

   d. Request the assistance of law enforcement officers in the removal of a disorderly person when that person prevents or disrupts a meeting with an act that obstructs or interferes with a meeting;

   e. Call for a recess or an adjournment to another time when the lack of public decorum interferes with the orderly conduct of the meeting; and

   f. Waive these rules when necessary for the protection of privacy or to maintain an orderly operation of the Board meeting

N.J.S.A. 2C:33-8
N.J.S.A. 10:4-12

Adopted:  14 March 2012
Revised:  11 May 2016



# Exhibit B

![FIRE - Foundation for Individual Rights and Expression]

November 27, 2023

Mark A. Tabakin
Weiner Law Group LLP
629 Parsippany Road
P.O. Box 0438
Parsippany, New Jersey 07054

*Sent via U.S. Mail and Electronic Mail (mtabakin@weiner.law)*

Dear Mr. Tabakin:

The Foundation for Individual Rights and Expression (FIRE), a nonpartisan nonprofit dedicated to defending freedom of speech,[1] is concerned by the Teaneck Public Schools Board of Education's restriction of public comments about the superintendent's statement on Hamas's October 7 attack on Israel. The comments were relevant to matters before the Board and fully protected by the First Amendment. While the Board may prevent actual disruption and prohibit unprotected speech, it lacks authority to limit comments to what it subjectively considers respectful or appropriate. For that and the reasons that follow, FIRE calls on the Board to reform its policies and practices to comply with its constitutional obligations.

## I.    Board of Education Restricts Public Criticism of Superintendent's Statement on Hamas Attack

As required by New Jersey law, the Teaneck Board of Education sets aside a portion of each of its meetings for "public comment on any school or school district issue that a member of the public feels may be of concern to the residents of the school district."[2] District policy also permits the presiding officer to "[i]nterrupt and/or warn a participant when the statement, question, or inquiry is abusive, obscene, or may be defamatory," and to "[r]equest any person to leave the meeting when that person does not observe reasonable decorum."[3]

Following Hamas's October 7 attack on Israel, Superintendent André D. Spencer wrote students' families referring to "the latest incidents in the cycle of violence in the Middle East"

---

[1] You can learn more about FIRE's mission and activities at thefire.org. FIRE takes no position on the Israel-Gaza conflict or any other political or social question beyond the importance of freedom of expression and individual rights.

[2] TEANECK PUB. SCHS. BD. OF EDUC., DISTRICT POLICY 0167 - PUBLIC PARTICIPATION IN BOARD MEETINGS, https://bit.ly/3G93Xga [https://perma.cc/T9SU-J745]; *see also* N.J. STAT. § 10:4-12(a).

[3] *Id.*

and "recogniz[ing] the fear, grief, and pain that our community is experiencing."[4] The letter called for open dialogue to "gain a comprehensive understanding of the complex factors impacting our world" and offered counseling services for those affected by the events. It later became a subject of many public comments—supportive and critical—at the October 18, 2023, Board meeting.

The Board, however, repeatedly cut off commenters who described Hamas's actions to underscore why they thought Superintendent Spencer should have issued a stronger statement condemning the attack:

- One commenter, referring to the statement, said, "You can condemn Hamas unequivocally and you can condemn those actions unequivocally without taking a side in the conflict or even touching the overall conflict, unless of course you're trying to appease people who actually think that the raping and murdering and pillaging of the community is appropriate." [5] Board Vice President Victoria Fisher immediately interjected, "Excuse me we have an audience with children and students so I just ask that speakers be respectful of that audience. We're aware of the news."

- While criticizing the statement, a commenter asked rhetorically, "How would you feel if Indigenous people in our country came into your homes at 6 a.m., at 7 a.m., and pulled your kids out of their beds and then shot you in front of them?" [6] Vice President Fisher interjected, "I'm going to remind you that there are students and children," adding that "facts don't need to be repeated, they're on the record."

- Vice President Fisher cut off another commenter who, objecting to the district taking a "neutral" stance on the attack, said, "Terrorism is not neutral. Beheading babies, tying them together, shooting them between their eyes, that's not neutral. Raping women, that's not neutral."[7]

- A commenter objected to Superintendent Spencer's reference to the "unfortunate situation in the Middle East" and said, "Missing the bus is an unfortunate situation. Hanging babies from a shower rod and shooting them between the eyes is not an unfortunate situation." [8] Vice President Fisher interrupted her and said, "There is no need to reiterate those details." Board President Sebastian Rodriguez added, "Alright, we're either going to follow the rules or we're going to end this right now."

- Another commenter, Keith Kaplan, called on the district to revise its statement and condemn Hamas.[9] "This is the week to talk about the savagery, the inhumanity that was perpetrated by a terrorist group on innocent civilians who were butchered, who were raped, who were mutilated, who were beheaded, and worse," Kaplan said before Vice

---

[4] Letter from André D. Spencer, Superintendent of Schools, Teaneck Pub. Schs., to Teaneck families (undated), https://bit.ly/3usJT6d [https://perma.cc/G9BJ-VNH6].

[5] Teaneck Board of Education, *October 18, 2023 Regular Public Meeting*, EDUVISION (Oct. 19, 2023), at 16:55, https://bit.ly/3Rankfn.

[6] *Id.* at 50:16.

[7] *Id.* at 54:35.

[8] *Id.* at 1:21:57.

[9] *Id.* at 1:49:57.

President Fisher cut him off for not following the "ground rules." Kaplan continued, "Imagine for a moment these heinous acts were committed by any group in any other place. Raping, butchering, beheading, setting aflame some thousand people." President Rodriguez interrupted again, but Kaplan went on, "Imagine any politician anywhere responding to those acts, those outrageous crimes, calling them incidents in a cycle of violence. You are noncommittal. It begs the question as to whether our schools operate in a value-free zone — a value-free zone where torture and rape are relative." President Rodriguez told Kaplan, "You need to stop now," and the Board cut his mic and had him removed from the lectern. Moments later, Vice President Fisher says, "Keep your politics out of it."

President Rodriguez said the meeting was a "forum for decency" and directed commenters to not make "graphic comments."[10] Yet several commenters who supported Superintendent Spencer's statement—or criticized it for not acknowledging the plight facing Palestinians— were free to make (or repeat others') comments about murder, killing of children, rape, war, and genocide.

On November 15, the Weiner Law Group sent Kaplan a letter on behalf of the Board claiming his conduct at the October 18 meeting was "disruptive and crossed the boundaries of constructive dialogue."[11] The letter said the Board "may prohibit profane or abusive language having no other purpose than to be threatening" and "will not allow any speaker to commandeer public participation for personal and/or private grievances that have no nexus to the school community." The letter further said public participation at meetings "must be done in a manner that respects the rights and perspectives of others" and threatened to remove and/or ban Kaplan from future meetings if he violated the Board's "decorum guidelines."

## II.    The Teaneck Board of Education's Restrictions on Public Comment Violate the First Amendment

The First Amendment protects Teaneck parents and citizens when they speak during public comment periods at Board meetings.[12] A Board meeting is, at a minimum, a limited public forum, which means the Board may restrict the content of commenters' speech only when those restrictions are viewpoint-neutral *and* reasonable in light of the forum's purpose.[13] For example, the Board has the authority to cap the amount of time reserved for each public comment and to limit public comment to "any school or school district issue that a member of the public feels may be of concern to the residents of the school district." But by enforcing

---

[10] *Id.* at 1:26:08, 2:30:50.

[11] Letter from Mark A. Tabakin, Member of the Firm, Weiner Law Group LLP, to Keith Kaplan (Nov. 16, 2023) (on file with author).

[12] *City of Madison, Joint Sch. Dist. No. 8 v. Wisc. Emp. Rels. Comm'n*, 429 U.S. 167, 174–76 (1976) (recognizing public's right to speak at school board meetings "when the board sits in public meetings to conduct public business and hear the views of citizens").

[13] *See Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995); *Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 280 (3d Cir. 2004). Whatever type of public forum is created by the Board's public comment periods, it is well-established viewpoint discrimination is impermissible in *any* forum. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 60–62 (1983).

4

vague "decorum" rules, the Board inhibits the "free flow of ideas and opinions on matters of public interest and concern" that lies at "the heart of the First Amendment,"[14] and in doing so exceeds constitutional limits on the Board's authority.

### A.    The Board's regulation of public comments at the October 18 Board meeting was arbitrary and viewpoint discriminatory.

The threat to free speech posed by the Board's vague and overbroad policies was on full display at the October 18 meeting, where the enforcement of its rules varied based on the speaker's views. Such viewpoint discrimination is an "egregious" form of censorship, and the "government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."[15] Moreover, "allowing a viewpoint to be offered on some occasions without interruption does not prove the policy viewpoint neutral. Indeed, selective enforcement of a policy only when a presiding officer is feeling provoked does not help to support the policy's constitutionality."[16]

At the October 18 meeting, the Board repeatedly cut off speakers who described Hamas's actions to support their arguments that Superintendent Spencer's statement about the attack was inadequate. The Board purported to appeal to decorum and "decency" and the presence of children in disallowing "graphic comments," but permitted similar comments from those who supported the superintendent or spoke from pro-Palestinian perspectives.

For example, the Board cut off a commenter who referred to Hamas's "raping and murdering and pillaging," but allowed another commenter to say: "These people talking about raping and piling bodies on top of each other, that happened in the Holocaust. And if they're having PTSD for what they're doing to the Muslim community in Palestine, that's something they need to seek mental health counseling for." [17] The Board also interrupted a commenter who rhetorically asked how others would feel if "Indigenous people in our country . . . pulled your kids out of their beds and then shot you in front of them." And yet, another commenter freely opined that Israel's "dehumanizing and genocidal actions" and the "propaganda surrounding them have spread all the way to us, where kids are stabbed 26 times just for being Palestinian, where women are run over just for wearing a hijab."[18] The Board also repeatedly told speakers discussing the Hamas attack to refrain from repeating details "on the record" or mentioned by others, but permitted other speakers to repeat previous statements on subjects such as the killing of a woman wearing hijab and Israel cutting off food, water, and electricity to Gaza.[19]

---

[14] *Hustler Magazine, Inc. v. Falwell*, 485 U. S. 46, 50 (1988).

[15] *Rosenberger*, 515 U.S. at 829.

[16] *Marshall v. Amuso*, 571 F. Supp. 3d 412, 423 (E.D. Pa. 2021).

[17] *October 18, 2023 Regular Public Meeting*, *supra* note 5, at 33:17.

[18] *Id.* at 46:58.

[19] At 1:41:14, a commenter said: "Israel is preparing its ground invasion of Gaza and indiscriminately bombing Palestinians killing thousands including many children. . . . Will you call this 'human rights' when they're cutting all the water and the basic necessity [of] the Palestinians? . . . I'm not going to say and repeat like everyone else the mother that witnessed her 6 years old being killed in front of her, the college student who was in critical condition in St. Joseph . . . . But the woman that had to die simply by walking on the sidewalk

The Board's selective enforcement of its rules appeared to favor or disfavor certain views. Even if its actions were not motivated by speakers' views, they were arbitrary and untethered from clear, objective, and sufficiently precise standards, as discussed below. The Board should have allowed *all* the above comments without interruption. Teaneck citizens "must be able to provide their feedback and critiques, even if some people, Board members included, find that distasteful, irritating, or unfair."[20]

### B.    The Board's restrictions on public comment are overbroad.

The Board's restrictions on public comment are unconstitutionally overbroad and unreasonable in light of the forum's purpose of allowing "public comment on any school or school district issue that a member of the public feels may be of concern to the residents of the school district."[21] A regulation is overbroad if it "prohibits a substantial amount of protected speech . . . not only in an absolute sense, but also relative to the statute's plainly legitimate sweep."[22] Recently, in *Marshall v. Amuso*, a federal court in Pennsylvania blocked enforcement of a school board's bans on "abusive" and "inappropriate" public comments in part because the bans reached protected speech relevant to board business.[23]

Likewise, the Teaneck Board of Education's prohibitions on "abusive" and "graphic" comments and those that fail to "observe reasonable decorum" or "respect" others' perspectives are both overbroad and unreasonable because they prohibit a vast amount of protected speech, including the October 18 comments about Superintendent Spencer's letter. Those comments were pertinent to school district matters—the very speech for which the public comment period is intended to provide a forum. *Some* speech that the Board deems inappropriate or a breach of decorum could be subject to prohibition, but only if it actually disrupts the meeting (such as by exceeding the time limit for comments) or falls into one of the few, narrowly defined categories of expression that receive no First Amendment protection, like true threats.[24] But no comment within the prescribed time limits at the October 18 meeting constituted a true threat or was otherwise unprotected.

---

because she had a hijab on, she's Muslim." At 2:42:27, a speaker commented, "After the people of Gaza have been cut off from food, water, and electricity in violation of international law, Teaneck speaks now and is quick to introduce a resolution that further dehumanizes the Palestinians." And another commenter echoed these sentiments at 2:53:28: "What's happened to the Palestinian people is genocide. We need to call it what it is. To deny people food, water, electricity, is to condemn them to death. To bomb their hospitals."

[20] *Mama Bears of Forsyth Cnty. v. McCall*, 642 F. Supp. 3d 1338, 1350 (N.D. Ga. 2022).

[21] DISTRICT POLICY 0167 - PUBLIC PARTICIPATION IN BOARD MEETINGS, *supra* note 2.

[22] *United States v. Williams*, 553 U.S. 285, 292 (2008).

[23] 571 F. Supp. 3d 412, 425–26 (E.D. Pa. 2021) (noting the Supreme Court, in *Gooding v. Wilson*, 405 U.S. 518 (1972), has found the term "abusive" overbroad in other contexts, reaching speech outside the "fighting words" category of unprotected speech); *see also Ison v. Madison Loc. Sch. Dist. Bd. of Educ.*, 3 F.4th 887 (6th Cir. 2021) (invalidating as unconstitutional a school board's restrictions on "abusive," "personally directed," and "antagonistic" comments).

[24] *See United States v. Alvarez*, 567 U.S. 709, 717 (2012). A "true threat" is a statement through which "the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003).

The presence of minors at the Board's meetings does not justify censorship of public comments. The First Amendment does not allow the government to limit discourse among adults "to that which would be suitable for a sandbox."[25] The Supreme Court has firmly rejected the idea that the government has a "free-floating power to restrict the ideas to which children may be exposed."[26] Just as the government may not childproof public libraries because both adults and children use them,[27] neither may it limit comments at school board meetings simply because children are present. As the *Marshall* court stated, "However laudable the desire to be conscientious when it comes to adult behavior as may be witnessed by children, the School Board cannot hide behind the possible presence of children to justify an unconstitutional policy."[28] Such restrictions are not only inherently vague and subjective, but also hinder speakers' ability to address sensitive topics and to communicate their points in the manner they deem most effective.

Limiting a speaker's comment simply because a different speaker referred to the same facts is also unreasonable. Some speakers may need to refer to facts mentioned by another speaker to present their own arguments intelligibly. A speaker may wish to express agreement with and reinforce others' points by restating key facts. When multiple speakers make similar arguments and emphasize the same facts, they communicate a message that is stronger than that delivered by any one of them alone. Restricting this practice undermines the public comment period's purpose of soliciting and gauging community sentiment.

### C.    The Board's decorum rules are unconstitutionally vague.

Even setting aside the Board policies' overbreadth and viewpoint-discriminatory enforcement, they are unconstitutionally vague because people "of common intelligence must necessarily guess at [their] meaning."[29] Regulations must "provide explicit standards for those who apply them" to prevent "arbitrary and discriminatory enforcement."[30] Even in a limited public forum, where "some degree of discretion in how to apply a given policy is necessary, 'that discretion must be guided by objective, workable standards' to avoid the moderator's own beliefs shaping his or her 'views on what counts' as a policy violation."[31] This "need for specificity is especially important where . . . the regulation at issue is a content-based regulation of speech" as vagueness has an "obvious chilling effect on free speech."[32]

The *Marshall* court blocked enforcement of a school board's prohibitions on "abusive" and "inappropriate" comments on overbreadth *and* vagueness grounds, holding these terms are

---

[25] *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 74 (1983).

[26] *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 794 (2011) (law restricting sale or rental of violent video games to minors violated First Amendment); *see also Erznoznik v. Jacksonville*, 422 U.S. 205, 213–14 (1975) ("Speech that is neither obscene as to youths nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from ideas or images that a legislative body thinks unsuitable for them.").

[27] *See, e.g.*, *Mainstream Loudoun v. Bd. of Trustees of Loudoun*, 24 F. Supp. 2d 552 (E.D. Va. 1998).

[28] 571 F. Supp. 3d at 425.

[29] *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926).

[30] *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

[31] *Marshall*, 571 F. Supp. 3d at 424 (quoting *Minnesota Voters All. v. Mansky*, 138 S. Ct. 1876, 1888 (2018).

[32] *Id.* (quoting *Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 266 (3d Cir. 2002)).

"irreparably clothed in subjectivity" because their interpretation varies from "speaker to speaker, and listener to listener." [33] The court noted the absence of "guidance or other interpretive tools to assist in properly applying" the policies.[34] The nebulous policy language enabled board members' personal sentiments about a speaker's views to shape enforcement.

For the same reasons, the Teaneck Board of Education's vague "reasonable decorum" requirement and bans on "abusive" and "graphic" comments cannot stand. Nor may the Board limit comments to those it deems sufficiently "constructive," respectful of the "perspectives of others," or appropriate for children. These determinations are also "irreparably clothed in subjectivity," creating an unacceptable risk of arbitrary and viewpoint-discriminatory enforcement—a risk that materialized at the October 18 Board meeting.

### III.    Conclusion

Public comment periods offer the citizenry opportunities to share candid feedback directly with their elected representatives. The First Amendment protects this vital democratic function, restraining school boards, city councils, and other government assemblies from censoring comments they do not want to hear. While the Teaneck Board of Education is authorized to stop disruptive conduct—such as speakers going over time or persistently speaking on issues wholly unrelated to the school district—it cannot lawfully stretch the meaning of "disruptive" to censor or remove speakers based on subjective judgments that their remarks are inappropriate or disrespectful.

FIRE therefore calls on the Teaneck Board of Education to bring its public comment policies in line with the First Amendment, and to ensure constituents are free to comment at Board meetings without facing unconstitutional censorship. FIRE would be pleased to work with the Board to ensure its policies and practices meet these criteria.

We respectfully request a substantive response to this letter no later than December 11, 2023.

Sincerely,

Aaron Terr
Director of Public Advocacy

Cc:    Sebastian Rodriguez, President, Teaneck Board of Education
Victoria Fisher, Vice President, Teaneck Board of Education
André D. Spencer, Ed.D., Superintendent of Schools

---

[33] *Id.*

[34] *Id.*

# Exhibit C



January 8, 2024

Mark A. Tabakin
Weiner Law Group LLP
629 Parsippany Road
P.O. Box 0438
Parsippany, New Jersey 07054

*Sent via U.S. Mail and Electronic Mail (mtabakin@weiner.law)*

Dear Mr. Tabakin:

FIRE is disappointed to have not received a response to our November 27 letter regarding the Teaneck Public Schools Board of Education's unconstitutional restriction of public comments at its October 18 meeting—and even more disappointed to learn it doubled down on that censorship by adopting vague and viewpoint-discriminatory public comment guidelines.[1]

The new guidelines state that the Board president "may interrupt or terminate any individual's speaking privilege if the speaker's comments are excessively loud, profane, vulgar, inflammatory, threatening, abusive, or disparaging language or racial or ethnic slurs, disruptive, obscene, or otherwise in violation of applicable law." As explained in our prior letter (enclosed), the Board may prohibit threats and disruptive conduct and encourage respectful discourse, but it cannot impose vague, overbroad, and easily abused restrictions on comments in the name of decorum—including undefined bans on "vulgar," "inflammatory," "abusive," or "disparaging" language. As the Supreme Court has held, restricting "disparaging" speech impermissibly discriminates based on viewpoint.[2] Board members may personally consider some criticisms disparaging, inflammatory, or otherwise objectionable, but that alone does not strip them of constitutional protection.

The Board therefore must not delay amending its public comment policies and guidelines, which violate the First Amendment rights of Teaneck residents and needlessly expose the Board to liability. The Supreme Court has been clear that the "loss of First Amendment

---

[1] TEANECK PUB. SCHS., BOARD OF EDUCATION – PUBLIC COMMENT GUIDELINES (DISTRIBUTED), https://filecabinet7.eschoolview.com/560703AE-3BF2-44D3-B5F9-CAE9D23F7E86/50bed7f8-8ddb-45e1-bd73-13c53cc9b98f.pdf.

[2] *Matal v. Tam*, 582 U.S. 218, 243 (2017); *see also Iancu v. Brunetti*, 139 S. Ct. 2294, 2300 (2019) (determination of whether something is "immoral" or "scandalous" is viewpoint-based because it "distinguishes between two opposed sets of ideas: those aligned with conventional moral standards and those hostile to them; those inducing societal nods of approval and those provoking offense and condemnation").

2

freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."[3] FIRE stands ready to assist the Board in remedying the unconstitutional defects in its current approach while helping to find constitutional ways to ensure its meetings proceed without disruption.

We respectfully request a substantive response no later than January 18, 2024.

Sincerely,

Aaron Terr
Director of Public Advocacy

Cc:     Clara Williams, President, Teaneck Board of Education
        Kassandra Reyes, Vice President, Teaneck Board of Education
        Victoria Fisher, Trustee, Teaneck Board of Education
        André D. Spencer, Ed.D., Superintendent of Schools

Encl.

---

[3] *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

**FIRE**
Foundation for Individual
Rights and Expression

March 15, 2024

Mark A. Tabakin
Weiner Law Group LLP
629 Parsippany Road
P.O. Box 0438
Parsippany, New Jersey 07054

*Sent via U.S. Mail and Electronic Mail (mtabakin@weiner.law)*

Dear Mr. Tabakin:

Thank you for your responses to FIRE's November 27, 2023, and January 8, 2024, letters concerning the Teaneck Public Schools Board of Education's restriction of input at its October 18 meeting and the Board's public comment guidelines. Your January 8 response indicated you would review FIRE's latest letter with the Board. Accordingly, we are disappointed to have not heard further regarding the need for the Board to revise its viewpoint-discriminatory policies and guidelines to avoid violating Teaneck citizens' First Amendment rights going forward.

Your December 19 letter characterized the Board's public comment period as a limited public forum, which means any speech restriction must be well-defined, viewpoint-neutral, and reasonable in light of the forum's purpose[1]—criteria the public comment limits at the October 18 meeting failed to meet. This failure is underscored by your claim that the Board, despite "intend[ing] to be viewpoint neutral," set about "addressing whether, in the context of a school board meeting attended by and viewed by children, certain language was unnecessarily graphic and—as to those children—potentially harmful." But as FIRE explained previously, the presence of minors at a meeting does not grant the Board license to shut down whatever comments it deems inappropriate for those under 18 to hear.[2]

In short, the First Amendment bars government actors from policing speech under such a subjective and vague standard, as it both fails to give speakers reasonable notice of what speech

---

[1] *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995); *Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 280 (3d Cir. 2004).

[2] *See, e.g.*, *Marshall v. Amuso*, 571 F. Supp. 3d 412, 425 (E.D. Pa. 2021) ("However laudable the desire to be conscientious when it comes to adult behavior as may be witnessed by children, the School Board cannot hide behind the possible presence of children to justify an unconstitutional policy."). *Cf. Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 794 (2011) (rejecting any governmental "free-floating power to restrict the ideas to which children may be exposed").

is allowed and inevitably facilitates arbitrary or viewpoint-discriminatory enforcement.[3] And that is exactly what happened on October 18. The Board repeatedly cut off commenters critical of the superintendent when they described Hamas's actions in "graphic" terms, while those supportive of the superintendent and/or holding pro-Palestinian views were free to indulge in similar or even more-explicit descriptions—including one who said that "kids are stabbed 26 times just for being Palestinian" and that "women are run over just for wearing a hijab."

Whatever the Board's intentions, its decisions regarding what comments to allow were not viewpoint neutral. Moreover, its actions demonstrated why its unwritten rule against comments it considers inappropriate for children is unworkable and unconstitutional.

Your December 19 letter also claims the Board attempted to address the "manner in which members of the public comported themselves," which you characterized as "overtly aggressive/threatening" in a manner that purportedly "created actual and imminent disruption to the meeting." Yet none of the censored commenters threatened violence. While some might have spoken passionately, that does not justify restricting their speech. Meanwhile, other commenters, whom the Board did *not* interrupt, also raised their voices and could likewise be viewed as angry or "aggressive," further demonstrating how vague decorum rules allow arbitrary and viewpoint-based enforcement.

As the Supreme Court has made clear, debate on public issues "should be uninhibited, robust, and wide-open" and "may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials."[4] The Board can certainly remove commenters who make *actual* threats or who *actually* disrupt meetings by, for example, speaking beyond the allotted time. But speaking with intensity about relevant issues during the allotted comment time is not a disruption. If anyone disrupted the meeting, it was Board members who cut off commenters exercising their First Amendment rights.

The Board must take prompt action to revise its public comment rules. As discussed in FIRE's January 8 letter, the rules requiring revision include undefined, viewpoint-discriminatory, and otherwise unconstitutional bans on "vulgar," "inflammatory," "abusive," and "disparaging" language.[5] Again, we would be pleased to assist the Board in remedying the constitutional defects in its current approach while helping it find ways to ensure that its meetings can proceed without disruption.

---

[3] *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) (regulations must "provide explicit standards for those who apply them" to prevent "arbitrary and discriminatory enforcement").

[4] *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

[5] TEANECK PUB. SCHS., BOARD OF EDUCATION – PUBLIC COMMENT GUIDELINES (DISTRIBUTED), https://filecabinet7.eschoolview.com/560703AE-3BF2-44D3-B5F9-CAE9D23F7E86/50bed7f8-8ddb-45e1-bd73-13c53cc9b98f.pdf.

We respectfully request a substantive response no later than March 22, 2024.

Sincerely,

Aaron Terr
Director of Public Advocacy

Cc:    Clara Williams, President, Teaneck Board of Education
       Kassandra Reyes, Vice President, Teaneck Board of Education
       Victoria Fisher, Trustee, Teaneck Board of Education
       André D. Spencer, Ed.D., Superintendent of Schools

# Exhibit D

**TEANECK BOARD OF EDUCATION**



**Teaneck Public Schools**

**Board of Education – Public Comment Guidelines (Distributed)**

As a Board, we must serve as role models for our scholars. The way we conduct ourselves tonight can impact their civic participation in the future.

In accordance with New Jersey statute (N.J.S.A. 10:4-12), opportunities are provided for members of the public to speak, but open dialogue between the Board and the public is not part of this meeting.

The Board President is responsible for maintaining a respectful environment during public participation so that public comments can be heard and considered by the Board. The President, therefore, may interrupt or terminate any individual's speaking privilege if the speaker's comments are excessively loud, profane, vulgar, inflammatory, threatening, abusive, or disparaging language or racial or ethnic slurs, disruptive, obscene, or otherwise in violation of applicable law. Further, an individual may be cautioned that a personally directed statement may be slanderous or defaming and that the individual may be liable for his/her statement. All meetings are recorded and, therefore, statements made during public participation cannot be altered or amended and shall be included in the minutes as presented.

No person shall engage in disorderly or boisterous conduct, including the utterance of loud, physically threatening or abusive/profane/threatening/disparaging language, or other acts which disturb, disrupt, or otherwise impede the orderly conduct of any meeting and the ability of the public to hear or participate. Any person who conducts himself in the aforementioned manner shall, at the discretion of the presiding officer or a majority of the body, be requested to refrain from such conduct or be barred from further participation. If a speaker who has violated these rules refuses to step down, the Board President may ask for the individual to be removed from the meeting room and may be subject to disorderly conduct charges.

 651 Teaneck Road,     Phone: 201-833-5508

Teaneck, NJ 07666     Fax: 201-837-9468

Individuals addressing the Board should take into consideration the rules of common courtesy. The public participation portion of the meeting cannot be used to make personal attacks against a Board member, District employee, or student that are unrelated to the administration of the District.

All speakers will be allotted no more than three minutes for comment. The subject matter shall be limited to topics of public concern. Individuals may not give their time to another individual. Speakers must be present – virtually or in-person - when their names are called.

To enable as many members of the community to speak as possible, neither the Board nor the Superintendent will respond directly to any questions raised during the public input period. If you have a question or comment that requires a direct response, we encourage you to put your questions in an email to the Board secretary at tpsboequestions@teaneckschools.org.

# Exhibit E

**WORKSHOP/REGULAR PUBLIC MEETING JANUARY 22, 2025**

**I.    Salute to the Flag**

**II.   Presiding Officer's Meeting Notice Statement**

"I hereby call to order the Workshop/Regular Public Meeting of the Teaneck Board of Education, held on Wednesday, January 22, 2025, in person at Teaneck High School located at 100 Elizabeth Avenue, Teaneck, NJ 07666 and virtually via Zoom app located at the district website, at 7:00 PM. Adequate notice of this meeting has been sent to the Record and The Star Ledger, filed with the Municipal Clerk and posted on the school district website at www.teaneckschools.org, on January 9, 2025."

**III.   Roll Call**

| Board Member | Present | Absent |
|---|---|---|
| Dr. Gruber (David) | | |
| Mrs. Hosein (Nadia) | | |
| Dr. Kirshenbaum (Gerald) | | |
| Mrs. Levy (Jennifer) | | |
| Mrs. Reyes (Kassandra) - Vice President | | |
| Mr. Rodriguez (Jonathan) | | |
| Mrs. Williams (Clara) | | |
| Mr. Wolff (James) | | |
| Mr. Ha (Edward) - President | | |

| Student Board Liaison | Present | Absent |
|---|---|---|
| Blake Ricketts - 12th Grade | | |
| Angel Porras - 11th Grade | | |
| Mostafa Abouganba - 10th Grade | | |
| Matias Wouters - 9th Grade | | |

1

## IV. Reaffirmation of District Goals:

Mission: The Teaneck Public School District educates and empowers students by providing a high-quality, rigorous educational experience which prepares students for success within a diverse, global society.

Vision: The Teaneck Advantage: Educational Excellence for All

### Board Goals

GOAL 1: Teachers and administrators in the Teaneck Public Schools will further elevate academic programs by creating varied learning pathways and by improving student supports.

GOAL 2: The Teaneck Public Schools will continue to improve facilities and technology in support of 21st Century learning opportunities.

GOAL 3: The Teaneck Public Schools will execute effective communications and solidify quality relationships with educational partners within and throughout the community.

GOAL 4: The Teaneck Public Schools will create equitable and inclusive learning opportunities for all students.

GOAL 5: The Teaneck Public Schools will ensure operational excellence in hiring, developing and retaining staff.

## V. SUPERINTENDENT'S REPORT

## VI. STUDENT LIAISON REPORT

2

## VII. PUBLIC COMMENTS SESSION I: (AGENDA ITEMS ONLY)

Thank you all for being here tonight. This portion of the meeting is open to residents for comment. Residents are to state their names, addresses, and subject matter. Comments are limited to three minutes per person. The Public Comment session will last for thirty-minutes. This Public Comment session I is limited to comments on agenda items only. The Public Comment session II is open to comments on other matters of public concern. Individuals may not give their time to another individual. Groups speaking on the same topic should combine your message into one. Members of the public are discouraged from speaking negatively about an employee or a student. Do not call an employee or student by name. The Board bears no responsibility for comments made by the public. Comments regarding employees or students cannot be legally responded to by the Board. To enable as many members of the community to speak as possible, the Board will not respond directly to any questions raised during the public comment period. The Superintendent may respond to some questions at the conclusion of the public comment session. If you have a question or comment that requires a direct response, we encourage you to put your questions in an email to the Board secretary. All meetings are recorded and, therefore, statements made during public participation cannot be altered or amended and shall be included in the minutes as presented.

Motion to Open the Public Comment Session I:

Motion by Board Member_____, seconded by Board Member_____, Opened at ____P.M.

Motion to Close the Public Comment Session I:

Motion by Board Member_____, seconded By Board Member_____, Closed at _____P.M.

## VIII. BOARD COMMITTEE REPORT

- Community Relations- Trustee Nadia Hosein
- Curriculum – Trustee Gerald Kirshenbaum
- Finance & Facility – Trustee David Gruber
- Negotiations - Trustee Clara Williams
- Personnel – Trustee Jonathan Rodriguez
- Policy – Trustee Clara Williams
- Special Ed – Trustee Kassandra Reyes

3

## IX. AGENDA ITEMS (POLICY, BOARD OPS, SCHOOL CURRICULUM, F&B, PERSONNEL)

**POLICY 01 THRU 02**                                              **January 22, 2025**

1.  Policy 5520 - Demonstrations - Second Reading

    **THEREFORE BE IT RESOLVED** the Teaneck Board of Education upon the recommendation of the Superintendent approves the **SECOND READING** of the following Board Policies and Regulations listed below.
    See pages 29 - 32.

| Bylaw/Policy/Reg. No. | Topic |
|---|---|
| Policy 5520 (*Policy 5520 Version 1 attached*) | Demonstrations – (Revised) |

EXPLANATION:   Agenda item submitted by Dr. Spencer

Policy Committee Legend: *Revisions/Recommendations:*
Strauss Esmay - Red Text
Policy Committee – Blue Text
Attorney – Black Text

2.  Policies & Regulations - First Reading

**THEREFORE BE IT RESOLVED** the Teaneck Board of Education upon the recommendation of the Superintendent approves the **FIRST READING** of the following Board Policies and Regulations listed below. See page 33-87.

| Bylaw/Policy/Reg. No. | Topic |
|---|---|
| Policy 2200 | Curriculum Content - (Revised) – **Mandated** |
| Policy 3160 | Physical Examination Teaching Staff Members (Revised) – **Mandated** |
| Regulation 3160 | Physical Examination Teaching Staff Members (Revised) – **Mandated** |
| Policy 4160 | Physical Examination Support Staff Members (Revised) – **Mandated** |
| Regulation 4160 | Physical Examination Support Staff Members (Revised) – **Mandated** |
| Policy 5200 | Attendance - (Revised) - **Mandated** |
| Policy 5350 | Student Suicide Prevention (Revised) – **Mandated** |
| Policy 8420 | Emergency and Crisis Situations (Revised) – **Mandated** |
| Policy 8467 | Firearms and Weapons (Revised) – **Mandated** |
| Regulation 8467 | Firearms and Weapons (Revised) – **Mandated** |

EXPLANATION:   Agenda item submitted by Dr. Spencer

*Policy Committee Legend: \*Revisions/Recommendations:*
Strauss Esmay - Red Text
Policy Committee – Blue Text
Attorney – **BlackText**

5

## Policy Items 01 thru 02

Motion by Board Member_____, seconded by Board Member_____,

| Board Member | Yes | No | Abstain | Absent |
|---|---|---|---|---|
| Dr. Gruber (David) | | | | |
| Mrs. Hosein (Nadia) | | | | |
| Dr. Kirshenbaum (Gerald) | | | | |
| Mrs. Levy (Jennifer) | | | | |
| Mrs. Reyes (Kassandra) – Vice President | | | | |
| Mr. Rodriguez (Jonathan) | | | | |
| Mr. Wolff (James) | | | | |
| Mrs. Williams (Clara) | | | | |
| Mr. Ha (Edward) - President | | | | |

**_Board Operations 01 THRU 02_**                                          **January 22, 2025**

1.  RESOLUTION IN HONOR OF NEW JERSEY SCHOOL BOARD RECOGNITION MONTH

    **WHEREAS,** the New Jersey State Board of Education has established rigorous standards through its promulgation of the New Jersey Student Learning Standards, which set the expectations of academic achievement for nearly 1.4 million public schoolchildren and;

    **WHEREAS,** New Jersey's locally elected and appointed boards of education play a vital role in ensuring that their local school districts meet state standards and adhere to state and federal education statute and regulations, with the goal of preparing all students for college and the workplace, thereby enabling them to compete in a global economy; and

    **WHEREAS,** New Jersey's 5,000 non-partisan local board of education members and charter school trustees are public servants who dedicate their time, without pay or benefit, to the oversight of school district operations, through sound financial practices and comprehensive policies on curriculum, staffing and other areas to ensure the well-being and academic achievement of all students in the district; and

    **WHEREAS,** local boards of education, in conjunction with state education officials and local educators, have built a foundation of success that has led to New Jersey's status as a leader in student achievement, as evidenced by the National Assessment of Educational Progress scores; and

    **WHEREAS,** the New Jersey School Boards Association has declared January 2025 to be School Board Recognition Month; now,

    **THEREFORE BE IT RESOLVED** that the New Jersey State Board of Education recognizes the contributions of our state's local boards of education to the academic success of its public school students and expresses its sincere appreciation to local board of education members for their continued focus on the achievement of children throughout New Jersey; and

    **BE IT FURTHER RESOLVED** that the New Jersey State Board of Education encourages qualified New Jersey citizens to consider serving as members of their local school boards.

    EXPLANATION:   Agenda item submitted by Dr. Anaya

2.  **THEREFORE BE IT RESOLVED,** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the minutes from the following meetings:

    1.  December 18, 2024 - Regular Public Meeting

    2.  December18,2024 - Executive Session

EXPLANATION:       Agenda item submitted by Dr. Anaya

## Board Operations items 01 thru 02

Motion by Board Member_____, seconded by Board Member_____.

| Board Member | Yes | No | Abstain | Absent |
|---|---|---|---|---|
| Dr. Gruber (David) | | | | |
| Mrs. Hosein (Nadia) | | | | |
| Dr. Kirshenbaum (Gerald) | | | | |
| Mrs. Levy (Jennifer) | | | | |
| Mrs. Reyes (Kassandra) – Vice President | | | | |
| Mr. Rodriguez (Jonathan) | | | | |
| Mr. Wolff (James) | | | | |
| Mrs. Williams (Clara) | | | | |
| Mr. Ha (Edward) - President | | | | |

8

*SCHOOL OPERATIONS AND CURRICULUM 01 THRU 03*                    January 22, 2025

1.  **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves an agreement with The Community Food Bank of New Jersey for eight workshops on the topic of nutrition on January 7, 14, 21, 28 for forty students at Benjamin Franklin Middle School in an amount not to exceed $0.

    EXPLANATION:    Agenda item submitted by Dr. Scott

2.  **WHEREAS,** the Community Based Instruction (CBI) course for Autistic, Multiply Disabled and Transition classes that practice life skills (i.e. public transportation/travel, working on various job sites, and following directions) by participating in structured community outings and activities;

    **NOW THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent approves the list of Community Based Instruction locations. See page 88.

    EXPLANATION:    Agenda item submitted by Dr. Scott

3.  **THEREFORE BE IT RESOLVED**, that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the volunteers for the 2024-2025 school year pending criminal history review.

    | First Name | Last Name |
    |---|---|
    | **Bergen READS Volunteers** | |
    | Ann | Baker |
    | Cherita | Batiste |
    | Laraine | Chaberski |
    | Martin | Schwam |
    | Joangie | Torres |
    | Ray | Sahadi |
    | **FORUM Volunteer** | |
    | Indiana | Suriel |

    EXPLANATION:    Agenda item submitted by Dr. Spencer

## School Operations and Curriculum 01 thru 03

Motion by Board Member_____, seconded by Board Member_____,

| Board Member | Yes | No | Abstain | Absent |
|---|---|---|---|---|
| Dr. Gruber (David) | | | | |
| Mrs. Hosein (Nadia) | | | | |
| Dr. Kirshenbaum (Gerald) | | | | |
| Mrs. Levy (Jennifer) | | | | |
| Mrs. Reyes (Kassandra) – Vice President | | | | |
| Mr. Rodriguez (Jonathan) | | | | |
| Mr. Wolff (James) | | | | |
| Mrs. Williams (Clara) | | | | |
| Mr. Ha (Edward) - President | | | | |

10

**_FINANCE AND BUDGET 01 THRU 25_**                                 **January 22, 2025**

1.  **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the **amended** payments of the claims for the months of August 2024 - November 2024.

**AUGUST 2024**

| Fund | Amount |
| --- | --- |
| General Fund | $6,358,352.25 |
| Capital Outlay | $507,237.27 |
| Special Revenue | $576,620.90 |
| Community Education | $95,906.15 |
| Food Service | $12,302.32 |
| **Total Payments** | **$7,550,418.89** |

**SEPTEMBER 2024**

| Fund | Amount |
| --- | --- |
| General Fund | $11,007,294.30 |
| Capital Outlay | $902,209.85 |
| Special Revenue | $765,080.33 |
| Community Education | $27,913.56 |
| Food Service | $46,261.13 |
| **Total Payments** | **$12,748,759.17** |

**OCTOBER 2024**

| Fund | Amount |
| --- | --- |
| General Fund | $7,973,972.60 |
| Capital Outlay | $450,174.88 |
| Special Revenue | $1,195,615.59 |
| Community Education | $81,981.72 |
| Food Service | $42,559.99 |
| **Total Payments** | **$9,744,304.78** |

**NOVEMBER 2024**

| Fund | Amount |
| --- | --- |
| General Fund | $8,046,601.99 |
| Capital Outlay | $103,469.74 |
| Special Revenue | $764,519.18 |
| Community Education | $79,592.88 |
| Food Service | $469,261.07 |
| **Total Payments** | **$9,463,444.86** |

EXPLANATION:    Agenda item submitted by Dr. Anaya

11

2. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the payments of the claims for the month of December 2024.

| Fund | Amount |
|------|--------|
| General Fund | $11,766,381.80 |
| Capital Outlay | $221,733.28 |
| Special Revenue | $657,497.26 |
| Community Education | $65,835.22 |
| Food Service | $189,004.69 |
| **Total Payments** | **$12,900,452.32** |

EXPLANATION:  Agenda item submitted by Dr. Anaya

3. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the payments of the claims for the period of January 2, 2025 - January 16, 2025.

| Fund | Amount |
|------|--------|
| General Fund | $4,648,371.24 |
| Capital Outlay | $96,325.78 |
| Special Revenue | $323,037.04 |
| Community Education | $40,580.60 |
| Food Service | $8,408.88 |
| **Total Payments** | **$5,116,723.54** |

EXPLANATION:  Agenda item submitted by Dr. Anaya

4. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, has received and accepts the financial reports of the **Board Secretary and Treasurer of School** Monies for the months ending August, September and October 2024 and certifies that the reports indicate that no major account or fund is over expended in violation of N.J.A.C. 6:20-2.13 and that sufficient funds are available to meet the district's financial obligations for the remainder of the school year. See page 90.

EXPLANATION:  Agenda item submitted by Dr. Anaya

5. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, has received and accepts the financial reports of the **Board Secretary** for the months ending November and December 2024 and certifies that the reports indicate that no major account or fund is over expended in violation of N.J.A.C. 6:20-2.13 and that sufficient funds are available to meet the district's financial obligations for the remainder of the school year.

EXPLANATION:  Agenda item submitted by Dr. Anaya

12

6. **WHEREAS** N.J.S.A.18A:22-8.1 authorizes a school district to transfer amounts among line items and program categories;

**THEREFORE BE IT RESOLVED**, that the Teaneck Board of Education, upon recommendation of the Superintendent, approves the line item transfers for the months of September - December 2024. See pages 92-100.

EXPLANATION:   Agenda item submitted by Dr. Anaya

7. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education affirms its Membership, in the Bergen County Region V Council for Special Education for the 2025-2026 school year; does hereby accept, adopt, and agree to comply with the Region V Bylaws; designates, Dr. Andre Spencer, Superintendent, as its representative to Region V; and empowers him to cast all votes and take all other actions necessary to represent its interest in Region V.

EXPLANATION:   Agenda item submitted by Dr. Anaya

8. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the following workshops for the Ma'ayanot High School: Five (5) virtual "Lunch and Learn" professional development sessions January 14, 2025; February 18, 2025; March 19, 2025; May 20, 2025 and June 10, 2025 at a rate of $1,000 per session for a total amount not to exceed $5,000. The workshops will be provided from The Windward Institute. Funded from Title IIA non-public allocation #20-270-200-580-92-606-000.

EXPLANATION:   Agenda item submitted by Dr. Anaya

9. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the following final credit Change Order #3. See page 101.

**PROJECT NO.**: GC-03
**ARCHITECT**: Di Cara Rubino
**PROJECT**: Electrical Upgrade at Teaneck High School
**CONTRACTOR**: TSUJ Corporation
**DATE**: 1/22/2025

| CONTRACTOR | DESCRIPTION | ORIGINAL CONTRACT AMOUNT | CHANGE ORDER AMOUNT | ADJUSTED CONTRACT AMOUNT |
|---|---|---|---|---|
| TSUJ Corp | Credit of unused allowances Allowance #1 = ($-12,147.25) Allowance#2 = ($-10,000.00) | $666,577.00 | (-$22,147.25) | $644,429.75 |

EXPLANATION:   Agenda item submitted by Mr. D'Angelo

13

10.                    RESOLUTION OF THE BOARD OF EDUCATION OF THE TOWNSHIP OF
                       TEANECK IN THE COUNTY OF BERGEN, NEW JERSEY AUTHORIZING
                       CERTAIN ACTIONS IN CONNECTION WITH PROPOSED SCHOOL
                       FACILITIES PROJECTS

**WHEREAS**, The Board of Education of the Township of Teaneck in the County of Bergen, New Jersey (the "Board" when referring to the governing body and the "School District" when referring to the territorial boundaries governed thereby), seeks to submit to the voters school facilities projects (the "Projects");

**WHEREAS**, the School District will seek Debt Service Aid with respect to the Projects; and

**WHEREAS**, the Board now seeks to take the initial steps in order to proceed with the planning and authorization of: (i) the Projects; and (ii) a School District election at which time a bond referendum authorizing the Projects shall be presented to the voters of the School District.

**NOW, THEREFORE, BE IT RESOLVED** BY THE BOARD OF EDUCATION OF THE TOWNSHIP OF TEANECK IN THE COUNTY OF BERGEN, NEW JERSEY, as follows:

Section 1. In accordance with the requirements of Section 6A:26-5.1 through 6A:26-5.3 of the New Jersey Administrative Code, if warranted, the Board hereby authorizes and/or ratifies the *preparation* of Schematic Plans and Educational Specifications, by the Board's architect of record (the "Architect"). in connection with the Projects. The Board, if warranted further authorizes/ratifies and directs the Architect to submit the same to the New Jersey Department of Education and to the Bergen County Superintendent of Schools for review and approval. The Board, if warranted further authorizes and directs the submission of the Schematic Plans to the planning board for its review, to the extent required by law.

Section 2. In accordance with the requirements of Section 6A:26-2.3 of the New Jersey Administrative Code, the Board, if warranted hereby ratifies any amendments to the Long Range Facilities Plan, as necessary, to reflect the Projects and approves the submission of any such amendment to the New Jersey Department of Education.

Section 3. In accordance with the requirements of Section 6A:26-3.2 of the New Jersey Administrative Code, the Board, if warranted hereby authorizes and/or ratifies the submission of the Projects Applications and its decision seeking debt service aid for the Projects.

Section 4. With respect to the Projects, the Board, if warranted hereby authorizes and directs the Board President, the Superintendent and the Business Administrator/Board Secretary, as applicable, to execute the schematic plans and educational specifications, the amendment to the Long Range Facilities Plan, the Projects cost estimate sheets and all related Projects documents allowing submission of same to the New Jersey Department of Education.

Section 5. The Board, if warranted hereby authorizes and directs the Board President, the Superintendent, the Business Administrator/Board Secretary, the Architect, and Wilentz, Goldman &amp; Spitzer, P.A., as Bond Counsel, as applicable, to take all action required to preserve the opportunity to present the Projects to the voters via a bond referendum at a School District special election or at an annual election.

EXPLANATION:    Agenda item submitted by Dr. Anaya

14

11. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the facilities use requests listed below.

| Organization Purpose | Facilities Use Request | Date(s) Time | Fees |
|---|---|---|---|
| Lentz and Lentz SAT/PSAT Prep | Teaneck High School Classroom | March 5, 12, 19, 26, 2025 April 23, 29, 2025 | No Charge, in partnership with Teaneck Community Education. Tuition for Teaneck students is $499. Out-of-District students is $599. |
| Jack & Jill Bergen/Passaic Chapter Educational experience in African Dance and Drumming for Black History Month. Katherine Frink-Hamlet | Thomas Jefferson Middle School Auditorium | Saturday February 8, 2025 4:30pm – 6:30pm | No Charge  Jack & Jill is a non-profit organization. No charge to Teaneck students |
| Bergen County NAACP Martin Luther King Youth Program | Teaneck High School Student Center | Friday January 17, 2025 6:30 pm – 8:30 pm | No Charge, community-based event. |

EXPLANATION:  Agenda item submitted by Dr. Spencer

12. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the attendance of staff members at a **Professional Development and Conference with a grand total of $5,416.25** (District Funded: $4,636.25; Title II Funded: $780). See page 102.

EXPLANATION:  Agenda item submitted by Dr. Scott

13. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the  Superintendent, approves **Student Field Trips** listed on the attached summary totaling **$22,185** (District Funded: $3,450; Parent Funded: $15,535; Student Activity Funded: $3,200.) See page 105.

EXPLANATION:  Agenda item submitted by Dr. Scott

15

14. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves out-of-district tuition contracts for students requiring Special Education out-of-district placements in accordance with their respective Individualized Educational Plans (IEPs) for the **2024-2025** school year in the amount of $397,521.55. See page 109.

    EXPLANATION:    Agenda item submitted by Dr. Scott

15. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the  Superintendent, approves contracts with clinicians and agencies to provide related services and independent evaluations as needed for the **2024-2025** school year per the attached list in the amount not to exceed. See page 110.

    EXPLANATION:    Agenda item submitted by Dr. Scott

16. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the attached list of **Student Fundraising Activities**. See page 111.

    EXPLANATION:    Agenda item submitted by Dr. Scott

17. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves bedside instruction payments to LearnWell in the amount of $60.75 per hour, 10 hour sessions per week, for student ID#106864. Services will commence 11/20/2024 through 12/20/2024. Not to exceed $3,037.50 (5 weeks).

    EXPLANATION:    Agenda item submitted by Dr. Scott

18. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves bedside instruction payments to LearnWell in the amount of $60.75 per hour, 10 hour sessions per week, for student ID#107824. Services will commence 12/18/2024 through 1/01/2025. Not to exceed $1,215.50 (2 weeks).

    EXPLANATION:    Agenda item submitted by Dr. Scott

19. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves bedside instruction payments to LearnWell in the amount of $60.75 per hour, 10 hour sessions per week, for student ID#104452. Services will commence 1/05/2025 through 1/10/2025. Not to exceed $607.50 (1 week).

    EXPLANATION:    Agenda item submitted by Dr. Scott

20. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent approves the agreement between Mr. Jim Vagias to present to Hawthorne students on March 11, 2025 between noon and 2:05pm; the show will support student safety and bullying prevention and use magic, humor, and audience participation to help students make good and valuable choices. Not to exceed $1,395.00
    Funded by Title I grant to support social emotional learning and climate/culture goals.

    EXPLANATION:    Agenda item submitted by Dr. Scott

16

21. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent approves the agreement with Mr. Brian Chevalier of Respect Tour/Mindfulness to present to Hawthorne School students on January 23, 2025; two sessions for 3rd & 4th grades at 9:30am -10:15 am and K - 2 grades at 10:30 am -11:15am. Through collaborative music making, students learn to listen attentively, take turns, and appreciate each other's contributions. This approach not only enhances their musical abilities but also instills a sense of respect and teamwork. The performance celebrates good character and sends a solid message about Respect, Fairness, Cooperation, Bullying, Good Citizenship, Teamwork, Responsibility, Making Healthy Choices, Caring, Sharing, and Empathy. Cost not to exceed $875.00

    EXPLANATION:   Agenda item submitted by Dr. Scott

22. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent approves the agreement with Health Barn to support Mental and Physical Health Awareness Month; Health Barn will present at Hawthorne Elementary school-wide on May 9th, between 9:00- 9: 45 am and 10:00- 10:45 am. This assembly is a unique, hands-on, healthy lifestyle experience that empowers children of all ages to make healthy choices and to be active. The interactive program is designed for all students. It fulfills several Core Curriculum Content Standards while providing students with a practical healthy lifestyle experience that promotes their health and well-being Cost is not to exceed $1,725. Funded by Title I grant to support social emotional learning and climate/culture goals.

    EXPLANATION:   Agenda item submitted by Dr. Scott

23. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent approves the agreement with The Harlem Magic Masters to present at Hawthorne School on February 28, 2025, two assembly sessions (TBD); the program is designed to educate, stimulate, entertain, and motivate students, promoting a message of empowerment. It will feature a 45-minute show with two players and a live DJ. Students may be invited to participate with the players on stage, and some will have interactive roles in the performance. This will be a building-wide assembly, with two sessions to accommodate all of the students in the gym/auditorium. Cost not to exceed $2,100.
    Funded by Title I grant to support social emotional learning and climate/culture goals.

    EXPLANATION:   Agenda item submitted by Dr. Scott

24. **THEREFORE BE IT RESOLVED**    that the Teaneck Board of Education upon the recommendation of the Superintendent, approves an agreement with JHasHeart, LLC for a 45 - minute puppet show assembly on self -awareness, kindness and responsible decision-making for sixty (60) Theodora Lacey School students. Amount not to exceed $1,000. Grant funded: Title IV: 20-280 100- 300- 00-300-0 00.

    EXPLANATION:   Agenda item submitted by Dr. Scott

25. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves an agreement with CarePlus NJ for four assemblies at Lowell Elementary School on the topics of healthy habits and mindfulness practices in an amount not to exceed $600 during the month of February. Grant funded: Title IV: 20-280-100-300-000-00-000.

    EXPLANATION:   Agenda item submitted by Dr. Scott

17

## Finance & Budget Items 01 thru 25

Motion by Board Member_____, seconded by Board Member_____,

| Board Member | Yes | No | Abstain | Absent |
|---|---|---|---|---|
| Dr. Gruber (David) | | | | |
| Mrs. Hosein (Nadia) | | | | |
| Dr. Kirshenbaum (Gerald) | | | | |
| Mrs. Levy (Jennifer) | | | | |
| Mrs. Reyes (Kassandra) – Vice President | | | | |
| Mr. Rodriguez (Jonathan) | | | | |
| Mr. Wolff (James) | | | | |
| Mrs. Williams (Clara) | | | | |
| Mr. Ha (Edward) - President | | | | |

**_PERSONNEL 01 THRU 17_**                                    <u>**January 22, 2025**</u>

1. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the following **Retirement(s):**

| Staff Name | Position | Location | Effective Date | Position Control | Years of Service |
|---|---|---|---|---|---|
| Ivy Stern | CST Speech Language Therapist | TJMS/ Hawthorne | 07/01/2025 | API | 17 |
| Marisol Urena | World Language Teacher | TJMS | 04/01/2025 | AOF | 25 |
| Kathryn King Dyker | School Nurse | THS | 02/01/2025 | AHQ | 22 |

<u>EXPLANATION:</u>    Agenda item submitted by Ms. Jones

2. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, with regret, approves the following **Resignation(s):**

| Staff Name | Position | Location | Effective Date | Position Control | Years of Service |
|---|---|---|---|---|---|
| Travis Grundy | Public Safety Officer | District | 12/31/2024 | CMQ | 8 Months |
| Lisa Ingrasselino | Executive Assistant | Special Services | 01/10/2025 | AWR | 1 |
| Robert Villegas | CST LDTC | BFMS | 02/14/2025 | BTJ | 2 |

<u>EXPLANATION:</u>    Agenda item submitted by Ms. Jones

19

3.  **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the following **Certificated Appointment(s)**, pending successful completion of all mandatory requirements.

| Staff Name | Position | Location | Guide/Step | Salary | Effective Dates | Notes/ PCN# |
|---|---|---|---|---|---|---|
| Nicole Barbarino | School Psychologist | District | MA +32, Step 14 | $109,088.00 | 03/24/2025-06/30/2025 | Replacement Standard PC#ANG |
| Cao Hang Guo | Teacher of Pre-K | Bryant Elementary School | BA, Step 9 | $68,000.00 | 01/27/2025-06/30/2025 | Replacement Standard PC#CHZ |
| Melissa Norena | School Social Worker | BFMS | MA, Step 4 | $65,200.00 | 01/13/2025-06/30/2025 | Replacement Standard PC#CEJ |
| Erica Owens | Teacher of Special Education | Whittier | MA, Step 11 | $84,200.00 | 02/03/2025-06/30/2025 | Replacement TBD PC#CNR |
| Preethy Scariah | Teacher of Social Studies | TJMS | MA, Step 8 | $75,200.00 | 03/24/2025-06/30/2025 | Replacement Standard PC#BLD |
| Susanne Greenberg | Pre-School Disabled | Bryant School | TBD | TBD | TBD | Replacement |
| Matthew Cancro | Teacher of Business | THS | TBD | TBD | TBD | Replacement |

*Employees may begin their assignment sooner than noted, pending clearance.*
*All salaries are prorated from date of hire.*

EXPLANATION:   Agenda item submitted by Ms. Jones

4.  **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the Appointment of the following staff, assigned to a **Non-Certificated Position**, effective as indicated.

| Staff Name | Position | Location | Amount | Effective Dates | Notes |
|---|---|---|---|---|---|
| Kelly Cambridge | Secretary D | Lacey Elementary School | $56,301.00 Secty. Step, 6 (prorated) | 01/23/2025-06/30/2025 | Replacement PCN#CLX |
| Dumar E. Beltran | Driver | Transportation | $40,000.00 Off-Guide | 02/24/2025-06/30/2025 | Replacement PCN#CHR |
| Michaelle Tyre | Secretary B | Office of Special Services | $69,951.00 Secty., Step 5 (prorated) | 01/13/2025-06/30/2025 | Replacement PCN#AWR |

EXPLANATION:   Agenda item submitted by Ms. Jones

20

5.  **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the Appointment of the following **Long-Term and Leave Replacements Teacher(s)** assigned to a non-tenure track position.

| Staff Name | Position | Location | Amount | Effective Dates | Benefits | Notes |
|---|---|---|---|---|---|---|
| Cinthia Riveria | Long-Term Substitute Teacher | THS | $200.00 per day | 01/23/2025 TBD | N/A | Standard PCN# - |
| Skye Gregory | Long-Term Substitute Teacher | TJMS | $200.00 per day | 01/23/2025 06/30/2025 | Eligible | Replaceme t PCN#AML |

EXPLANATION: Agenda item submitted by Ms. Jones

6.  **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the following **Transfer(s):**

| Name | From Position/Location/PCN | To Position/Location/PCN | Effective Dates | Notes |
|---|---|---|---|---|
| Douglas Post | Groundsman II/AWI | Groundsman III/Forman/AVV | 01/22/2025- 06/30/2025 | Salary $75,000.00 |

EXPLANATION: Agenda item submitted by Ms. Jones

21

7. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the following **Leaves of Absence**:

| Staff ID# | Type | Dates of Paid Leave | Days Used | Dates of Unpaid Leave | Days Used | Return Day |
|---|---|---|---|---|---|---|
| 4660 | Paternity | 02/03/2025-02/10/2025 | 6 sick days | 02/11/2025-02/14/2025 | 4 | 02/17/2025 |
| 2256 | Medical | 01/15/2025-02/03/2025 | 13 Sick Days | N/A | N/A | 02/04/2025 |
| 2117 | Medical | N/A | N/A | 12/02/2024-12/20/2024 | 15 | 01/02/2025 |
| 5311 | Medical | N/A | N/A | 01/14/2025-06/30/2025 | 119 | 09/01/2025 |
| 4581 | Medical | N/A | N/A | 01/02/2025-03/28/2025 | 62 | 03/31/2025 |
| 5697 | Maternity | 12/16/2024-01/24/2025 | 20 Sick Days/ 2 Personal Business Days | 01/27/2025-06/30/2025 | 93 | 05/27/2025 |
| 5131 | Maternity | 10/07/2024-12/20/2024 | 47 Sick Days | 01/03/2025-04/04/2025 | 82 | 04/07/2025 |

EXPLANATION:   Agenda item submitted by Ms. Jones

8. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the following student teacher(s) placements pending fingerprints and medical clearance receipt. The Board adopts **Student Teachers/Unpaid Interns** at the request of partnering colleges/universities to promote and support scholars in becoming qualified educators in the State of New Jersey.

| Name of Student | College/Institution | Location | Effective Dates |
|---|---|---|---|
| Joshua McCollum | William Patterson University | Bryant Elementary School | 01/23/2025-05/14/2025 |
| Rhianna Barry | Fairleigh Dickinson University | Whittier Elementary School | 01/13/2025-06/30/2025 |
| Marissa Colloca | Fairleigh Dickinson University | TJMS | 01/13/2025-06/30/2025 |
| Giselle Martinez | Fairleigh Dickinson University | Whittier Elementary School | 01/13/2025-06/30/2025 |
| Allie Hopper | Fairleigh Dickinson University | TJMS | 01/13/2025-06/30/2025 |

EXPLANATION:   Agenda Item submitted by Dr. Scott

9. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent approves the following staff members as **Home Instructors**, on an as-needed basis for the 2024-2025 school year.

| Staff Name | Job Title | Stipend Amount |
|---|---|---|
| Danielle Amato | Home Instructor | $50.00 per hour |
| Ivy Stern | Home Instructor | $50.00 per hour |
| Anila Hoxha | Home Instructor | $50.00 per hour |

EXPLANATION:  Agenda item submitted by Ms. Jones

10. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent approves the following employees for participating in the **Hawthorne Elementary School Title I After School Math & ELA Program.** To be funded with 24-25 Title 1 Funds (20-231-100-101-00-110-000).

| Name | Position | Salary | Effective Dates | Notes |
|---|---|---|---|---|
| Kara Lindner | Substitute Teacher | Not to exceed $2,800.00 | 12/10/2024-04/10/2024 A total of 16 weeks on Tuesdays and Thursdays | This program will be held at Hawthorne Elementary School |

EXPLANATION:  Agenda item submitted by Ms. Jones

11. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent approves the employees listed below for **Extra Work, Extra Pay** stipends at Benjamin Franklin Middle School for the 2024-2025 school year, in accordance with the TTEA Collective Bargaining Agreement:

| Staff Name | Activity | Location | Stipend Amount |
|---|---|---|---|
| Kitt Blessing | Palestine Club | Benjamin Franklin Middle School | Volunteer |

EXPLANATION:  Agenda item submitted by Ms. Jones

23

12. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the following **Extra Work, Extra Pay** Assignment, at the **Teaneck High School** for the 2024-2025 school year, in accordance with the TTEA Collective Bargaining Agreement.

| Staff Name | Title of Stipend | Amount |
|---|---|---|
| Luke Short | Jazz Band | $1,050.00 |
| Cody Conrad | Activism Club | $550.00 |

EXPLANATION:    Agenda items submitted by Ms. Jones

13. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent approves the payment to the following teachers, for assuming the temporary **Sixth Period Assignments/Seventh Period Assignments** as negotiated contractual per class rates. Staff members will receive payment upon submission of appropriate payroll bill form for each pay date, and will receive their payment on the subsequent pay date:

| Name | Class Covering | Amount | Effective Date | Location |
|---|---|---|---|---|
| Anila Hoxha | Algebra 1 / 6th Period Assignment | $70.00 (MA) | 12/04/2024 | THS |
| Florenca Koldani | Geometry/ 6th Period Assignment | $60.00 (BA) | 12/04/2024 | THS |
| Nurdan Musa | Algebra 1/ 6th Period Assignment | $70.00 (MA) | 12/04/2024 | THS |
| Nurdan Musa | Algebra 1 / 7th Period Assignment | $90.00 (MA) | 12/04/2024 | THS |
| Somia Benali | Algebra 1/ 6th Period Assignment | $70.00 (MA) | 12/04/2024 | THS |
| Anila Hoxha | Algebra/ 7th Period Assignment | $90.00 (MA) | 12/04/2024 | THS |
| Michelle Greenwood | Biology/ 6th Period Assignment | $80.00 (MA+32) | 01/02/2025 | THS |
| Cody Conrad | US 1 / 6th Period Assignment | $60.00 (BA) | 12/02/2024 | THS |

EXPLANATION:    Agenda item submitted by Ms. Jones

24

14. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the following **Recission** of **Extra Work, Extra Pay** Stipend(s) at Teaneck High School:

| Staff Name | Name of Club | Stipend Amount |
|---|---|---|
| Joey Hochgesang | Jazz Band | $1,050.00 |

EXPLANATION:    Agenda item submitted by Ms. Jones

15. **THEREFORE BE IT RESOLVED**, that the Teaneck Board of Education, upon recommendation of the Superintendent, approves the establishment of the job title and corresponding job description for Financial Analyst. See page 114.

EXPLANATION:    Agenda item submitted by Ms. Jones

16. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon recommendation of the Superintendent, approves the payment of Tuition Reimbursement to the TTEA staff members for their completion of graduate courses. See page 116.

EXPLANATION:    Agenda item submitted by Ms. Jones

25

17. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent approves the **For the Record Amendment(s).**

| Staff Name | Job Title | Amount | Guide/Degree | Effective Dates | Notes |
|---|---|---|---|---|---|
| Caridad Clavelo | World Language Teacher | N/A | N/A | **10/01/2025** | Change in retirement date |
| Adria Warfield | Dance MD Class | **$70.00** | **MA** | 09/01/2024-06/30/2025 | Change in Reclassification BA to MA |
| Nancy Loiacono | Assistant School Business Admin/Board Secretary | $130,000 (prorated) | N/A | **01/16/2025**-06/30/2025 | Change in start date |
| Marques Robinson | **Head Girls Basketball Coach** | $3,000.00 | | **2024-2025 SY** | Change in job title |
| Christian Cabrera | CST Social Worker | N/A | N/A | **01/10/2025** | Change in resignation date |
| Kiana Caines | Part-time Tech. Support Specialist I | **$15.59 p/hr** | NA | 01/01/2025-06/30/2025 | Change in hourly rate |
| Jessica Bernard | Part-time Tech. Support Specialist I | **$15.59 p/hr** | NA | 01/01/2025-06/30/2025 | Change in hourly rate |
| Michelle Greenwood | Teacher of Science | $87,200 | MA+32, **Step 9** | 01/02/2025-06/30/2025 | Change in step |

EXPLANATION:    Agenda item submitted by Ms. Jones

26

## *Personnel items 01 thru 17*

Motion by Board Member_____, seconded by Board Member_____,

| Board Member | Yes | No | Abstain | Absent |
|---|---|---|---|---|
| Dr. Gruber (David) | | | | |
| Mrs. Hosein (Nadia) | | | | |
| Dr. Kirshenbaum (Gerald) | | | | |
| Mrs. Levy (Jennifer) | | | | |
| Mrs. Reyes (Kassandra) – Vice President | | | | |
| Mr. Rodriguez (Jonathan) | | | | |
| Mr. Wolff (James) | | | | |
| Mrs. Williams (Clara) | | | | |
| Mr. Ha (Edward) - President | | | | |

27

## X. PUBLIC COMMENTS SESSION II: (AGENDA AND NON-AGENDA ITEMS)

Thank you all for being here tonight. This portion of the meeting is open to residents for comment. Residents are to state their names, addresses, and subject matter. Comments are limited to three minutes per person. The Public Comment session will last for thirty-minutes. This Public Comment session I is limited to comments on agenda items only. The Public Comment session II is open to comments on other matters of public concern. Individuals may not give their time to another individual. Groups speaking on the same topic should combine your message into one.  Members of the public are discouraged from speaking negatively about an employee or a student. Do not call an employee or student by name. The Board bears no responsibility for comments made by the public. Comments regarding employees or students cannot be legally responded to by the Board. To enable as many members of the community to speak as possible, the Board will not respond directly to any questions raised during the public comment period. The Superintendent may respond to some questions at the conclusion of the public comment session. If you have a question or comment that requires a direct response, we encourage you to put your questions in an email to the Board secretary. All meetings are recorded and, therefore, statements made during public participation cannot be altered or amended and shall be included in the minutes as presented.

Motion to Open the Public Comment Session II:

Motion by Board Member_____, seconded by Board Member_____, Opened at ____P.M.

Motion to Close the Public Comment Session II:

Motion by Board Member_____, seconded By Board Member_____, Closed at _____P.M.

## XI. EXECUTIVE SESSION

BE IT RESOLVED, that the Teaneck Board of Education determines it is necessary to meet in the Executive Session on **Wednesday, January 22, 2025**, at _____ pm, to discuss _____(Agenda attached),

BE IT FURTHER RESOLVED, these matters will be made public when the need for confidentiality no longer exists.

Motion by Board Member_____, seconded by Board Member_____, Opened at ____P.M.

Motion by Board Member_____, seconded By Board Member_____, Closed at _____P.M.

## XII. ADJOURNMENT

Motion by Board Member_____, seconded by Board Member_____, Opened at ____P.M.

28

# Exhibit F

**REGULAR PUBLIC MEETING**
**JUNE 11, 2025**

**I.    Salute to the Flag**

**II.    Presiding Officer's Meeting Notice Statement**

"I hereby call to order the Regular Public Meeting of the Teaneck Board of Education, held on Wednesday, June 11, 2025, in person at Teaneck High School located at 100 Elizabeth Avenue, Teaneck, NJ 07666 and virtually via Zoom app located at the district website, at 7:00 PM. Adequate notice of this meeting has been sent to the Record and The Star Ledger, filed with the Municipal Clerk and posted on the school district website at www.teaneckschools.org, on January 9, 2025."

**III.    Roll Call**

| Board Member | Present | Absent |
|---|---|---|
| Dr. Gruber (David) | | |
| Mrs. Hosein (Nadia) | | |
| Dr. Kirshenbaum (Gerald) | | |
| Mrs. Levy (Jennifer) | | |
| Mrs. Reyes (Kassandra) - Vice President | | |
| Mr. Rodriguez (Jonathan) | | |
| Mrs. Williams (Clara) | | |
| Mr. Wolff (James) | | |
| Mr. Ha (Edward) - President | | |

| Student Board Liaison | Present | Absent |
|---|---|---|
| Blake Ricketts - 12th Grade | | |
| Angel Porras - 11th Grade | | |
| Mostafa Abouganba - 10th Grade | | |
| Matias Wouters - 9th Grade | | |

**IV.    Reaffirmation of District Goals**

Mission: The Teaneck Public School District educates and empowers students by providing a high-quality, rigorous educational experience which prepares students for success within a diverse, global society.

Vision: The Teaneck Advantage: Educational Excellence for All

## Board Goals

GOAL 1: Teachers and administrators in the Teaneck Public Schools will further elevate academic programs by creating varied learning pathways and by improving student supports.

GOAL 2: The Teaneck Public Schools will continue to improve facilities and technology in support of 21st Century learning opportunities.

GOAL 3: The Teaneck Public Schools will execute effective communications and solidify quality relationships with educational partners within and throughout the community.

1

GOAL 4: The Teaneck Public Schools will create equitable and inclusive learning opportunities for all students.

GOAL 5: The Teaneck Public Schools will ensure operational excellence in hiring, developing and retaining staff.

## V.    Superintendent's Report

1.    • SSDS Data Reporting

## VI.    Student Liaison Report

## VII.    Public Comment Session I (Agenda Items ONLY)

Thank you all for being here tonight. This portion of the meeting is open to residents for comment. Residents are to state their name, the town they live in, and subject matter. Comments are limited to three minutes per person. The Public Comment session I will last for thirty-minutes and is limited to comments on agenda items **only**. The Public Comment session II is open to comments on other matters of public concern. Individuals may not give their time to another individual. Groups speaking on the same topic should combine their message into one. Members of the public are discouraged from speaking negatively about an employee or a student. Do not call an employee or student by name, otherwise the conversation will be discontinued. The Board bears no responsibility for comments made by the public. Comments regarding employees or students cannot be legally responded to by the Board. The Superintendent may respond to some questions at the conclusion of the public comment session. If you have a question or comment that requires a direct response, we encourage you to put your questions in an email to the Board secretary. All meetings are recorded and, therefore, statements made during public participation cannot be altered or amended and shall be included in the minutes as presented.

Motion to Open the Public Comment Session I:

Motion by Board Member_____, seconded by Board Member_____, Opened at ____P.M.

Motion to Close the Public Comment Session I:

Motion by Board Member_____, seconded By Board Member_____, Closed at _____P.M.

## VIII.    Board Committee Report

- Community Relations - Trustee Nadia Hosein
- Curriculum - Trustee Gerald Kirshenbaum
- Finance & Facility - Trustee David Gruber
- Negotiations - Trustee Clara Williams
- Personnel - Trustee Jonathan Rodriguez
- Policy - Trustee Clara Williams
- Special Ed - Trustee Kassandra Reyes

## IX.    Agenda Items

2

*POLICY 01 THRU 02*                                                     **June 11, 2025**

1.    Policies & Regulations Second Reading

**THEREFORE BE IT RESOLVED** the Teaneck Board of Education upon the recommendation of the Superintendent approves the **SECOND READING** of the following Board Policies and Regulations listed below. See pages 54-72.

| Bylaw/Policy/Reg. No. | Topic |
|---|---|
| **Policy 5200** | **Attendance – Students (M)** |
| **Regulation 5200** | **Attendance – Students (M)** |
| **Regulation 8420** | **Emergency and Non-Fire Evacuation Plan (M)** |

EXPLANATION:    Agenda item submitted by Dr. Spencer


Policy Committee Legend - Revisions/Recommendations:

Strauss Esmay - Red Text
Policy Committee – Blue Text
Attorney – Black Text

2.    Policy & Regulations First Reading

**THEREFORE BE IT RESOLVED** the Teaneck Board of Education upon the recommendation of the Superintendent approves the **FIRST READING** of the following Board Policies and Regulations listed below. See pages 73-86.

| Bylaw/Policy/Reg. No. | Topic |
|---|---|
| Policy 5520 | Demonstrations – Revised (version 2) |
| Policy 5533 | Student Smoking – Mandated - Revised |
| Regulation 5533 | Student Smoking – Mandated - Revised |
| Policy 7441 | Electronic Surveillance In School Buildings/School Grounds – Mandated – Revised |
| Regulation 7441 | Electronic Surveillance In School Buildings/School Grounds – Mandated – Revised |

EXPLANATION:    Agenda item submitted by Dr. Spencer

*Policy Committee Legend - Revisions/Recommendations:*

Strauss Esmay - Red Text
Policy Committee – Blue Text
Attorney – Black Text

4

**BOARD OPERATIONS 01 thru 02**                                          **June 11, 2025**

1.  **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education approves the minutes from the following meetings:

    1.  May 07, 2025   Workshop Public Meeting
    2.  May 07, 2025   Executive Session
    3.  May 14, 2025   Regular Public Meeting
    4.  May 14, 2025   Executive Session

    EXPLANATION:    Agenda item submitted by Dr. Anaya

2.  **WHEREAS** that the Board recognizes the annual Teaneck High School Project Graduation event following graduation ceremonies on Monday, June 23, 2025 and the morning of Tuesday, June 24, 2025. The event would be funded by the Teaneck High School PTSO.

    **THEREFORE BE IT RESOLVED** that the Board, upon the recommendation of the Superintendent, authorize the School Business Administrator to take the necessary actions to issue a certificate of insurance naming Teaneck High School PTSO as an additional insured, and to obtain from Teaneck High School PTSO a certificate of insurance naming Teaneck Board of Education as additional insured.

    EXPLANATION:    Agenda item submitted by Dr. Spencer

5

*SCHOOL OPERATIONS AND CURRICULUM 01 THRU 02*                    **June 11, 2025**

1.  **WHEREAS,** N.J.S.A. 18A:38-25.1 mandates that, in the event that 10% or more of the students enrolled in a public school are chronically absent—defined as students missing 10% or more of school days—the school is required to develop a corrective action plan aimed at improving the absenteeism rate; and

    **WHEREAS,** the corrective action plan must be presented to the local board of education for review and approval, and must be revised annually until absenteeism rates are reduced to below 10%; and

    **WHEREAS,** it is the priority of this Board to ensure the academic success and well-being of all students, and addressing chronic absenteeism is a key part of this effort;

    **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approve corrective action plans for the following schools to address chronic absenteeism: Lacey Elementary School, Bryant Elementary School, Lowell Elementary School, Whittier Elementary School, Hawthorne Elementary School, Thomas Jefferson Middle School, Benjamin Franklin Middle School, and Teaneck High School. See pages 87-191.

    EXPLANATION:    Agenda item submitted by Dr. Scott

2.  **WHEREAS**, the Teaneck School District seeks to establish new Career and Technical Education (CTE) programs aligned with the New Jersey Department of Education's career cluster frameworks; and
    **WHEREAS**, the proposed CTE tracks in Arts, Audio/Visual Technology, and Communications will offer students rigorous instruction, industry-relevant skills, and pathways to postsecondary success;

    **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approve the submission of applications to the New Jersey Department of Education to establish two new CTE program tracks: Digital Art (CIP CODE: 50.0102) and Cinematography and Film/Video Production is (CIP CODE: 50.0602) at Teaneck High School in the area of Arts, Audio/Visual Technology, and Communications.

    EXPLANATION:    Agenda item submitted by Dr. Scott

*FINANCE AND BUDGET 01 THRU 50*                                    **June 11, 2025**

1.  **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the payments of the claims for the period of May 2, 2025 - May 29, 2025.

| Fund | Amount |
|------|--------|
| General Fund | $4,141,168.17 |
| Capital Outlay | $179,271.23 |
| Special Revenue | $897,088.22 |
| Enterprise Funds | $3,809.16 |
| Food Service | $187,513.47 |
| **Total Payments** | **$5,408,850.25** |

EXPLANATION:    Agenda item submitted by Dr. Anaya

2.  **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the payroll for the period of May 1, 2025 - May 31, 2025.

| Fund | Amount |
|------|--------|
| Fund 11 | $4,646,463.25 |
| Fund 20 | $314,800.91 |
| Fund 60 | $75,744.04 |
| Fund 61 | $8,235.76 |
| **Total Payments** | **$5,045,243.96** |

EXPLANATION:    Agenda item submitted by Dr. Anaya

3.  **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, has received and accepts the financial reports of the **Board Secretary** for the month ending May 2025 and certifies that the reports indicate that no major account or fund is over expended in violation of N.J.A.C. 6:20-2.13 and that sufficient funds are available to meet the district's financial obligations for the remainder of the school year.

EXPLANATION:    Agenda item submitted by Dr. Anaya

4.  **WHEREAS** N.J.S.A.18A:22-8.1 authorizes a school district to transfer amounts among line items and program categories;

**THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon recommendation of the Superintendent, approves the line item transfers for the month of May 2025. See pages 192-193.

EXPLANATION:    Agenda item submitted by Dr. Anaya

7

5.   **WHEREAS**, N.J.A.C. 6A:23A-14.3 and 6A:23A-14.4 permit a Board of Education to establish and/or deposit into certain reserve accounts at year end; and

**WHEREAS**, the aforementioned statutes authorized procedures, under the authority of the Commissioner of Education, which permit a Board of education to transfer unanticipated excess current revenue or unexpended appropriations into reserve accounts during the month of June by Board resolution; and

**WHEREAS**, the Teaneck Board of Education wishes to transfer unanticipated excess current year revenue or unexpended appropriations from the **General fund into Undesignated Fund Balance** at year end; and

**WHEREAS**, the Teaneck Board of Education has determined that an amount not to exceed $6,000,000 is available for such purpose of transfer.

**NOW THEREFORE BE IT RESOLVED** the Teaneck Board of Education hereby authorizes the district's School Business Administrator to make this transfer consistent with all applicable laws and regulations.

EXPLANATION:    Agenda item submitted by Dr. Anaya

6.   **WHEREAS**, N.J.A.C. 6A:23A-14.3 and 6A:23A-14.4 permit a Board of Education to establish and/or deposit into certain reserve accounts at year end; and

**WHEREAS**, the aforementioned statutes authorized procedures, under the authority of the Commissioner of Education, which permit a Board of education to transfer unanticipated excess current revenue or unexpended appropriations into reserve accounts during the month of June by Board resolution; and

**WHEREAS**, the Teaneck Board of Education wishes to transfer unanticipated excess current year revenue or unexpended appropriations from the **General fund into Capital Reserve** at year end; and

**WHEREAS**, the Teaneck Board of Education has determined that an amount not to exceed $6,000,000 is available for such purpose of transfer.

**NOW THEREFORE BE IT RESOLVED** the Teaneck Board of Education hereby authorizes the district's School Business Administrator to make this transfer consistent with all applicable laws and regulations.

EXPLANATION:    Agenda item submitted by Dr. Anaya

7. **WHEREAS**, N.J.A.C. 6A:23A-14.3 and 6A:23A-14.4 permit a Board of Education to establish and/or deposit into certain reserve accounts at year end; and

**WHEREAS**, the aforementioned statutes authorized procedures, under the authority of the Commissioner of Education, which permit a Board of education to transfer unanticipated excess current revenue or unexpended appropriations into reserve accounts during the month of June by Board resolution; and

**WHEREAS**, the Teaneck Board of Education wishes to transfer unanticipated excess current year revenue or unexpended appropriations from the undesignated, unreserved **General fund into Maintenance Reserve** at year end; and

**WHEREAS**, the Teaneck Board of Education has determined that an amount not to exceed $6,000,000 is available for such purpose of transfer to fund maintenance designed in the districts comprehensive maintenance plan.

**NOW THEREFORE BE IT RESOLVED** the Teaneck Board of Education hereby authorizes the district's School Business Administrator to make this transfer consistent with all applicable laws and regulations.

EXPLANATION:    Agenda item submitted by Dr. Anaya

8. **WHEREAS**, N.J.A.C. 6A:23A-14.3 and 6A:23A-14.4 permit a Board of Education to establish and/or deposit into certain reserve accounts at year end; and

**WHEREAS**, the aforementioned statutes authorized procedures, under the authority of the Commissioner of Education, which permit a Board of education to transfer unanticipated excess current revenue or unexpended appropriations into reserve accounts during the month of June by Board resolution; and

**WHEREAS**, the Teaneck Board of Education wishes to transfer unanticipated excess current year revenue or unexpended appropriations from the **General fund into Tuition Reserve** at year end; and

**WHEREAS**, the Teaneck Board of Education has determined that an amount not to exceed $1,000,000 is available for such purpose of transfer.

**NOW THEREFORE BE IT RESOLVED** the Teaneck Board of Education hereby authorizes the district's School Business Administrator to make this transfer consistent with all applicable laws and regulations.

EXPLANATION:    Agenda item submitted by Dr. Anaya

9.  **WHEREAS**, N.J.A.C. 6A:23A-14.3 and 6A:23A-14.4 permit a Board of Education to establish and/or deposit into certain reserve accounts at year end; and

    **WHEREAS**, the aforementioned statutes authorized procedures, under the authority of the Commissioner of Education, which permit a Board of education to transfer unanticipated excess current revenue or unexpended appropriations into reserve accounts during the month of June by Board resolution; and

    **WHEREAS**, the Teaneck Board of Education wishes to transfer unanticipated excess current year revenue or unexpended appropriations from the **General fund into Emergency Reserve** at year end; and

    **WHEREAS**, the Teaneck Board of Education has determined that an amount not to exceed $6,000,000 is available for such purpose of transfer.

    **NOW THEREFORE BE IT RESOLVED** the Teaneck Board of Education hereby authorizes the district's School Business Administrator to make this transfer consistent with all applicable laws and regulations.

    EXPLANATION:    Agenda item submitted by Dr. Anaya

10. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent approves the Bus Drivers for summer work from June 27, 2025 through August 8, 2025 at the rate and not to exceed amount listed below:

    - Jose De Jesus, daily rate of $257.50, not to exceed $7,719.00
    - Yesmin Hernandez, daily rate of $206.88, not to exceed $6,206.00
    - Brian Madrid, daily rate of $200, not to exceed $6,000.00
    - Dumar Beltran, daily rate of $200, not to exceed $6,000.00
    - Darwin Garcia-Tapia, daily rate of $200, not to exceed $6,000.00

    EXPLANATION:    Agenda item submitted by Dr. Anaya

11. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon recommendation of the Superintendent, approves the renewal for Delta Dental Benefits (July 1, 2025 through June 30, 2026) for the estimated annual amount of $678,684.

    EXPLANATION:    Agenda item submitted by Dr. Anaya

10

12. **WHEREAS** the Teaneck Board of Education authorized Fairview (Foundation Risk Partners), to represent current healthcare coverages and Teaneck Board of Education claims experience, and

**WHEREAS** Aetna Inc. Network a private medical plan insurance carrier, with an "Equal to or Better" guarantee that Aetna will provide the medical coverages with Meritain as its Third Party Administrator and;

**THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves a Medical Plan contract with Aetna, Inc., for the 2025-2026 SY an estimated amount of $14,829,946 per year. This amount includes an annual estimate for stop loss in the amount of $994,164.30; Estimated RX Benefits of $2,538,418.06; Estimated Dental Benefits of $678,684.00 and Estimated Disability Benefits of $234,876.00 and an Estimated Annual Administrative costs of $563,493. The gross estimated amount of $14,829,946 for health benefits provided by Meritain does not include an estimated employee contribution of $2.2 million.

EXPLANATION:    Agenda item submitted by Dr. Anaya

13. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the **renewal of the Food Service Management contract with Maschio's Food Services Inc., the Food Service Management Company ("FSMC"),** for the 2025-2026 school year projected total cost to be $1,805,056.34  as found on the Response and Projected Operating Statement (Form 23); and

**BE IT FURTHER RESOLVED,** that the FSMC shall receive, in addition to the costs of operation, an administrative/management fee of $0.1498 per reimbursable meal and meal equivalent to compensate the Food Service Management Company (FSMC) for administrative and management costs with fees being billed monthly as a cost of operation; and

**BE IT FURTHER RESOLVED,** that the total number of meals are calculated by adding reimbursable meal pattern meals served to meal equivalents with the number of reimbursable meals served to the children determined by actual count; and

**BE IT FURTHER RESOLVED**, that cash receipts, other than from sales of reimbursable program meals served to the children, shall be divided by the meal equivalent rate, $4.095 to arrive at an equivalent meal count; and

**BE IT FURTHER RESOLVED**, that the administrative/management fees are calculated by multiplying $0.1498 by the total number of meals.

**BE IT FURTHER RESOLVED,** that the FSMC guarantees the district the breakeven return from the Food Service Program for the school year 2025-2026.

EXPLANATION:    Agenda item submitted by Dr. Anaya

14. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, authorizes the School Business Administrator to make payments and necessary transfers during the months of July and August 2025 with the consent of the Finance Committee. These bills are to be approved at the regularly scheduled Board of Education meeting held on August 20, 2025.

EXPLANATION:    Agenda item submitted by Dr. Anaya

15. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent enter into an agreement with Leonia Public schools for leasing the 54 passenger buses in accordance with per diem rate and weekly rates set forth in the agreement (attached). The buses shall be used by the Teaneck Board of Education from March 27 through April 23, 2025 and will compensate Leonia Board of Education $125.00 daily rate. See pages 194-197.

    EXPLANATION:    Agenda item submitted by Dr. Anaya

16. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the annual request sent to the Bergen County Superintendent of Schools for approval of Bryant Elementary, Lowell Elementary and Whittier Elementary School's **Kindergarten Toilet Waivers** and the request of a **Temporary Instructional Space** at the Christ Episcopal Church for the **2025-2026** school year. See pages 198-206.

    EXPLANATION:    Agenda item submitted by Dr. Anaya

17. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves Equest Builders for construction of a 6'x8' Security Booth for the Yeshivat He'Atid School, not to exceed $34,995.00. Funded from the Non-Public Security Aid allocation #20-511-266-300-92-000-613.

    EXPLANATION:    Agenda item submitted by Dr. Anaya

18. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves The Idea School, Inc. to provide professional development training for 20 staff members over the last two weeks of June, 2025 for the Yeshivat He'Atid Non-public School. This training will help ensure a consistent, research-based approach to Project Based learning as well as provide teachers with the tools to support student-centered learning in the classroom. The amount not to exceed $9,000.00. Funded from the Title IIA Non-Public allocation #20-270-200-320-92-000-613.

    EXPLANATION:    Agenda item submitted by Dr. Anaya

19. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves The Shefa Center for the Yeshivat He'Atid school to attend in person a 3-day Multisensory Math Workshop (6 attendees) and a 4-day PAF Workshop (1 attendee) on June 23, 24, 25, 26, 2025, in the amount not to exceed $4,395.00.  Funded from the Title IIA Non-Public allocation #20-270-200-580-92-613-000.

    EXPLANATION:    Agenda item submitted by Dr. Anaya

20. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the Reach & Teach Instructional Coaching for the Academy of Saut Ul Furqan to attend a 2-day virtual professional development training. Mastering Discipline: Effective Behavior Management in the Classroom on June 19, 2025 and Proactive, Not Reactive:  Effective Strategies for Classroom Management on June 20, 2025.  Both training sessions in the amount not to exceed $990.00.  Funded from the Title IIA Non-Public allocation #20-270-200-320-92-000-608.

    EXPLANATION:    Agenda item submitted by Dr. Anaya

21. **WHEREAS** students will be attending Extended School Year (ESY) from June 27, 2025 through August 8, 2025 at Teaneck High School, Bryant Elementary School, New Jersey Institute of

12

Technology (NJIT), Challenger Camp and Teaneck Community Charter School; and

**WHEREAS** ESY transportation services quotes were received by First Student, D&M Tours and R & May Transportation and Jersey Kids Transport;

**THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the ESY transportation contract with First Student, D&M Tours & Jersey Kids Transport in the amount of $144,151.00 and approves the subsequent submission of the contract to the Executive County Superintendent of Schools for approval.

| Route | Company | Destination | Per Diem Aide | Per Diem Vehicle | Total Cost |
|-------|---------|-------------|---------------|------------------|------------|
| S7A | Jersey Kids | TEANECK HIGH SCHOOL | $55.00 | $375.00 | $12,955.00 |
| S7B | Jersey Kids | TEANECK HIGH SCHOOL | $55.00 | $375.00 | $12,955.00 |
| S7C | Jersey Kids | TEANECK HIGH SCHOOL | $55.00 | $375.00 | $12,955.00 |
| S7D | Jersey Kids | TEANECK HIGH SCHOOL | $55.00 | $375.00 | $12,955.00 |
| S7E | Jersey Kids | TEANECK HIGH SCHOOL | $55.00 | $375.00 | $12,955.00 |
| S7F | Jersey Kids | TEANECK HIGH SCHOOL | $55.00 | $375.00 | $12,955.00 |
| S7G | Jersey Kids | TEANECK HIGH SCHOOL | $55.00 | $375.00 | $12,955.00 |
| S7H1 | Jersey Kids | Challenger Camp | $0.00 | $180.00 | $3,420.00 |
| S7H2 | Jersey Kids | Challenger Camp | $0.00 | $180.00 | $3,420.00 |
| S7M | D & M Tours | Bryant School | $63.00 | $227.15 | $8,704.50 |
| S7N | D & M Tours | Bryant School | $63.00 | $227.15 | $8,704.50 |
| S7O | D & M Tours | Bryant School | $63.00 | $227.15 | $8,704.50 |
| S7P | D & M Tours | Bryant School | $63.00 | $227.15 | $8,704.50 |
| NJIT | D & M Tours | New Jersey Institute of Technolgy | $0.00 | $274.15 | $5,483.00 |
| S7R | First Student | Teaneck Charter | $50.00 | $225.00 | $6,325.00 |
| **TOTAL** | | | **$687.00** | **$4,392.75** | **$144,151.00** |

13

EXPLANATION:   Agenda item submitted by Dr. Anaya

22. **WHEREAS**, the Teaneck Board of Education ("Board") publicly advertised the contract/s for the 2025-2026 Student Transportation Services to and from School; and

**WHEREAS, t**he Transportation Bid Specifications prepared by the Board Administration solicited bid prices for seventeen (15) different routes, which contained a public transportation routes (1 route), non-public transportation routes (11 routes) and one "tiered route", which was a combination of public student and non-public student transportation on the same route/bus (1 route) ("Bid Specifications"); and

**WHEREAS**, on May 21, 2025, the Board held a public bid opening for the Project; and

**WHEREAS**, the Board received bids from four (4) different Bidders, which were opened at the public bid opening, from: (1) John Leckie, Inc., (2) First Student, Inc., (3) Jersey Kids Transportation, Inc.; and (4) Aldin Trans Corporation; and

**WHEREAS**, the Board has determined that it is in the best interest of the of the Board to award transportation contracts for fifteen (15) routes and to reject bids received for one (1) bus routes and to reserve its rights relating to the remaining bus route contained in the Bid Specifications; and

**WHEREAS**, after review and evaluation of the bids received it was determined that the following Bidders submitted the lowest numerical per diem amount for the route set forth below:

| PUBLIC TRANSPORTATION ROUTES | | | |
|---|---|---|---|
| **Route** | **Lowest per diem bid** | **Annual Cost** | **Lowest Numerical Bidder** |
| B.C.C.C. | $243.99 | $43,918.20 | John Leckie, Inc. |
| **NON-PUBLIC TRANSPORTATION ROUTES** | | | |
| **Yeshivat HE'ATID** | | | |
| YEH1 | $267.99 | $48,238.20 | John Leckie, Inc. |
| YEH2 | $267.99 | $48,238.20 | John Leckie, Inc. |
| YEH3 | $267.99 | $48,238.20 | John Leckie, inc. |
| YEH-4 (Late Dismissal) | $77.98 | $14,036.40 | John Leckie, Inc. |
| Total Bulk Bid Amount | $881.95 | $158,751.00 | John Leckie, Inc. |
| **Yeshivat Noam** | | | |
| YN01 K-5 | $209.99 | $37,798.20 | John Leckie, Inc. |
| YN02 K-5 | $259.99 | $46,798.20 | John Leckie, Inc. |
| YN03 K-5 | $243.99 | $43,918.20 | John Leckie, Inc. |
| YN04 K-5 | $213.99 | $38,518.20 | John Leckie, Inc. |
| YN05 K-5 | $253.99 | $45,718.20 | John Leckie, Inc. |
| YN06 K-5 | $253.99 | $45,718.20 | John Leckie, Inc. |
| YN07 6-8 | $229.99 | $41,398.20 | John Leckie, Inc. |
| YN08 6-8 | $193.99 | $34,918.20 | John Leckie, Inc. |
| YN09 6-8 | $253.99 | $45,718.20 | John Leckie, Inc. |
| Total Bulk Bid Amount | $2,113.91 | $380,503.80 | John Leckie, Inc. |
| **Paramus Catholic** | | | |

14

| | | | |
|---|---|---|---|
| PC | $229.97 | $41,394.60 | John Leckie, Inc. |
| **Lubavich On the Palisade** | | | |
| LUBA | $406.00 | $73,080.00 | Jersey Kids Transportation, Inc. |
| **PUBLIC & NON-PUBLIC ROUTE (Tiered Route)** | | | |
| BC/APTECH | $278.00 | $50,040.00 | First Student, Inc. |

**WHEREAS,** upon evaluation of the bids, the Board has determined that the bid amounts for the Lubavich On the Palisade bus route substantially exceeds the maximum amount permissible pursuant to N.J.A.C. 6A:27-2.2(e) and should therefore be rejected; and

**WHEREAS,** the Board has also determined in its evaluation that the bid amounts for the Bergen Catholic/Applied Tech tiered bus route when determining per student costs also exceeds the maximum amount permissible pursuant to N.J.A.C. 6A:27-2.2(e), however, would like to further evaluate the bid amounts with the Administration of Bergen Catholic relating to the transportation costs; and

**WHEREAS,** the Board has determined that the lowest numerical bidders set forth above excluding the Lubavitch On the Paradise and the Bergen Catholic/Applied Tech routes, and for the remaining routes are the lowest responsive responsible bidders.

**NOW, THEREFORE, BE IT RESOLVED**, that in accordance with the provisions of the *N.J.S.A.* 18A:39-1, *et seq.*, the Board hereby awards a contract to John Leckie, Inc., 348 Railroad Avenue, Hackensack, NJ 07601 for the per diem and total annual contract amount set forth below for the following bus routes:

| John Leckie, Inc 348 Railroad Avenue Hackensack, NJ 07601 | | | | |
|---|---|---|---|---|
| **Route** | **Per diem award** | **Total Annual Cost Not to Exceed** | **Increase/Decrease Adjustment Cost per mile** | **Per Diem Aide/Attendant Cost (if requested)** |
| B.C.C.C. | $243.99 | $43,918.20 | $1.93 | $100.00 |
| YEH1 | $267.99 | $48,238.20 | $1.93 | $100.00 |
| YEH2 | $267.99 | $48,238.20 | $1.93 | $100.00 |
| YEH3 | $267.99 | $48,238.20 | $1.93 | $100.00 |
| YEH-4 (Late Dismissal) | $77.98 | $14,036.40 | $1.93 | $100.00 |
| YN01 K-5 | $209.99 | $37,798.20 | $1.93 | $100.00 |
| YN02 K-5 | $259.99 | $46,798.20 | $1.93 | $100.00 |
| YN03 K-5 | $243.99 | $43,918.20 | $1.93 | $100.00 |
| YN04 K-5 | $213.99 | $38,518.20 | $1.93 | $100.00 |
| YN05 K-5 | $253.99 | $45,718.20 | $1.93 | $100.00 |
| YN06 K-5 | $253.99 | $45,718.20 | $1.93 | $100.00 |
| YN07 6-8 | $229.99 | $41,398.20 | $1.93 | $100.00 |
| YN08 6-8 | $193.99 | $34,918.20 | $1.93 | $100.00 |
| YN09 6-8 | $253.99 | $45,718.20 | $1.93 | $100.00 |
| PC | $229.97 | $41,394.60 | $1.93 | $100.00 |
| **Total** | **$3,469.82** | **$624,567.60** | **$1.93** | **$100.00** |

**BE IT FURTHER RESOLVED** that the Board hereby rejects all bids received for the following bus route:

| Lubavitch on the Palisade |
|---|
| LUBA |

**BE IT FURTHER RESOLVED** that the Board hereby reserves its rights, subject to further resolution of the Board relating to all bids received for the following bus route:

| Bus Route |
|---|
| **Bergen Catholic /Applied Tech Tiered Route** |
| BC/APTECH |

**BE IT FURTHER RESOLVED** that the Business Administrator and all other Board officials and employees are hereby authorized to take all necessary action in order to effectuate the within Resolution, including but not limited to the submission of the contracts and award to the Executive County Superintendent for review and approval as well as the execution of the necessary agreements with the aforementioned bidders in the total not to exceed annual amounts set forth herein and to obtain all further documentation required by the Bid Specifications from the successful bidders.

EXPLANATION:    Agenda item submitted by Dr. Anaya

23. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the following final credit Change Order #3. See page 207.

**PROJECT NO.**: GC-03
**ARCHITECT**: Di Cara Rubino
**PROJECT**: Electrical Upgrade at Benjamin Franklin Middle School
**CONTRACTOR**: TSUJ Corporation
**DATE**: 5/7/2025

| CONTRACTOR | DESCRIPTION | ORIGINAL CONTRACT AMOUNT | CHANGE ORDER AMOUNT | ADJUSTED CONTRACT AMOUNT |
|---|---|---|---|---|
| TSUJ Corp | Credit of unused allowances Allowance #1A = ($-13,440.51) Allowance #2A = ($-10,000.00) | $613,577.00 | (-$23,440.51) | $590,136.49 |

EXPLANATION:    Agenda item submitted by Mr. D'Angelo

24. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the installation of a new wireless clock system throughout the Teaneck High School in the amount not to exceed $50,932.00. This project will be completed by the Bingham Communications located at 819 Pompton Ave., Cedar grove, NJ 07009. Educational Bid#12193. Funded with 2025-2026 SY. See page 208.

EXPLANATION:    Agenda item submitted by Mr. D'Angelo

25. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the installation of the new digital sign and replacement of the faded panels  at Teaneck High School in the amount not to exceed $26,960.00. Signs and Graphics Bid#ESCNJ 24/25-38. Funds to be used from 2024-2025 SY. See pages 209-210.

    EXPLANATION:    Agenda item submitted by Mr. D'Angelo

26. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the work to remove the existing gym folding partition and replace it with new fold up divider curtain at Thomas Jefferson Middle school. The existing gym partition, which is original to the building, is no longer operable and is obsolete. The work will be performed by Nickerson Corp., Coop Bid #ESCNJ 21/22-10 in the amount of **$35,138.85**. Funded from the 2025-2026 SY. See page 211-212.

    EXPLANATION:    Agenda item submitted by Mr. D'Angelo

27. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education approve the Statement of Assurance ("SOA") for 2025-2026 Lead Testing year as approved by Office of School Facilities Planning, New Jersey Department of Education.

    EXPLANATION:    Agenda item submitted by Mr. D'Angelo

28. **WHEREAS**, the district is currently upgrading the Data Center to enhance the network performance and security. The firewall refresh is an integral part of the project's success. Performing the firewall refresh alongside the data center upgrade minimizes downtime of the network, enhances security and operational efficiency, and ensures the ability to keep our network in compliance.

    **THEREFORE BE IT RESOLVED**, that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the implementation of the proposed firewall refresh project, to be financed over a period of 3 years (07/15/2025-07/15/2027) with a total cost of $115,485.96. The financing shall be structured as annual payments of $38,495.32.

    EXPLANATION:    Agenda item submitted by Ms. Le

29. **WHEREAS**  the district uses Gaggle Safety Management services, a student safety monitoring software solution. It aims to identify potential safety concerns such as self-harm, violence or bullying and alert school officials so they can intervene and support students.

    **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent approve the renewal of the Gaggle Safety Management Services for the 2025-2026 school year.  The annual contract is $24,750.00 for the period of 07/01/2025-06/30/2026. See pages 213-214.

    EXPLANATION:    Agenda item submitted by Ms. Le

30. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the facilities use requests listed below.

| Organization Purpose | Facilities Use Request | Date(s) Time | Fees |
|---|---|---|---|
| Bergen Flag Football League Clifton, NJ<br><br>Jonathan Kessel | Benjamin Franklin Soccer Field | Sundays: 9/7, 9/14, 9/21, 9/28,10/19, 10/26, 11/2, 11/9 | Fees: $300/day Total: $2,400 |

EXPLANATION:    Agenda item submitted by Dr. Spencer

31. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent approves the payment to Bergen New Bridge Medical Center to complete a psychiatric evaluation for a student ID# 105126 in the amount not to exceed $2000.

EXPLANATION:    Agenda item submitted by Dr. Scott

32. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the  Superintendent, approves the attendance of staff members at  the **Professional Development and Conferences** listed on  the  attached  summary costing **$29,301.97** (District Funded $5,425; Title I $1,571.97; Title II $22,305.  See pages 215-217.

EXPLANATION:    Agenda item submitted by Dr. Scott

33. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the  Superintendent, approves **Student Field Trips** listed on the attached listed summary totaling $19,297.91 (Parent Funded: $12,003.46; PTA Funded: $7,294.45; District Funded $324. See page 218.

EXPLANATION:    Agenda item submitted by Dr. Scott

34. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves out-of-district tuition contracts for students requiring Special Education out-of-district placements in accordance with their respective Individualized Educational Plans (IEPs) for the **2024-2025** school year in the amount of **$799,370.02** plus an additional amount of **$28,883.76**. See page 219.

EXPLANATION:    Agenda item submitted by Dr. Scott

35. **THEREFORE BE IT RESOLVED**, that the Teaneck Board of Education, upon the recommendation of the Superintendent, gratefully accept the following donations, with a total value of $4,375; these generous contributions will provide valuable learning opportunities for students.

| Item | Estimated Value | Donor | On Behalf of |
|---|---|---|---|
| Cello | $1,000. | Mrs. Finkelstein, BFMS Faculty | BFMS Music Department |
| Furniture<br>Decorative items<br>    Equipment (lights, electrical cords, backdrops, and soundproofing panels)<br>    (1) Red Couch<br>    (4) Leather Stools<br>    (2) Podcasting Desks<br>    (1) Corner Shelf<br>    (2) Leather Chairs<br>    (1) Round Conference Table<br>    Wall Art<br>    (1) Rug<br>    Soundproofing Panels<br>    Touch Lamp<br>    (4) LimoStudio Lighting<br>    (5) Surge Protectors | $2,750. | Principal Terrence Williams | BFMS Podcast Studio |
| (1) LG 55-inch TV Monitor | $425. | Elevate Ten – The Teacher's Lounge Rahway, NJ | BFMS Podcast Studio |
| Materials and Resources | $200. | Mr. and Mrs. Ed Dabney | Hawthorne Elementary Music Program |
| **Total** | **$4,375.** | | |

      EXPLANATION:    Agenda item submitted by Dr. Scott

36. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the agreement with Bridging Hearts LLC to conduct a yoga/mindfulness workshop for  high school students enrolled in the FORUM's Summer Empowerment program on 8/11/2025  at a rate of $450 per workshop; funded by the FORUM grant; Not to exceed $450.

      EXPLANATION:    Agenda item submitted by Dr. Scott

19

37. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the agreement with Yes Miss INC., to conduct a confidence/motivation and self-esteem workshop for high school students enrolled in the FORUM's Summer Empowerment program on 8/12/2025 at a rate of $350 per workshop; funded by the FORUM grant; Not to exceed $350.

    EXPLANATION:    Agenda item submitted by Dr. Scott

38. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves contracts with clinicians and agencies to provide homebound bedside instruction for students receiving medical services for the 2024 -2025 school year.

| Student ID | Agency | Duration | Amount |
|---|---|---|---|
| 102028 | Children's Center for Behavioral Health | 30 days | $4,356.00 |
| 109186 | LearnWell | 5 Days | $121.50 |
| 102225 | LearnWell | 5 Days | $607.50 |
| 104956 | Learnwell | 2 days | $364.50 |
| 106370 | Learnwell | 14 days | Not to Exceed $1215.00 |
| 102455 | Learnwell | 14 days | Not to Exceed $1215.00 |
|  |  | Total | $7,879.50 |

    EXPLANATION:    Agenda item submitted by Dr. Scott

39. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the contract with Velez Educational Services for professional services supporting Teaneck High School's administration in building the 2025-2026 Master Schedule in Skyward, the district's Student Information System, totaling $3,500. District Funded: 11-000-218-590-12-073-000.

    EXPLANATION:    Agenda item submitted by Dr. Scott

40. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the Stipulation of Settlement between the parents of Student ID#108535 and the Teaneck Board of Education in the amount of Fifty Thousand Eighth Hundred Eighty Nine Dollars and Zero cents ($50,889.00) for tuition and Seven Thousand Five Hundred Dollars and Zero cents ($7,500) for private evaluations for the 2024-2025 SY, create an IEP and place Student ID#108535 at Sage Day School which will include ESY, tuition and transportation during 2025-2026 and 2026-2027 school years.

    EXPLANATION:    Agenda item submitted by Dr. Scott

20

41. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the Stipulation of Settlement between the parents of Student ID# (108883) and the Teaneck Board of Education in the amount of One-Hundred Thousand Three Hundred Thirty-Four Dollars and Seventy-Seven Cents ($100,334.77) for the non-sectarian tuition and related costs associated with student's attendance during the 2024-2025 SY and One-Hundred Five Thousand Three Hundred Fifty-One and Fifty-One Cents ($105,351.51) for the non-sectarian tuition and related costs associated with student's attendance at SINAI during the 2025-2026 SY, (which reflects a 5% increase from 2024-2025 tuition).

    EXPLANATION:    Agenda item submitted by Dr. Scott

42. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the Stipulation of Settlement between the parents of the Student ID#107905 and the Teaneck Board of Education in the amount of One Hundred and Fifteen
    Thousand Four Hundred and Sixteen Dollars and Zero Cents ($115,416.00) for the 2024-2025 SY, and up to a a five-percent (5%) tuition increase from the 2024-25 tuition for non-sectarian tuition and related costs associated with ID#107905 attendance at SINAI during the 2025-26 school year, which amount is also inclusive of any ESY program in which ID# 107905 may participate.

    EXPLANATION:    Agenda item submitted by Dr. Scott

43. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the Stipulation of Settlement between the parents of the Student ID#106202 and the Teaneck Board of Education in the amount of Fifty-One Thousand Four Hundred Fifty-Two Dollars and Twenty Cents ($51,452.20) for non-sectarian tuition and related costs associated with ID#106202 attendance at Bais Ohr during the 2024-2025 school year and up to a five-percent (5%) tuition increase from the 2024-2025 tuition for non-sectarian tuition and related costs associated with ID#106202 attendance at Bais Ohr during the 2025-26 SY, which amount is also inclusive of any ESY program in which ID#106202 may participate.

    EXPLANATION:    Agenda item submitted by Dr. Scott

44. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the Stipulation of Settlement between the parents of the Student ID#107258 and the Teaneck Board of Education in the amount of Eighty-One Thousand Seven Hundred Fifty Dollars and Zero Cents ($81,750.00) for non-sectarian tuition and related costs associated with ID#107258 attendance at during the 2024-2025 school year and Eighty-Five Thousand Eight Hundred Thirty-Seven Dollars and Seventy-Five Cents ($85,837.75) for tuition for non-sectarian tuition and related costs associated with ID#107258 attendance at Shalshelet during the 2025-2026 school year, which amount is also inclusive of any ESY program in which ID# 107258 may participate.

    EXPLANATION:    Agenda item submitted by Dr. Scott

45. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the Stipulation of Settlement between the parents of the Student ID#103665 attendance at and the Teaneck Board of Education in the amount of Eighty-One Thousand Seven Hundred Fifty Dollars ($81,750.00) for non-sectarian tuition and related costs associated with ID#103665 attendance at Shalshelet during the 2024-2025 SY. For 2025-2026 school year, Board shall contribute the same tuition amount up to a five percent (5%) tuition increase from the 2024-25 tuition for non-sectarian tuition and related costs associated with ID#103665 attendance at Shalshelet during the 2025-26 school year, which amount is also inclusive of all related cost associated with ID#103665 may participate.

    EXPLANATION:    Agenda item submitted by Dr. Scott

46. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the Stipulation of Settlement between the parents of Student ID#108931 and the Teaneck Board of Education in the amount of Eighty one Thousand Seven Hundred and Fifty Dollars and Zero cents ($81,750.00) for tuition and related costs associated with student attendance at Shalshelet for the 2024-2025 SY. This amount includes ID#108931 participation in any Extended School year program in which the student may have participated in and Eighty Five Thousand Eight Hundred and Thirty Seven  Dollars and Seventy Five cents ($85,837.75) for tuition and related costs associated with student attendance at Shalshelet for the 2025-2026 SY. This amount includes ID#108931 participation in any Extended School year program in which the student may participate.

    EXPLANATION:    Agenda item submitted by Dr. Scott

47. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent approves the **For the Record Amendment(s):**

| Original Board Approval | Field Trip Date | School or Department | Destination | **Amendment** |
|---|---|---|---|---|
| 3/12/2025 | 5/21/2025 | Hawthorne Elementary | Field Station Dinosaurs | Trip Date Rescheduled to: June 3, 2025 |

    EXPLANATION:    Agenda item added by Dr. Scott

48. **WHEREAS** there is a need to replace the Track with new drainage at Teaneck High School where funding needs to come from Capital Reserve, and

    **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent authorizes this needed repair with the quoted vendor listed below for the Teaneck High School by funding this project with the authorization to transfer from the district's capital reserve funds for a total amount not to exceed  $1,310,000.

    EXPLANATION:    Agenda item submitted by Mr. D'Angelo

49. **WHEREAS** there is a need to replace the Track with new drainage at Teaneck High School over the summer of 2025, and

**THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent approves ATT Sports, Inc., to install a new Track with drainage at the Teaneck High School. ATT Sports, Inc., is located at 115 B Cross Keys Road in Berlin, New Jersey. ATT Sports, Inc, is associated with consortium ESCNJ Contract 22/23-47. The total amount of replacing the high school Track at Teaneck High school with drainage improvements $1,309,474.00. This purchase is in accordance with the purchasing guidelines under Title 18A. See pages 220-222.

EXPLANATION:    Agenda item submitted by Mr. D'Angelo

50. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the facilities use requests listed below.

| Organization Purpose | Facilities Use Request | Date(s) Time | Fees |
|---|---|---|---|
| E-Sports Creative League – Youth Summer Enrichment Dr. Latesha Lalla Co-Founder Esports Creative League Teaneck, NJ | Benjamin Franklin Middle School 4 classrooms Lavatory | Weekdays 7/28 - 8/1/25 8/4 - 8/8/25 8am – 1pm | Fees: $12,000.00 Includes 4 classrooms |
| First Baptist Church of Teaneck, NJ Ms. Edith Green | Bryant Elementary School Parking Lot | Every Sunday June 2025 through June 2026. 7:30 am – 1:00 pm | No Fees Charged: The church allows families to use the church parking lot as overflow for Bryant events. |
| NJ Dance Fusion North Bergen, NJ Ms. Rosemary Pereira | Benjamin Franklin Middle School Auditorium | Sunday – June 22, 2025 12:00 pm – 6:00 pm | Fees: $1,448.32 includes Auditorium rental, custodian, and security officers. |
| Rollin' Studio, Inc, Brooklyn, NY Ms. Tara Zulfikar | Hawthorne Elementary School Facility used as holding space for a film project in Teaneck. Cast would use the school to change, eat meals, hair and makeup. | Thursday, June 19, 2025 (District Closed but staff coverage would be provided by District) 7:00 am – 7:00 pm | Fees: $4,540.28 Includes Gymnasium, custodian and security officers. |
| Teaneck High School Class of 1980 45th Reunion Ms. Shelley Worrell | Teaneck High School Media Center, Lavatory, Parking Lot | Saturday, September 27, 2025 12:00 pm – 5:00 pm | No Fees Charged for high school reunions |

EXPLANATION:    Agenda item submitted by Dr. Spencer

23

*PERSONNEL 01 THRU 41*                                                    **June 11, 2025**

1.  **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, with regret, approves the **Resignation(s)**:

| Staff Name | Position | Location | Effective Date | Position Control | Years of Service |
|---|---|---|---|---|---|
| Jaclyn Baumont | Teacher of French | Thomas Jefferson | 06/30/2025 | CDR | 5 |
| Erica Owens | Teacher of Special Education | Whittier Elementary School | 06/30/2025 | CNR | 0 |
| Christine Llewellyn | Speech Therapist | Special Services | 06/30/2025 | CLN | 0 |
| Brielle Feorenzo | Teacher of Mathematics | Thomas Jefferson | 07/31/2025 | BEI | 6 |
| Tony Thomas | Supervisor of Science, Engineering & Technology | Teaneck High School | 07/15/2025 | CLA | 12 |
| Jessica Murphy | Secretary D | Forum-Teaneck High School | 06/30/2025 | AXG | 3 |

EXPLANATION:    Agenda item submitted by Ms. Jones

24

2.  **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the following **Certificated Appointment(s)**, pending successful completion of all mandatory requirements.

| Staff Name | Position/PCN# | Location | Guide/Step | Salary | Effective Dates | Notes |
|---|---|---|---|---|---|---|
| Samantha Sigal | Teacher of Music/ABA | Teaneck High School | BA, Step 1 | $56,750.00 | 09/01/2025-06/30/2026 | Replacement |
| Michael Millar | Teacher of Elementary/ATH | Whittier Elementary School | BA, Step 1 | $56,750.00 | 09/01/2025-06/30/2026 | Replacement |
| Kelly Potter | Pre-K Teacher/AQG | Lacey School | BA, Step 2 | $57,750.00 | 09/01/2025-06/30/2026 | Replacement |
| Connie Chuang | Teacher of Mathematics/AMI | Thomas Jefferson School | MA+32 Step 11 | $95,800.00 | 09/01/2025-06/30/2026 | Replacement |
| Eduardo Rivera | Teacher of Spanish/AOF | Teaneck High School | MA, Step 2 | $63,200.00 | 09/01/2025-06/30/2026 | Replacement |
| Diana Terrana | Teacher of Spanish/AEP | Thomas Jefferson School | MA, Step 10 | $80,200.00 | 09/01/2025-06/30/2026 | Replacement |

*Employees may begin their assignment sooner than noted, pending clearance.*
*All salaries are prorated from date of hire.*
*\*Hired pending issuance of NJDOE certification*

EXPLANATION:    Agenda item submitted by Ms. Jones

3.  **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the **Appointment** of the following staff, assigned to a **Non-Certificated** position effective as indicated.

| Staff Name | Position/ PCN | Location | Amount | Effective Dates | Notes |
|---|---|---|---|---|---|
| Khyari Handcock | Safety Officer | District - THS | $26.80 per hour | TBD-06/30/2026 | Replacement |
| Joanne Clemons | Substitute Secretary | District | $15.49 per hour (As Needed) | 09/01/2025-06/30/2026 | Replacement |

EXPLANATION:    Agenda item submitted by Ms. Jones

4.  **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the Appointment of the following **Long-Term and Leave Replacements Teacher(s)** assigned to a non-tenure track position.

| Staff Name | Position | Location | Guide/Step | Salary | Effective Dates | Notes/ PCN# |
|---|---|---|---|---|---|---|
| Natalie Goris | Leave Replacement Teacher | Benjamin Franklin Middle School | BA, Step 1 | $56,750.00 | 09/01/2025-06/30/2026 | COT |

EXPLANATION:    Agenda item submitted by Ms. Jones

5.  **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the Reappointment of Dr. Victor Anaya as the School Business Administrator/Board Secretary effective July 1, 2025 - June 30, 2026 at an annual salary of $205,000.00. The employment agreement was approved by the Bergen County Superintendent of Schools on May 1, 2025. See pages 223-232.

EXPLANATION:    Agenda item submitted by Ms. Jones

6.  **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the Reappointment of Dr. Marshall Scott, III, as the Assistant Superintendent of School Supervision & Support effective July 1, 2025 - June 30, 2026 at an annual salary of $200,371.00. The employment agreement was approved by the Bergen County Superintendent of Schools on May 1, 2025. See pages 233-243.

EXPLANATION:    Agenda item submitted by Ms. Jones

7.  **THEREFORE BE IT RESOLVED,** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approved the salaries for the Non-Bargaining Staff for the 2025-2026 school year. See pages 244-245.

EXPLANATION:    Agenda submitted by Ms. Jones

8.  **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the following **Certificated Staff Transfers/Reassignments** for the 2025-2026 school year effective September 1, 2025. See pages 246-247.

EXPLANATION:    Agenda item submitted by Ms. Jones

9. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent, approves the following **Rescission(s) of Employment:**

| Name | Position/PCN | Location | Effective Dates |
|---|---|---|---|
| Natalie Tidler | Teacher of Elementary/ATC | Whittier Elementary School | 09/01/2025-06/30/2026 |

EXPLANATION:    Agenda item submitted by Ms. Jones

10. **THEREFORE BE IT RESOLVED,** that the Teaneck Board of Education  authorize the Superintendent of Schools to appoint certificated staff during the absence of the Regular Public Meetings during the  months of July and August 2025 and shall be presented to the Board at the next regularly scheduled Board of Education meeting. Such appointments shall be based on already approved and budgeted positions that have become vacant.

EXPLANATION:    Agenda item submitted by Ms. Jones

11. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent hereby approves the **granting of tenure** to the following staff members effective during the 2025-2026 school year.

| Staff Name | Job Title | School Name | Tenured Date |
|---|---|---|---|
| Abdoulaye Diallo | Teacher | Teaneck High School | 05/04/2025 |
| Nicole Fernandez | Secretary C | Thomas Jefferson Middle School | 06/28/2025 |
| Ashley Sularz | Supervisor of S.S. | Central Office | 07/16/2025 |
| Jahari Jacobs | Assistant Principal | Benjamin Franklin Middle School | 07/23/2025 |
| D'aisha Smith | Teacher | Thomas Jefferson Middle School | 09/01/2025 |
| Shanieka Smith | Teacher | Teaneck High School | 09/01/2025 |
| Diana Salib | LDTC | Benjamin Franklin Middle School | 09/02/2025 |
| Erika Nussbaum | Teacher | Bryant Elementary School | 09/02/2025 |
| Janette Razmologov | Teacher | Bryant Elementary School | 09/02/2025 |
| Joanna Batog | Teacher | Bryant Elementary School | 09/02/2025 |
| Leonardo Aristimuno | Teacher | Teaneck High School | 09/02/2025 |
| Lorena Valer | Teacher | Hawthorne Elementary School | 09/02/2025 |
| Monica Bagan | Teacher | Thomas Jefferson Middle School | 09/02/2025 |
| Yuby Figueroa-Hercules | Teacher | Bryant Elementary School | 09/02/2025 |
| Ilona Nowak | Behaviorist | Special Services | 09/02/2025 |
| Ramon Medina | Supervisor of VPA | Central Office | 09/16/2025 |
| Zara Matragas | Teacher | Hawthorne Elementary School | 09/16/2025 |
| Dounia Jaafar | Psychologist | Thomas Jefferson Middle School | 10/05/2025 |
| Lucy Ramos | Speech Therapist | Bryant Elementary School | 10/05/2025 |
| Monique Williams | Teacher | Whittier Elementary School | 10/05/2025 |
| Jamie Boyle | Teacher | Teaneck High School | 11/16/2025 |
| Leidy Gomez | Secretary C | Thomas Jefferson Middle School | 12/06/2025 |
| Suletty Diaz | Teacher | Theodora Lacey | 12/10/2025 |

EXPLANATION:    Agenda item submitted by Ms. Jones

28

12. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent approve the following **11-Month Child Study Team Members** working either the months of July or August 2025.

**July 2025**

| Staff Name | Position | Guide | Step | Pursuant to TTEA Agreement *(Per Diem Rate - Base salary + 10% for each day worked)* |
|---|---|---|---|---|
| Kristine Thielman | CST Psychologist | PHD | 13 | $123,750.00 |
| Maria Manning | CST Psychologist | MA+32 | 16 | $119,507.00 |
| Diana Salib | CST LDTC | MA+32 | 14 | $109,088.00 |
| Leana Barbosa | CST Speech Therapist | MA | 16 | $106,007.00 |
| Joseph Panepinto | CST Social Worker | MA | 16 | $106,007.00 |

**August 2025**

| Staff Name | Position | Guide | Step | Pursuant to TTEA Agreement *(Per Diem Rate - Base salary + 10% for each day worked)* |
|---|---|---|---|---|
| Maria Manning | CST Psychologist | MA+32 | 16 | $119,507.00 |
| Alisha Montoya | CST LDTC | MA | 16 | $106,007.00 |
| Shireen Ali | CST LDTC | MA+32 | 14 | $109,088.00 |
| Amy Morik | CST Social Worker | MA+32 | 12 | $101,200.00 |
| Danielle Cardona | CST Speech Therapist | MA+32 | 10 | $92,750.00 |

EXPLANATION:   Agenda item submitted by Ms. Jones

29

13. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the following teacher to coordinate and teach the **Summer Third and Fourth Grade  Art Program at Lowell Elementary**. District Funded-Account # 11-000-221-110-18-000-000

| Staff Name | Position | Date and time of Program | Stipend Amount | Notes |
|---|---|---|---|---|
| Maureen Pafford Orletti | Art Teacher Lead | 07/07/2025-07/24/2025 | $50.00 per hour (Not to exceed $2,850.00) | Monday-Thursday 12:30 pm-3:30 pm |

EXPLANATION:    Agenda item submitted by Dr. Scott

14. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon recommendation of the Superintendent, approves the following **Home Instructor(s)**for the 2024-2025 school year.

| Staff Name | Job Title | Stipend Amount |
|---|---|---|
| Danielle Cardona | Home Instruction-ESY | $50.00 per hour |

EXPLANATION:    Agenda item submitted by Ms. Jones

15. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the following **Teaneck High School Student Volunteers** to participate in the Extended School Year program as part of their Community Service requirement for graduation.

| Student  Name | Position | Date and time of Program | Stipend Amount |
|---|---|---|---|
| Daniela Merchan | Volunteer | 06/27/2025-08/08/2025 | $0.00 |
| Nashia Hernandez | Volunteer | 06/27/2025-08/08/2025 | $0.00 |

EXPLANATION:    Agenda item submitted by Ms. Jones

16. **THEREFORE BE IT RESOLVED,** That the Teaneck  Board of Education upon the recommendation of the Superintendent, approves Appointment of Adrienne Williams as **District Anti-Bullying Coordinator** as a stipend of $16,000.00 from September 1, 2024 - June 30, 2025.

EXPLANATION:    Agenda item submitted by Ms. Jones

17. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent approves the payment to the following high school teacher(s), for assuming temporary **Sixth-Period/ Seventh- Period Assignments** as negotiated contractual per class rates effective May 13, 2025. Staff members will receive payment upon submission of appropriate payroll bill form for each pay date, and will receive their payment on the subsequent pay date:

| Staff Name | Class | Class Period Covered | Amount |
|---|---|---|---|
| Kelly Williams | American Literature 11 | Sixth Period | $80.00 (MA+32) |
| Kelly Williams | Environmental Science | Seventh Period | $100.00 (MA+32) |

EXPLANATION:    Agenda items submitted by Ms. Jones

18. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the following student teacher(s) placements pending fingerprints and medical clearance receipt. The Board adopts **Student Teachers/Unpaid Interns** at the request of partnering colleges/universities to promote and support scholars in becoming qualified educators in the State of New Jersey.

| Name of Student | College/Institution | Effective Dates |
|---|---|---|
| Lauren Fragoso | Kean University | 09/01/2025-06/30/2026 |
| Kathy Torres | Kean University | 09/01/2025-06/30/2026 |
| Camila Leon | Kean University | 09/01/2025-06/30/2026 |
| Nathalee Rodriguez | William Paterson University | 09/01/2025-06/30/2026 |
| Letitia Sanchez | Montclair State University | 09/08/2025-06/30/2026 |
| Benjamin Leiss | Montclair State University | 09/08/2025-06/30/2026 |
| River Groman | Montclair State University | 09/08/2025-06/30/2026 |

EXPLANATION:    Agenda Item submitted by Ms. Jones

31

19. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent approves the following certificated staff for the **Title 1 Summer Math and ELA Program at Whittier Elementary School.** Teachers will receive up to 3 hours of professional development. This program will be funded with the 25-26 Title 1 Funds. (Title I Funds Account #20-231-100-101-00-150-100)

| Staff Name | Position | Date and time of Program | Stipend Amount | Notes |
|---|---|---|---|---|
| Janine Lawler | Program Coordinator | 06/30/2025-07/25/2025 | $50.00 per hour x 82 hours (Not to exceed $4,100.00) | 9:00 am-12:00 pm |
| Brittany Butler | Teacher | 06/30/2025-07/25/2025 | $50.00 per hours x 70 hours (Not to exceed $3,500.00) | 9:00 am-12:00 pm |
| Michael Millar | Teacher | 06/30/2025-07/25/2025 | $50.00 per hours x 70 hours (Not to exceed $3,500.00) | 9:00 am-12:00 pm |
| Diana Sanchez | ESL Teacher | 06/30/2025-07/25/2025 | $50.00 per hours x 70 hours (Not to exceed $3,500.00) | 9:00 am-12:00 pm |
| Monique Williams | Teacher | 06/30/2025-07/25/2025 | $50.00 per hours x 70 hours (Not to exceed $3,500.00) | 9:00 am-12:00 pm |
| Holly Koeller | Teacher | 06/30/2025-07/25/2025 | $50.00 per hours x 70 hours (Not to exceed $3,500.00) | 9:00 am-12:00 pm |

EXPLANATION:    Agenda item submitted by Ms. Jones

32

20. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent approves the following certificated staff for the **Title 1 Summer Math and ELA Program at Thomas Jefferson Middle School.** This program will support rising 5th, 6th, 7th and 8th grade students in the areas of mathematics and literacy, targeting grade-level skills in preparation for the upcoming academic year. This program will be funded with the 25-26 Title 1 Funds.  (Title I Funds Account #20-231-100-101-00-070-000)

| Staff  Name | Position | Date and time of Program | Stipend Amount |
|---|---|---|---|
| Gillian Iappelli | Lead Coordinator | 07/07/2025-07/31/2025 | $50.00 per hour x 51 hours (Not to exceed $2,550.00) |
| Lindsay Fisher | Instructor | 07/07/2025-07/31/2025 | $50.00 per hours x 43 hours (Not to exceed $2,150.00) |
| Candice Robertson | Instructor | 07/07/2025-07/31/2025 | $50.00 per hours x 43 hours (Not to exceed $2,150.00) |
| Paul Maute | Instructor | 07/07/2025-07/31/2025 | $50.00 per hours x 43 hours (Not to exceed $2,150.00) |
| Rena San George | Instructor | 07/07/2025-07/31/2025 | $50.00 per hours x 43 hours (Not to exceed $2,150.00) |
| Sheena Stanislaus | Instructor | 07/07/2025-07/31/2025 | $50.00 per hours x 43 hours (Not to exceed $2,150.00) |
| Paulette Szalay | Instructor | 07/07/2025-07/31/2025 | $50.00 per hours x 43 hours (Not to exceed $2,150.00) |
| Ashley Alcott | Instructor | 07/07/2025-07/31/2025 | $50.00 per hours x 43 hours (Not to exceed $2,150.00) |
| Brandon Vargas | Instructor | 07/07/2025-07/31/2025 | $50.00 per hours x 43 hours (Not to exceed $2,150.00) |
| D'Aisha Smith | Substitute | 07/07/2025-07/31/2025 | $50.00 per hours x 43 hours (Not to exceed $2,150.00) |

EXPLANATION:    Agenda item submitted by Ms. Jones

33

21. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the following certificated teachers to teach the **Summer Impact 9 Program** for incoming Teaneck High School students. This program is grant funded. Account # 20-231-100-101-00-050-000

| Staff Name | Position | Date and time of Program | Stipend Amount |
|---|---|---|---|
| Natasha Green | Program Coordinator | 07/07/2025-07/31/2025 | $50.00 per hour (Not to exceed $2,750.00) |
| Kerrie Viray | Science (Biology | 07/07/2025-07/31/2025 | $50.00 per hour (Not to exceed $2,150.00) |
| Summer Pirro | Algebra 1 (Grade 9) | 07/07/2025-07/31/2025 | $50.00 per hour (Not to exceed $2,150.00) |
| Eric Akselrad | Current Events (Grade 9) | 07/07/2025-07/31/2025 | $50.00 per hour (Not to exceed $2,150.00) |
| | | Total: | $9,200.00 |

EXPLANATION:    Agenda item submitted by Dr. Scott

22. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the following certificated teachers to access students using **ACCUPLACER Testing**. Title I Funded Account # 20-231-100-101-00-050-000

| Staff Name | Position | Date and time of Program | Stipend Amount |
|---|---|---|---|
| Sean Holland | ACCUPLACER-ELA | 07/01/2025-08/292025 | $50.00 per hour (Not to exceed $1,500.00) |
| John Occhiogrosso | ACCUPLACER-Mathematics | 07/01/2025-08/292025 | $50.00 per hour (Not to exceed $1,500.00) |
| Jennifer Troy | ACCUPLACER-Coor. Counselor | 07/01/2025-08/292025 | $50.00 per hour (Not to exceed $1,500.00) |
| | | Total: | $4,500.00 |

EXPLANATION:    Agenda item submitted by Dr. Scott

34

23. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the following staff as **Advisors for the 2025-2026 Student Activities Clubs** at Teaneck High School.

| Staff Name | Position | Date and time of Program | Stipend Amount |
|---|---|---|---|
| Breanne Millett | School Treasurer | 07/01/2025-06/30/2026 | $8,600.00 |
| Susie Cipriano | Student Activity Director | 07/01/2025-06/30/2026 | $7,500.00 |
| Christie Prepis | Peer Leadership Advisor | 07/01/2025-06/30/2026 | $3,000.00 |
| Angela King | Majorettes (Twirlers) | 07/01/2025-06/30/2026 | $4,000.00 |
| Lance Parham | Peer Leadership Advisor | 07/01/2025-06/30/2026 | $3,000.00 |

EXPLANATION:    Agenda item submitted by Ms. Jones

24. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent approves the following employees listed below to work the **BFASST (Before Afterschool Summer Tutoring Program)** for students at Benjamin Franklin Middle School in  5th-8th Grade.

| Staff  Name | Position | Date and time of Program | Stipend Amount |
|---|---|---|---|
| Munyiva Munguti | Coordinator | 07/07/2025-08/01/2025 | $50.00 per hour (Not to exceed $3,800.00) |
| Claudia Califano | Teacher | 07/07/2025-08/01/2025 | $50.00 per hour (Not to exceed $3,300.00) |
| Giuseppina Cinnella | Teacher | 07/07/2025-08/01/2025 | $50.00 per hour (Not to exceed $3,300.00) |
| Zainabu Conteh | Teacher | 07/07/2025-08/01/2025 | $50.00 per hour (Not to exceed $3,300.00) |
| Spencer Crump | Teacher | 07/07/2025-08/01/2025 | $50.00 per hour (Not to exceed $3,300.00) |
| Lastasha Holley-Garcia | Teacher | 07/07/2025-08/01/2025 | $50.00 per hour (Not to exceed $3,300.00) |

35

| Natalie Goris | Teacher | 07/07/2025-08/01/2025 | $50.00 per hour (Not to exceed $3,300.00) |
|---|---|---|---|
| Alyssa Jackson | Teacher | 07/07/2025-08/01/2025 | $50.00 per hour (Not to exceed $3,300.00) |
| Jean McVerry | Teacher | 07/07/2025-08/01/2025 | $50.00 per hour (Not to exceed $3,300.00) |
| Tiffany Torres | Teacher | 07/07/2025-08/01/2025 | $50.00 per hour (Not to exceed $3,300.00) |
| Shanice Wright | Teacher | 07/07/2025-08/01/2025 | $50.00 per hour (Not to exceed $3,300.00) |
| Victor Stanic | Enrichment | 07/07/2025-08/01/2025 | $50.00 per hour (Not to exceed $3,300.00) |
| Javalda Powell | Enrichment/SEL | 07/07/2025-08/01/2025 | $50.00 per hour(Not to exceed $3,300.00) |

EXPLANATION:    Agenda item submitted by Ms. Jones

36

25. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the following to work the **Teaneck Community Education Center's Summer Camp Program, Camp Kookooskoos.**

| Student Name | Position | Date and time of Program | Stipend Amount |
|---|---|---|---|
| Bethanny Evans | Counselor | 06/30/2025-08/08/2025 | $15.49 per hour |
| Krisen Lemmermann | Counselor-In-Training (Community Service) | 06/30/2025-08/08/2025 | $0.00 |
| David Salinas | Counselor-In Training (Community Service) | 06/30/2025-08/08/2025 | $0.00 |
| Danny Rosario | Counselor-In-Training (Community Service) | 06/30/2025-08/08/2025 | $0.00 |
| Charlize Minazaganian | Counselor-In-Training (Community Service) | 06/30/2025-08/08/2025 | $0.00 |
| Laiba Abbasi | Counselor-In-Training (Community Service) | 06/30/2025-08/08/2025 | $0.00 |
| Aaron Hunter | Counselor-In-Training (Community Service) | 06/30/2025-08/08/2025 | $0.00 |
| Ethan Carlos | Counselor-In-Training (Community Service) | 06/30/2025-08/08/2025 | $0.00 |
| Fazeelah Ali | Counselor-In-Training (Community Service) | 06/30/2025-08/08/2025 | $0.00 |
| Danielle Ball | Counselor-In-Training (Community Service) | 06/30/2025-08/08/2025 | $0.00 |

EXPLANATION:    Agenda item submitted by Ms. Jones

37

26. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the following certificated teachers to coordinate and teach the **Middle School Summer Music Program** at Teaneck High School. District funded-Account # 11-000-221-110-18-000-000

| Staff Name | Position | Date and time of Program | Stipend Amount |
|---|---|---|---|
| Mitsael Trinidad | Ensemble Teacher Lead | 07/07/2025-07/24/2025 | $50.00 per hour (Not to exceed $2,850.00) |
| Christine Taylor | Woodwind Teacher | 07/07/2025-07/24/2025 | $50.00 per hour (Not to exceed $2,100.00) |
| Joseph Hochgesang | Woodwind Teacher | 07/07/2025-07/24/2025 | $50.00 per hour (Not to exceed $2,100.00) |
| Daniel Bassett | Brass Teacher | 07/07/2025-07/24/2025 | $50.00 per hour (Not to exceed $2,100.00) |
| Dasom Kim | Strings Teacher | 07/07/2025-07/24/2025 | $50.00 per hour (Not to exceed $2,100.00) |
| Luke Short | Percussion Teacher | 07/07/2025-07/24/2025 | $50.00 per hour (Not to exceed $2,100.00) |
| Spencer Jones | Substitute Teacher | As needed | $50.00 per hour as needed |
| | | **Total:** | **$13,350.00** |

EXPLANATION:    Agenda item submitted by Dr. Scott

27. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the following **School Counselors and Elementary Outreach Workers** compensation over the **summer session** to prepare for the 2025-2026 school year in accordance with the TTEA Contract Agreement.

| Staff Name | Position | Location | Stipend Amount | Notes |
|---|---|---|---|---|
| Kharisma Bettis | School Counselor | Teaneck High School | $4,764.50 | Not to exceed 10 working days |
| Douglas Book | School Counselor | Teaneck High School | $4,764.50 | Not to exceed 10 working days |

| Beth Fleischer | School Counselor | Teaneck High School | $4,764.50 | Not to exceed 10 working days |
|---|---|---|---|---|
| Kelvin Reese | School Counselor | Teaneck High School | $4,764.50 | Not to exceed 10 working days |
| Jennifer Taylor | School Counselor | Teaneck High School | $4,764.50 | Not to exceed 10 working days |
| Adrienne Williams | Student Assistant Coordinator | Teaneck High School | $1,905.70 | Not to exceed up to 4 working days |
| Lillian Garcia | School Counselor | Benjamin Franklin Middle School | $2,858.70 | Not to exceed up to 6 working days |
| Hanifah Stephenson | School Counselor | Benjamin Franklin Middle School | $2,858.70 | Not to exceed up to 6 working days |
| Robert Davis | School Counselor | Thomas Jefferson Middle School | $2,858.70 | Not to exceed up to 6 working days |
| Meredith Martino | School Counselor | Benjamin Franklin Middle School | $2,858.70 | Not to exceed up to 6 working days |
| Jessica Brown | Elementary Outreach | Lacey Elementary | $1,429.36 | Not to exceed 3 working days |
| Dannette Coston | Elementary Outreach | Whittier Elementary | $1,429.36 | Not to exceed 3 working days |
| Colette Brantley | Elementary Outreach | Hawthorne Elementary | $1,429.36 | Not to exceed 3 working days |
| Lisa Guydan | Elementary Outreach | Lowell Elementary | $1,429.36 | Not to exceed 3 working days |
| Aknaris Diaz | School Counselor | Teaneck High School | $4,764.50 | Not to exceed 10 working days |

EXPLANATION:    Agenda item submitted by Ms. Jones

39

28. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the following teachers to teach current 10th through 12th Grade student who are participating in the Teaneck High School **APEX Summer Recovery Program**. Funded by Title I Account # 20-231-100-101-00-050-000

| Staff Name | Position | Date and time of Program | Stipend Amount |
|---|---|---|---|
| Kelvin Reese | Program Coordinator | 07/01/2025-07/31/2025 | $50.00 per hour (Not to exceed $5,000.00) |
| John Occhiogrosso | APEX-Math Teacher | 07/01/2025-07/31/2025 | $50.00 per hour (Not to exceed $3,500.00) |
| Eileen Glassey | APEX-Science Teacher | 07/01/2025-07/31/2025 | $50.00 per hour (Not to exceed $3,500.00) |
| Michael Muccio | APEX-ELA Teacher | 07/01/2025-07/31/2025 | $50.00 per hour (Not to exceed $3,500.00) |
| Christine Mayers | APEX-Social Studies Teacher | 07/01/2025-07/31/2025 | $50.00 per hour (Not to exceed $3,500.00) |
| | | **Total:** | **$19,000.00** |

EXPLANATION:   Agenda item submitted by Dr. Scott

29. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the following staff members to serve as instructors for the grant funded **High Impact Tutoring Foundational Literacy Program.** Acct#20-231-100-101-00-050-000.

| Staff Name | Position | Effective Dates | Stipend Amount |
|---|---|---|---|
| Diana Sanchez | Orton Gillingham Teacher | 05/16/2025-06/30/2025 | $50.00 per hour (Not to exceed $2,100.00) |
| Monique Williams | Orton Gillingham Teacher | 05/16/2025-06/30/2025 | $50.00 per hour (Not to exceed $2,100.00) |

EXPLANATION:   Agenda item submitted by Dr. Scott

30. **THEREFORE BE IT RESOLVED**, that the Teaneck Board of Education upon the recommendation of the Superintendent, approves **vacation day payouts** for the employee(s) listed below pursuant to their respective Employment Agreement.

| Name | Position | Vacation Day(s) | Per Diem Rate | Total Payment |
|---|---|---|---|---|
| Pedro Valdes | Principal | 5 | $772.93 | $3,864.66 |
| Sandra Muro | Coordinator of Information Systems | 5 | $472.87 | $2,364.37 |

EXPLANATION:    Agenda item submitted by Ms. Jones

31. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the following **Leaves of Absence**:

| Staff ID# | Type | Dates of Paid Leave | Days Used | Dates of Unpaid Leave | Days Used | Return Day |
|---|---|---|---|---|---|---|
| 4451 | Maternity | 05/06/2025-06/23/2025 | 32 Sick Days | - | 32 | 09/01/2025 |
| 5348 | Maternity | 09/01/2025-06/23/2025 | 29 Sick Days | 10/20/2025-01/16/2026 FMLA Unpaid | 60 | 01/20/2026 |
| 2536 | Medical | 05/01/2025-05/14/2025 | 10 Sick Days | - | - | 05/15/2025 |
| 5890 | Medical/Maternity | - | - | 05/26/2025-08/15/2025 FMLA Unpaid | 60 | 08/18/2025 |
| 3033 | TTEA LOA/Misc. | - | - | 09/01/2025-09/01/2026 | 185 | 09/01/2026 |
| 1256 | Medical | 05/01/2025-05/16/2025 | 12 Sick Days | - | - | 05/19/2025 |
| 1853 | Medical | 05/01/2025-09/01/2025 | 35 Sick Days | - | - | 09/01/2025 |
| 4634 | TTEA LOA/Misc. | - | - | 09/01/2025-06/30/2026 | 185 days | 09/01/2026 |
| 3228 | Medical | 06/02/2025-06/27/2025 | 14 Sick Days | - | - | 09/01/2025 |
| 4474 | Maternity | 09/02/2025-10/21/2025 | 30 Sick Days/3 Personal Business Days | 10/22/2025-01/23/2026 FMLA Unpaid | 60 Days | 01/26/2026 |

EXPLANATION:   Agenda item submitted by Ms. Jones

42

32. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent approves the **For the Record Amendment(s):**

| Staff Name | Job Title/Location/PCN# | Salary | Guide/Degree | Effective Dates | Notes |
|---|---|---|---|---|---|
| Isaac Holmes | Security Guard/District/CLQ | - | - | **05/20/2025** | Amended Start Date |
| Craig Furlani | Security Guard/District/CMM | - | - | **05/19/2025** | Amended Start Date |
| Jessica Brown | Guidance Counselor/Theodora Lacey/APS | $119,507.00 | MA+32 | **09/01/2025-06/30/2026** | Reappointment for the 2025-2026SY |
| Alicia Pinetti | Data Support/Teaneck High School/AWH | $76,491.00 | Data Support Step 10 | **09/01/2025-06/30/2026** | Reappointment for the 2025-2026SY |
| Natalie Goris | Teacher of Elementary | $56,750.00 | BA, Step 1 | **09/01/2025-06/30/2026** | Rescission of Appointment to Teacher for the 2025-2026SY |
| Jillian Marmo | CST Social Worker/Benjamin Franklin | **$75,200.00** | **MA, Step 8** | 09/01/2025-06/30/2026 | Updated Salary for 2025-2026 SY |

EXPLANATION:    Agenda item submitted by Ms. Jones

33. **THEREFORE BE IT RESOLVED**, that the Teaneck Board of Education approves payment to the following teachers, on an as needed basis, for Summer 2025 Child Study Team meetings.

| Staff Name | Effective Dates | Amount of Stipends | Notes |
|---|---|---|---|
| James Lagomarsino | 07/01/2025-08/29/2025 | $50.00 per hour (maximum of 100 hours, not to exceed $5,000.00) | As needed to attend IEP Meetings |
| Suletty Diaz | 07/01/2025-08/29/2025 | $50.00 per hour (maximum of 100 hours, not to exceed $5,000.00) | As needed to attend IEP Meetings |
| Yvette Ortega-Ulubay | 07/01/2025-08/29/2025 | $50.00 per hour (maximum of 100 hours, not to exceed $5,000.00) | As needed to attend IEP Meetings |
| Kara Linder | 07/01/2025-08/29/2025 | $50.00 per hour (maximum of 100 hours, not to exceed $5,000.00) | As needed to attend IEP Meetings |
| Gina Petrosi-Higgins | 07/01/2025-08/29/2025 | $50.00 per hour (maximum of 100 hours, not to exceed $5,000.00) | As needed to attend IEP Meetings |
| Stella Segal | 07/01/2025-08/29/2025 | $50.00 per hour (maximum of 100 hours, not to exceed $5,000.00) | As needed to attend IEP Meetings |
| Shanice Wright | 07/01/2025- | $50.00 per hour | As needed to attend |

| | | | |
|---|---|---|---|
| | 08/29/2025 | (maximum of 100 hours, not to exceed $5,000.00) | IEP Meetings |
| Damson Kim | 07/01/2025-08/29/2025 | $50.00 per hour (maximum of 100 hours, not to exceed $5,000.00) | As needed to attend IEP Meetings |
| Angelina Cusack | 07/01/2025-08/29/2025 | $50.00 per hour (maximum of 100 hours, not to exceed $5,000.00) | As needed to attend IEP Meetings |
| Jean Mc Verry | 07/01/2025-08/29/2025 | $50.00 per hour (maximum of 100 hours, not to exceed $5,000.00) | As needed to attend IEP Meetings |
| Dana Orner | 07/01/2025-08/29/2025 | $50.00 per hour (maximum of 100 hours, not to exceed $5,000.00) | As needed to attend IEP Meetings |
| Iris Hernandez | 07/01/2025-08/29/2025 | $50.00 per hour (maximum of 100 hours, not to exceed $5,000.00) | As needed to attend IEP Meetings |
| Stephanie Davis | 07/01/2025-08/29/2025 | $50.00 per hour (maximum of 100 hours, not to exceed $5,000.00) | As needed to attend IEP Meetings |
| Abdoulaye Diallo | 07/01/2025-08/29/2025 | $50.00 per hour (maximum of 100 hours, not to exceed $5,000.00) | As needed to attend IEP Meetings |
| Barbara Metzler | 07/01/2025-08/29/2025 | $50.00 per hour (maximum of 100 hours, not to exceed $5,000.00) | As needed to attend IEP Meetings |

EXPLANATION:    Agenda item submitted by Dr. Scott

34. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent approves the following **Extra work Extra Pay Assignment**, at the Teaneck High School for the 2025-2026 school year;  these stipends are in accordance with the TTEA Contract.

| Staff Name | Title of Stipend | Stipend Amount |
|---|---|---|
| Luke Short | Marching Band Director | $9,600.00 |
| Joesph Hochgesang | Marching Band Assistant | $6,300.00 |

EXPLANATION:    Agenda items submitted by Ms. Jones

44

35. **THEREFORE BE IT RESOLVED**, that the Teaneck Board of Education approve payments to the following individual(s) for unused vacation, sick and/or personal business days in accordance with their appropriate collective bargaining agreement or employment contract. See page 248.

| Staff Name | Position | Total Amount | Separation Date |
|---|---|---|---|
| Monica Lawson | Teacher | $20,000.00 | 04/01/2025 |
| Danielle Drakeford | Teacher | $3,442.50 | 05/01/2025 |

EXPLANATION:    Agenda item submitted by Ms. Jones

36. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the payment to the following high school staff members for their participation in the **Freshman Orientation Program**.

| Staff Name | Effective Dates | Stipend Amount |
|---|---|---|
| Eric Akselrad | 08/27/2025 | $50.00 per hour (maximum of 6 hours not to exceed $300.00) |
| Kharisma Bettis | 08/27/2025 | $50.00 per hour (maximum of 6 hours not to exceed $300.00) |
| Douglas Book | 08/27/2025 | $50.00 per hour (maximum of 6 hours not to exceed $300.00) |
| Susie Cipriano | 08/27/2025 | $50.00 per hour (maximum of 6 hours not to exceed $300.00) |
| Natasha Green | 08/27/2025 | $50.00 per hour (maximum of 6 hours not to exceed $300.00) |
| Adriana Lagomarsino | 08/27/2025 | $50.00 per hour (maximum of 6 hours not to exceed $300.00) |
| James Lagomarsino | 08/27/2025 | $50.00 per hour (maximum of 6 hours not to exceed $300.00) |
| Christine Mayers | 08/27/2025 | $50.00 per hour x 6 hours (Not to exceed $300.00) |
| Michael Miuccio | 08/27/2025 | $50.00 per hour (maximum of 6 hours not to exceed $300.00) |
| Nurdan Musa | 08/27/2025 | $50.00 per hour (maximum of 6 hours not to exceed $300.00) |

45

| Dan Olender | 08/27/2025 | $50.00 per hour (maximum of 6 hours not to exceed $300.00) |
|---|---|---|
| Lance Parham | 08/27/2025 | $50.00 per hour (maximum of 6 hours not to exceed $300.00) |
| Christie Prepis | 08/27/2025 | $50.00 per hour (maximum of 6 hours not to exceed $300.00) |
| Terrie Roberts | 08/27/2025 | $50.00 per hour (maximum of 6 hours not to exceed $300.00) |
| Linea Rondeal | 08/27/2025 | $50.00 per hour (maximum of 6 hours not to exceed $300.00) |
| Adrienne Williams | 08/27/2025 | $50.00 per hour (maximum of 6 hours not to exceed $300.00) |
| Katierose Augustine | 08/27/2025 | $50.00 per hour (maximum of 6 hours not to exceed $300.00) |

EXPLANATION:    Agenda item submitted by Ms. Jones

46

37. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves the following certificated staff for the **Title 1 Summer Math and ELA Program at Lowell Elementary School.** Teachers will receive up to 3 hours of professional development.  This program will be funded with Title 1 Funds. Account #20-231-100-101-00-130-000.

| Staff Name | Position | Effective Dates | Stipend Amount | Notes |
|---|---|---|---|---|
| Lisa Guydon | Program Coordinator/Lead Teacher | 07/07/2025-07/31/2025 | $3,608.00 | 8:45 am-12:45 pm at Lowell Elementary |
| Aretha Blake-Arroyo | Teacher | 07/07/2025-07/31/2025 | $3,608.00 | 8:45 am-12:45 pm at Lowell Elementary |
| Makayla Brown | Teacher | 07/07/2025-07/31/2025 | $3,608.00 | 8:45 am-12:45 pm at Lowell Elementary |
| Natalia Drelich | Teacher | 07/07/2025-07/31/2025 | $3,608.00 | 8:45 am-12:45 pm at Lowell Elementary |
| Tiffany Echavarria | Teacher | 07/07/2025-07/31/2025 | $3,608.00 | 8:45 am-12:45 pm at Lowell Elementary |
| Dennis Hiel | Teacher | 07/07/2025-07/31/2025 | $3,608.00 | 8:45 am-12:45 pm at Lowell Elementary |
| Sharmaine Joseph | Teacher | 07/07/2025-07/31/2025 | $3,608.00 | 8:45 am-12:45 pm at Lowell Elementary |
| Susie Kim | Teacher | 07/07/2025-07/31/2025 | $3,608.00 | 8:45 am-12:45 pm at Lowell Elementary |
| | | Total: | $25,168.00 | |

EXPLANATION:    Agenda item submitted by Ms. Jones

38. **THEREFORE BE IT RESOLVED,** that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves payment to the following 18 teachers to participate in 12 hours of professional development on unpacking the New Jersey Student Learning Standards for Mathematics and realigning mathematics pacing calendars for the 2025-2026 school year. Teacher teams will use current mathematics data to align mathematics concepts for the upcoming school year. District funded – Account: 11-000-221-104-18-000-000.

| Name | Grade | Hours | Rate | Total |
|---|---|---|---|---|
| Emily Smith | Kindergarten | 12 | $50.00 | $600.00 |
| Kim Sullivan | First | 12 | $50.00 | $600.00 |
| Zara Matragas | Second | 12 | $50.00 | $600.00 |
| Jennifer Domingues | Second | 12 | $50.00 | $600.00 |
| Jennifer Rome | Second | 12 | $50.00 | $600.00 |
| Keith Orapello | Third | 12 | $50.00 | $600.00 |
| Natalia Drelich | Third | 12 | $50.00 | $600.00 |
| Saundra Warren-Givens | Fourth | 12 | $50.00 | $600.00 |
| Brandon Vargas | Fifth | 12 | $50.00 | $600.00 |
| Sheena Stanislaus | Fifth | 12 | $50.00 | $600.00 |
| Amanda Detrick | Sixth | 12 | $50.00 | $600.00 |
| Zain Conteh | Sixth | 12 | $50.00 | $600.00 |
| Josephine Cinnella | Seventh | 12 | $50.00 | $600.00 |
| Ashley Alcott | Seventh | 12 | $50.00 | $600.00 |
| Margaret Tewey | Eighth | 12 | $50.00 | $600.00 |
| Bydette Dostie | Eighth | 12 | $50.00 | $600.00 |
| Jennifer Kolb | Algebra 1 | 12 | $50.00 | $600.00 |
| Somia Benali | Algebra 1 | 12 | $50.00 | $600.00 |
| Summer Pirro | Geometry | 12 | $50.00 | $600.00 |
| Anila Hoxha | Geometry | 12 | $50.00 | $600.00 |

-

EXPLANATION:    Agenda item submitted by Dr. Scott

39. **THEREFORE BE IT RESOLVED**, that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves payment to the following 18 teachers to participate in 12 hours of professional development focused on unpacking the New Jersey Student Learning Standards for English/Language Arts and realigning ELA pacing calendars for the 2025-2026 school year. Teacher teams will use current literacy data to align instructional priorities and concepts for the upcoming school year. **District funded – Account: 11-000-221-104-18-000-000**

| Name | Grade | Hours | Rate | Total |
|---|---|---|---|---|
| Emily Smith | Kindergarten | 10 | $50 | $500 |
| Kate Augusto | Kindergarten | 10 | $50 | $500 |
| Kara Lindner | First Grade | 10 | $50 | $500 |
| Stephanie McKee | First Grade | 10 | $50 | $500 |
| Jemara Blount | Second Grade | 10 | $50 | $500 |
| Lorena Valer | Second Grade | 10 | $50 | $500 |
| Gillian Iappelli | Fifth Grade | 10 | $50 | $500 |
| Gillian Iappelli | Sixth Grade | 10 | $50 | $500 |

EXPLANATION:   Agenda item submitted by Dr. Scott

40. **WHEREAS**, N.J.A.C. 6A:8-3.1 requires the review and continuous improvement of curriculum; and

**THEREFORE BE IT RESOLVED**, that the Teaneck Board of Education, upon the recommendation of the Superintendent, approves payment, starting July 1, 2025, to the following staff members to develop or revise curriculum guides in alignment with district goals and state standards. District funded – Account: 11-000-221-104-18-000-000. See pages 249-251.

EXPLANATION:   Agenda item submitted by Dr. Scott

41. **THEREFORE BE IT RESOLVED** that the Teaneck Board of Education upon the recommendation of the Superintendent approves payment to the following practitioners to teach and coordinate the College Essay Writing Course beginning on July 7, 2025 through August 1, 2025.  Practitioners will be compensated at $50 per hour for work with students – THS Title I Funded – Account Code: 20-231-100-101-00-000-050.

| Name | Position | Hours | Rate | Total |
|---|---|---|---|---|
| Richard Rodda | College Essay Writing Teacher | 30 | $50.00 | $1,500.00 |
| Jennifer Taylor | College Essay Writing Coordinator | 30 | $50.00 | $1,500.00 |
| | | | **Total** | $3,000.00 |

EXPLANATION:   Agenda item submitted by Dr. Scott

50

Case 2:25-cv-16764-EP-JBC    Document 34-8    Filed 06/16/26    Page 99 of 169 PageID: 800

**I.    Public Comment Session II: (Open Discussion)**

Thank you all for being here tonight. This portion of the meeting is open to residents for comment. Residents are to state their names, the town they live in, and subject matter. Comments are limited to three minutes per person. This Public Comment session will last for thirty minutes. Public Comment session II is open to comments on other matters of public concern. Individuals may not give their time to another individual. Groups speaking on the same topic should combine their message into one. Members of the public are discouraged from speaking negatively about an employee or a student. Do not call an employee or student by name, otherwise the conversation will be discontinued. The Board bears no responsibility for comments made by the public. Comments regarding employees or students cannot be legally responded to by the Board. The Superintendent may respond to some questions at the conclusion of the public comment session. If you have a question or comment that requires a direct response, we encourage you to put your questions in an email to the Board secretary. All meetings are recorded and, therefore, statements made during public participation cannot be altered or amended and shall be included in the minutes as presented.

Motion to Open the Public Comment Session II:

Motion by Board Member_____, seconded by Board Member_____, Opened at _____P.M.

Motion to Close the Public Comment Session II:

Motion by Board Member_____, seconded By Board Member_____, Closed at _____P.M.

**II.    Executive Session**

**III.    New and Old Business**

**IV.    Adjournment**

51

# Exhibit G

**SPECIAL PUBLIC MEETING**
**SEPTEMBER 25, 2025**

**I.    Salute to the Flag**

**II.    Presiding Officer's Meeting Notice Statement**

"I hereby call to order the Special Public Meeting of the Teaneck Board of Education, held on Thursday, September 25, 2025, in person at Teaneck High School, third floor student center located at 100 Elizabeth Avenue, Teaneck, NJ and virtually via the Zoom app to begin, at 7:00 PM. Adequate notice of this meeting has been sent to The Record , The Star Ledger and filed with the Municipal Clerk and posted on the school district website at www.teaneckschools.org, on September 12, 2025 and September 17, 2025."

**III.    Roll Call**

| Board Member | Present | Absent |
|---|---|---|
| Dr. Gruber (David) | | |
| Ms. Hosein (Nadia) | | |
| Dr. Kirshenbaum (Gerald) | | |
| Ms. Levy (Jennifer) | | |
| Mrs. Reyes (Kassandra)  Vice President | | |
| Mr. Rodriguez (Jonathan) | | |
| Mrs. Williams (Clara) | | |
| Mr. Wolff (James) | | |
| Mr. Ha (Edward) - President | | |

**IV.    Public Comment**

Thank you all for being here tonight. For tonight, if you have comments to make that address issues other than the Superintendent's proposed contract, please make those comments during this first and only Public Comment portion, that will be devoted to hearing from the public regarding matters not on the contract. This portion will last for fifteen minutes. Groups speaking on the same topic should combine their message into one. The Board bears no responsibility for comments made by the public. If you have a question or comment that requires a direct response, we encourage you to put your questions in an email to the Board secretary. All meetings are recorded and, therefore, statements made during public participation cannot be altered or amended and shall be included in the minutes as presented.

Motion to open public comment: _____ Seconded by: _____ at _____ pm

Motion to close public comment: _____ Seconded by: _____ at _____ pm

**V.    Agenda Item (Public Hearing on the Superintendent's Contract)**

This portion of the meeting is open for comment on the Superintendent's contract. This Public Hearing session will last for forty five minutes. The proposed contract has been approved by the Bergen County Executive County Superintendent, whose approval allows us to conduct this Special Public Hearing. Residents are to state their name, the town they live in, and subject matter. Comments are limited to three minutes per person.

- Motion to open public hearing on Superintendent's contract: _____Seconded

    by:_____ at _____ pm

- Motion to close public hearing on Superintendent's contract: _____Seconded

    by:_____ at _____ pm

## VI.    Executive Session (If Needed)

Motion to adjourn public session and enter into executive session at ____pm

Motioned by: _____Seconded by:_____

## VII.   Adjournment

Motion to adjourn public meeting: _____ Seconded by:_____ at _____pm



**STATE OF NEW JERSEY**
DEPARTMENT OF EDUCATION
BERGEN COUNTY OFFICE
ONE BERGEN COUNTY PLAZA, SUITE 350
HACKENSACK, NJ 07601-7076
201-336-6875
FAX 201-336-6880

PHILIP D. MURPHY, *GOVERNOR*
TAHESHA L. WAY, *LT. GOVERNOR*

KEVIN DEHMER, *COMMISSIONER*
PATRICK J. FLETCHER, *EXECUTIVE COUNTY SUPERINTENDENT*

September 9, 2025

Ms. Glasshebra Jones
Human Resources
Teaneck School District
651 Teaneck Road
Teaneck, NJ 07666

Re:    *Superintendent Employment Contract*

Dear Ms. Jones:

In accordance with N.J.A.C. 6A:23A-3.1 and N.J.S.A. 18A:7-8(j), I have reviewed the employment contract for Dr. Andre Spencer, Superintendent, Teaneck Public School District. The provisions of this contract are in compliance with the regulations. This contract is approved for the period retroactive to July 1, 2025 through June 30, 2028.

If there are any changes to the terms of this contract, you will need to submit it to the Executive County Superintendent for review and approval prior to the required public notice and hearing of such changes. When the "approved" contract is fully executed, please provide a copy to the County Office with a copy of the Board Resolution approving the contract.

Sincerely,

Patrick J. Fletcher
Executive County Superintendent

PJF/jag

c: Dr. Victor Anaya, Business Administrator/Board Secretary
Board President (Letter ONLY)
Board Attorney

# EMPLOYMENT CONTRACT

This Employment Contract is made this ____ day of _____, 2025, between the

## TEANECK BOARD OF EDUCATION (hereinafter "the Board")

in Bergen County

with offices located at

651 Teaneck Road

Teaneck, New Jersey 07666

and

Dr. Andre D. Spencer (hereinafter "Dr. Spencer" or the "Superintendent"). This Employment Contract replaces and supersedes all prior employment contracts between the parties hereto. **Signatures in this Employment Contract constitute assent to a rescission of any and all prior contracts, as well as agreement to the terms herein.**

## PREAMBLE
## WITNESSETH

**WHEREAS,** the Board desires to employ Dr. Spencer as the Superintendent of Schools of the Teaneck School District ("District"); and,

**WHEREAS,** the Board desires to provide Dr. Spencer with a written Employment Contract ("Contract") in order to enhance administrative stability and continuity within the schools, which the Board believes generally improves the quality of its overall educational program; and,

**WHEREAS,** the Board and Dr. Spencer believe that a Contract is necessary to describe specifically their relationship and to serve as the basis of effective communication between them as they fulfill their governance and administrative functions in the operation of the education program of the schools; and,

**WHEREAS,** Dr. Spencer is the holder of a standard administrative certificate allowing him to be appointed as Superintendent of Schools;

Dr. Spencer Employment Contract
August 26, 2025
Page 2

**NOW, THEREFORE,** in consideration of the following mutual promises and obligations, the parties agree as follows:

**ARTICLE I**
**EMPLOYMENT**

The Board hereby agrees to employ Dr. Spencer as Superintendent of Schools for the period retroactive to July 1, 2025 through 11:59 p.m. June 30, 2028. The parties acknowledge that this Contract must be approved by the Executive Bergen County Superintendent of Schools prior to any formal Board action regarding this Contract.

**ARTICLE II**
**CERTIFICATION**

The parties acknowledge that Dr. Spencer is the holder of a Standard Administrative Certificate with a School Administrator Endorsement from the New Jersey Department of Education, authorizing Dr. Spencer to perform all the responsibilities of the Board's Superintendent of Schools.

If at any time during the term of this Contract, Dr. Spencer's Certification is revoked, this Contract shall be null and void as of the date of the revocation.

**ARTICLE III**
**DUTIES**

In consideration of the employment, salary and fringe benefits established hereby, Dr. Spencer hereby agrees to the following:

Dr. Spencer Employment Contract
August 26, 2025
Page 3

A. To perform faithfully the duties of Superintendent of Schools for the Board in accordance with the laws of the State of New Jersey, Rules and Regulations adopted by the State Board of Education, existing Board policies and those which are adopted by the Board in the future. The specific job description adopted by the Board, applicable to the position of Superintendent of Schools, is incorporated by reference into this Contract.

B. To devote his full time, skills, labor, and attention to his employment with the Board during the term of this Contract, and further agrees not to undertake consultative work, speaking engagements, writing, lecturing, or other professional duties for compensation without written permission of the Board.

Should Dr. Spencer choose to engage in such outside activities on weekends, on his vacation time, or at other times when Dr. Spencer is not required to be present in the District, he shall retain any honoraria paid.

Dr. Spencer shall notify the Board President in the event he is going to be away from the District on District business, for two (2) or more days in any week. Any time away from the District that is not for District business must be arranged in accordance with provisions in this Contract governing leaves of absence. The Board recognizes that the demands of the Superintendent's position require Dr. Spencer to work long and irregular hours, and occasionally may require that he attend to District business outside of the District.

C. To assume the responsibilities for the selection, renewal, placement, removal, and transfer of personnel, subject to the approval of the Board, by recorded roll call

Dr. Spencer Employment Contract
August 26, 2025
Page 4

majority vote of the full membership of the Board, and subject to applicable law, regulation, Board policies and directives. The Board shall not withhold its approval of any such recommendation for arbitrary or capricious reasons, as set forth in *N.J.S.A.* 18A:27-4.1.

D.  To non-renew personnel pursuant to *N.J.S.A.* 18A:27-4.1, provide notice to the Board of said non-renewal, and provide a written statement of reasons for non-renewal to the non-renewed employee, upon proper written request.

E.  To study and make recommendations with respect to all criticisms and complaints which the Board, either by committee or collectively, shall refer to him. Dr. Spencer shall have the right to contact the Board's attorney(s) for legal assistance as the need arises in carrying out his duties.

F.  To assume responsibility for the administration of the affairs of the District, including but not limited to programs, personnel, fiscal operations, and instructional programs. All duties and responsibilities therein will be performed and discharged by Dr. Spencer, or by his staff, at Dr. Spencer's direction.

G.  To have a seat on the Board and have the right to speak, but not vote,  on all issues before the Board in accordance with applicable law. Dr. Spencer shall attend all regular and special meetings of the Board, and all committee meetings thereof, and shall serve as advisor to the Board and said committees on all matters affecting the school District.

This provision shall not apply to those circumstances where a *Rice* notice has been served upon Dr. Spencer, notifying him that his employment will be

Dr. Spencer Employment Contract
August 26, 2025
Page 5

discussed in closed session, and Dr. Spencer has not requested that the meeting be conducted in public. This provision shall not apply in those circumstances where Dr. Spencer has a conflict of interest.

H. To suggest, from time to time, regulations, rules, policies, and procedures deemed necessary for compliance with law and/or for the well-being of the District. To perform all duties incident to the office of Superintendent of Schools and such other duties as may be prescribed by the Board from time to time, Dr. Spencer shall, at all times, adhere to all applicable federal and state statutes, rules, regulations, and executive orders, as well as District policies and regulations.

## ARTICLE IV
## SALARY AND BENEFITS

A. Any adjustment in salary made during the life of this Contract shall be in the form of an Amendment and shall become part of this Contract, but it shall not be deemed that the Board and Dr. Spencer have entered into a new Contract. Any adjustment in salary made during the life of this Contract shall be subject to the approval of the Executive Bergen County Superintendent of Schools.

1. **Salary**. The Board shall provide the following salary as part of Dr. Spencer's compensation:

a. **2025-2026 School Year**

For the **2025-2026** school year, the Board shall pay Dr. Spencer an annual salary of two hundred thirty-five thousand, five

Dr. Spencer Employment Contract
August 26, 2025
Page 6

($235,005.00) dollars, retroactive to July 1, 2025. Dr. Spencer's salary for this school year represents a three percent (3%) increase, or a six thousand, eight hundred, forty-five ($6,845.00) dollar increase to his 2024-2025 school year salary.

b. **2026-2027 School Year**

For the 2026-2027 school year, the Board shall pay Dr. Spencer an annual salary of two hundred thirty-nine thousand, seven hundred and six ($239,706.00) dollars. Dr. Spencer's salary for this school year represents a two percent (2%) increase to his 2025-2026 school year salary, or a four thousand seven hundred and one ($4,701.00) dollar increase to his 2025-2026 school year salary.

c. **2027-2028 School Year**

For the **2027-2028** school year, the Board shall pay Dr. Spencer an annual salary of two hundred forty-four thousand, five hundred and one ($244,501.00) dollars. Dr. Spencer's salary for this school year represents by two percent (2%) increase to his 2026-2027 salary, or a four thousand, eight hundred and ninety ($4,890.00) dollar increase to this 2026-2027 school year salary.

Dr. Spencer Employment Contract
August 26, 2025
Page 7

**No Increase After Expiration of Contract**. Notwithstanding the foregoing, no salary increase of any kind will take effect on midnight June 30, 2028 (the final day of this Contract) unless the parties have agreed to a contract extension and that extension has been approved by the Executive Bergen County Superintendent of Schools.  The terms of the extension will govern all increases to take effect after June 30, 2028.   Any renewal, extension, or modification of this Contract shall comply with the notice provisions of *P.L.2007, c. 53, The School District Accountability Act* and *N.J.A.C. 6A:23A-3.1, et seq.*

2.  **No Reduction in Salary/Compensation**. During the term of this Contract, including any extension thereof, Dr. Spencer shall not be reduced in compensation and/or benefits except as otherwise provided by law.

3.  **Salary Reduction Annuity.**  Dr. Spencer shall have the right during his employment, to take a reduction in salary and require the Board to use an amount corresponding to such reduction to purchase a tax-sheltered annuity and/or mutual fund investment in accordance with N.J.S.A. 18A:66-127, et seq. and applicable tax laws, including Sections 403 (b) and 457(b) of the Federal Internal Revenue Code. The maximum amount of reduction in salary authorized shall be the maximum tax deferral amount permitted by the Federal Internal Revenue Code.

Dr. Spencer Employment Contract
August 26, 2025
Page 8

B. **Sick leave**. Dr. Spencer shall receive twelve (12) sick days annually. Unused sick leave days shall be cumulative in accordance with the provisions of Title 18A. Upon Dr. Spencer's retirement, the Board shall pay him for his unused sick days subject to a maximum of fifteen thousand dollars ($15,000.00) at a per diem value of $1/260^{th}$ of his final annual salary. Payment shall be made by the Board within sixty (60) days of the Superintendent's last day of employment.

C. **Professional Memberships & Professional Development**. The Board shall pay one hundred (100%) percent of Dr. Spencer's membership fees and/or charges to the American Association of School Administrators, the New Jersey Association of School Administrators, and the County Association of School Administrators/County Round Table. The Board shall pay all costs and fees associated with any state-mandated continuing education. Dr. Spencer shall be entitled to attend the annual NJSBA Workshop and Convention, the annual conference of the NJASA, and the TECHSPO conference.

D. **Professional Publications**. Dr. Spencer may subscribe to appropriate educational and/or professional publications within the limit set in the annual budget.

E. **Health Benefits**:

1. The Board shall provide Dr. Spencer with individual or family health benefits coverage at his option. Dr. Spencer shall contribute toward the premium costs for all such coverages set forth in applicable State law and Regulation. This provision shall in no way

Dr. Spencer Employment Contract
August 26, 2025
Page 9

link this Contract with any agreement collectively negotiated with District employees. The premium contribution shall be paid by Dr. Spencer through payroll deduction.

2. Dr. Spencer may waive coverage in any of the health benefits plans if covered through a spouse, civil union, or domestic partner's health plan, and in accordance with procedures established by the Board. In such case, Dr. Spencer will not be required to contribute towards premium costs as set forth in applicable State law and regulation. In the event of a waiver of health benefits, the Board shall pay the Superintendent the lesser of five thousand dollars ($5,000.00) or twenty-five percent (25%) of the value of the premium saved.

F. **Vacation Leave**:

1. Dr. Spencer shall be entitled to earn twenty-five (25) vacation days, at the rate of 2.083 per month, for each school year (July to June) covered by this Employment Contract. While it is understood and agreed that vacation days are earned on a pro-rata monthly basis, all vacation days will be available for the Superintendent's use on July 1st of each school year. Dr. Spencer agrees to make all reasonable efforts to take his vacation days when school is not in session and when an event or circumstance of special importance is not taking place or occurring in the District. Board President approval will be required for vacations of five (5) consecutive days or more, when school is in session. Any vacation days unused in the year in which they accrued may be accumulated for one (1) additional year beyond the year of accrual. However, any vacation days remaining unused after the one additional year period shall be forever forfeited.

Dr. Spencer Employment Contract
August 26, 2025
Page 10

2. Upon separation from employment, Dr. Spencer shall be compensated for all accumulated unused vacation days. Payment shall be made by the Board within sixty (60) days of the Superintendents last day of employment. Compensation for unused vacation leave pursuant to this Section shall be at the rate of 1/260th of the annual salary for each unused vacation day.  In the event of the Superintendent's death, the Board shall pay his estate for his unused vacation days.

3. In accordance with *N.J.S.A.* 18A:30-9.1, vacation days not taken in a given year because of duties directly related to a state of emergency declared by the Governor may accumulate at the discretion of the Board pursuant to a plan established by the Board until such time as the Superintendent uses the accumulated vacation days or the Superintendent is compensated for the accumulated unused vacation days following a Board resolution approving payment of same.

G. **Holiday Leave**. Dr. Spencer shall be entitled to all holidays granted to other Administrators in the District.

H. **Personal Leave**. Dr. Spencer shall be entitled to four (4) personal days and three (3) family illness days annually.  Unused personal business days shall be carried over as sick days, in accordance with *N.J.S.A.* 18A:30-7, but no more than fifteen (15) sick days can be accumulated in one year.

I. **Mileage Reimbursement**. Dr. Spencer shall be reimbursed for actual mileage when using his personal vehicle for Board business as annually established by the Annual Appropriations Act or the New Jersey Office of Management and Budget.

Dr. Spencer Employment Contract
August 26, 2025
Page 11

_Reimbursement for the use of a personal vehicle shall be tendered only upon proof of compliance with applicable regulations.

J. **Attendance Record**. Dr. Spencer shall be responsible for filing a time-off slip, _in advance of the time off, as set forth herein, or immediately upon his return to the District in the event of an unplanned absence, with the Board Secretary each time any leave is taken. Dr. Spencer and the Board President shall periodically review Dr. Spencer's attendance record to assure correctness.

K. **Professional Liability**. The Board agrees that it shall defend, hold harmless, and indemnify Dr. Spencer from any and all demands, claims, suits, actions, and legal proceedings brought against Dr. Spencer in his individual capacity or in his official capacity as agent and/or employee of the Board provided the incident, which is the subject of any such demand, claim, suit, action or legal proceeding, arose while Dr. Spencer was acting within the scope of his employment. If, in the good faith opinion of Dr. Spencer, a conflict exists in regard to the defense of any claim, demand or action brought against him, and the position of the Board in relation thereto, and the Board agrees that such a conflict exists, Dr. Spencer may engage his own legal counsel, in which event the Board shall indemnify Dr. Spencer for the reasonable costs of his legal defense. The Board further agrees to cover Dr. Spencer under the Board's liability insurance policies, including employment practices liability coverage, in the minimum amount of one million ($1,000,000.00) dollars. The Board's agreement in this Section does not include any civil, administrative, quasi-criminal or criminal actions that have been initiated by the Board against Dr. Spencer.

Dr. Spencer Employment Contract
August 26, 2025
Page 12

L. **Bereavement Leave.** The Superintendent shall be entitled to five (5) days of leave, without loss of pay due to the death of his father, mother, husband, partner in a civil union, brother, sister, father-in-law, mother-in-law, son, daughter, grandchild, or any person permanently living with the Superintendent. The Superintendent shall be entitled to two (2) days of leave, per incident, without loss of pay due to the death of a sister-in-law, brother-in-law, aunt, uncle or other near relative.

M. **Computer/Cellphone.** The Board shall supply the Superintendent with the use of smartphone/iPhone and the use of a laptop computer/iPad (with Internet access) which are the property of the Board and shall be returned to the District at the end of the Superintendent's employment with the District. The Board shall be responsible for all maintenance and software updates associated with the laptop computer. The laptop computer/iPad shall be replaced as necessary. Incidental personal use of these devices by the Superintendent shall be permitted.

**ARTICLE V**
**ANNUAL EVALUATION**

The Board shall evaluate Dr. Spencer's performance at least once a year on or before June 30th in accordance with statutes, regulations and Board policy relating to Dr. Spencer's evaluation. Each annual evaluation shall be in writing and shall represent the evaluation of a majority of the Board. A copy of the evaluation shall be provided to Dr. Spencer, and Dr. Spencer and the Board shall meet to discuss the findings. The Board may meet in closed session to discuss the evaluation and the Dr. Spencer's performance where a *Rice* notice has been served upon Dr. Spencer, giving notice that Dr. Spencer's

Dr. Spencer Employment Contract
August 26, 2025
Page 13

employment will be discussed in closed session, and Dr. Spencer has not requested that the meeting be conducted in public. The evaluations shall be based upon the criteria adopted by the Board, the goals and objectives of the District, which shall include encouragement of student achievement, the responsibilities of Dr. Spencer as set forth in the job description for the position of Superintendent of Schools, the District's placement on the New Jersey Quality Single Accountability Continuum (with respect to those District Performance Reviews that are within Dr. Spencer's control), and such other criteria as the State Board of Education shall by regulation prescribe. In the event that the Board determines that the performance of Dr. Spencer is unsatisfactory in any respect, it shall describe in writing, and in reasonable detail, the specific instances of unsatisfactory performance. The evaluation shall include specific recommendations for improvement in all instances where the Board deems performance to be unsatisfactory. Dr. Spencer shall have the right to respond in writing to the evaluation; this response shall become a permanent attachment to the evaluation in question. On or before June 1st of each year of this Contract, Dr. Spencer and the Board shall meet to review the evaluation format and to mutually determine the evaluation format to be used in the subsequent school year. The final draft of the annual evaluation shall be adopted by the Board by June 30 of each year of this Contract. Dr. Spencer shall propose a schedule for evaluation for the next year to the Board President by the annual organization meeting each year.

A. Unless the parties have already done so, within ninety (90) days of the execution of this Contract, the parties shall meet to establish the District's goals and objectives for the ensuing school year. Said goals and objectives shall be reduced to writing and

Dr. Spencer Employment Contract
August 26, 2025
Page 14

shall be among the criteria by which Dr. Spencer is evaluated, as provided herein. On

or prior to June 1 of each succeeding school year, the parties will meet to establish the

District's goals and objectives for the next succeeding school year, in the same

manner and with the same effect as heretofore described.

B. The parties also agree that the Board shall not hold any discussions regarding the

Superintendent's employment unless Dr. Spencer is given written notice at least

forty-eight (48) hours in advance and is given the opportunity to address the Board in

closed session with a representative of his choosing. In addition, the Board shall not

hold any discussions with regard to Dr. Spencer's performance, or that may adversely

affect Dr. Spencer's employment, in public session, unless Dr. Spencer requests that

such discussions be held in public session, pursuant to the Open Public Meetings Act.

## ARTICLE VI
## TERMINATION OF EMPLOYMENT CONTRACT

A. This Contract shall terminate, Dr. Spencer's employment will cease, and no salary

shall thereafter be paid, under any one of the following circumstances:

    1. failure to possess/obtain proper certification;

    2. revocation or suspension of Dr. Spencer's certificate, in which case

       this Contract shall be null and void as of the date of revocation, as

       required by *N.J.S.A.* 18A:17-15.1;

    3. forfeiture under *N.J.S.A.* 2C: 51-2;

Dr. Spencer Employment Contract
August 26, 2025
Page 15

    4.   mutual agreement of the parties;

    5.   notification in writing by the Board to Dr. Spencer, at least one hundred twenty (120) calendar days prior to the expiration of this Contract, of the Board's intent not to renew this Contract subject to Article VII; or

    6.   material misrepresentation of employment history, educational and professional credentials, and/or criminal background, subject to N.J.S.A. 18A:6-10, et seq.

In the event Dr. Spencer is arrested and charged with a criminal offense which could result in forfeiture under *N.J.S.A.* 2C: 51-2, the Board reserves the right to suspend him pending resolution of the criminal charges. Such suspension shall be with pay prior to indictment, and may be with or without pay, at the Board's discretion, subsequent to indictment, unless the Board certifies contractual tenure charges.

B.  Nothing in this Contract shall affect the Board's rights with regard to suspending Dr. Spencer pursuant to *N.J.S.A.* 18A:6-8.3 and applicable case law.

C.  Dr. Spencer may terminate this Employment Contract upon at least ninety (90) calendar days' written notice to the Board, filed with the Board Secretary, of his intention to resign.

D.  Dr. Spencer shall not be dismissed or reduced in compensation during the term of this Contract, except as authorized by paragraphs B. and C. *supra*, and *N.J.S.A.* 18A:17-20.2, provided, however, that the Board shall have the authority to relieve Dr.

Dr. Spencer Employment Contract
August 26, 2025
Page 16

Spencer of the performance of his duties in accordance with *N.J.S.A.* 18A:27-9, so long as it continues to pay his salary and benefits for the duration of the term. The parties understand that any early termination must comply with the provisions of *P.L.* 2007, *c.* 53, *The School District Accountability Act.*

## ARTICLE VII
## RENEWAL – NON-RENEWAL

This Employment Contract shall automatically renew for a term of three (3) years, expiring midnight, June 30, 2031, unless any of the following occur:

A.     The Board, by contract, reappoints Dr. Spencer for a different term allowable by law;

B.  The Board notifies Dr. Spencer in writing, prior to March 2, 2028 that he will not be reappointed at the end of the current term, in which case his employment shall cease upon the expiration of this Contract. Any action by the Board to notify the Superintendent that his employment will not be renewed shall occur by an affirmative vote of a majority of the full membership of the Board; or

C.  in accordance with such laws and regulations that would require nullification of this Contract.

## ARTICLE VIII
## COMPLETE AGREEMENT

Dr. Spencer Employment Contract
August 26, 2025
Page 17

This Contract embodies the entire agreement between the parties hereto and cannot be varied except by written agreement of the undersigned parties.

### ARTICLE IX
### SAVINGS AND CONFLICTS CLAUSE

If, during the term of this Contract, it is found that a specific clause of the Contract is illegal under federal or state law, the remainder of the Contract is not affected by such a ruling and shall remain in full force. In the event of any conflict between the terms, conditions and provisions of this Contract and the provisions of the Board's policies or any permissive federal or State law, the terms of this Contract shall take precedence over the contrary provisions of the Board's policies or any such permissive law, unless otherwise prohibited by law.

### ARTICLE X
### RELEASE OF PERSONNEL INFORMATION
### PERSONNEL RECORDS

Dr. Spencer shall have the right, upon request, to review the contents of his personnel file and to receive copies at Board expense of any documents contained therein. Dr. Spencer shall be entitled to have a representative accompany him during such review. No material derogatory to Dr. Spencer's conduct, service, character, or personality shall be placed in his personnel file unless he has had an opportunity to review the material. Dr. Spencer shall acknowledge that he has had the opportunity to review such material by affixing his signature to the copy to be filed with the express understanding that such signature in no way indicates

Dr. Spencer Employment Contract
August 26, 2025
Page 18

agreement with the contents thereof. Dr. Spencer shall also have the right to submit a written

answer to such material.

**IN WITNESS WHEREOF**, the parties have set their hands and seals to this Employment

Contract effective on the day and year first above written.

DR. ANDRE SPENCER                          BOARD OF EDUCATION OF
                                           THE TEANECK SCHOOL DISTRICT

_____            _____
Dr. Andre D. Spencer                       Edward Ha, President

Date: _____            Date: _____

WITNESS:                                   WITNESS:

_____            _____

Home (/manage/s/)        District Educators (/manage/s/account/Account/00B8z000000TbwOEAS)        Provisional Teacher Process (/manage/s/provisional-teacher-p

## Welcome to NJEdCert
# New Jersey Educator Certification

Create Case

This is what we found for **Andre Devour Spencer** (/0018z0000033M80AAE) - Tracking Number (00712585) - TCIS Tracking Number (712585) - Email Add

(required)    **Licenses**

| License ... | Category | Record Ty... | Endorsement Title | Endorsement Code | Type | Status |
|---|---|---|---|---|---|---|
| 00856474 (... | Administrative | Certificate | School Administrator | 0101 | CE | Inactive |
| 01676099 (... | Administrative | Provisional | School Administrator | 0101 | CE | Inactive |
| 01737915 (... | Administrative | Certificate | School Administrator | 0101 | Standard | Active |

(required)    **Cases**

| Case Number | Case Type | Status | C |
|---|---|---|---|
| 00077454 (https://njdoe.my.site.com/manage/s/detail/50... | New Provisional | Closed | C |
| 00229712 (https://njdoe.my.site.com/manage/s/detail/50... | Conversion to Standard | Closed | C |

(required)    **Applications**

| Application ID | Record Type Name | Category | Endorsement Title | Endorsement... | Type |
|---|---|---|---|---|---|
| App-2022-051232 (h... | Provisional | Administrative | School Administrator | 0101 | CE |
| App-2024-162467 (h... | Conversion | | School Administrator | | Standard |

(required)    **EPP Nominations**

This table currently has no data to display

(required)    **Verifications**

This table currently has no data to display

No Assessments were found for Andre.

The District Code List can be found here: https://homeroom5.doe.state.nj.us/directory/districtDL.php (https://homeroom5.doe.state.nj.us/directory/districtDL.php)

Certifications (?tabset-8c52e=1)    Provisional Program Details (?tabset-8c52e=2)    Cases (?tabset-8c52e=25cab)    Applications (?tabset-8c52e=e22aa)

Licenses
Recently Viewed ▾    ꜜ

15 items • Updated a few seconds ago

Q Search this list...

| | License ... | Record T... | Educator Name | Category | Endorsement Title | Endo... | Type | Status | Date Iss... | |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 018810... | Provisional | Tyler Williams (... | Instructional | Students with Disabil... | 2475 | CE | Active | 8/1/2025 | ▼ |
| 2 | 017319... | Provisional | Ragwa Eleish (/... | Instructional | Middle School with S... | 1103 | CEAS | Inacti... | 9/1/2023 | ▼ |
| 3 | 018607... | Certificate | Melissa De Goe... | Instructional | Business: Comprehen... | 1300 | CE | Active | 3/4/2025 | ▼ |
| 4 | 018578... | Provisional | Cody Conrad (/... | Instructional | Social Studies | 2300 | CEAS | Active | 12/5/20... | ▼ |
| 5 | 018491... | Provisional | Devin Davis (/m... | Instructional | Health and Physical E... | 1605 | CEAS | Active | 10/22/2... | ▼ |
| 6 | 018429... | Provisional | Helene NGuess... | Instructional | Elementary School Te... | 1001 | CE | Inacti... | 9/13/20... | ▼ |
| 7 | 018433... | Provisional | Susan F Alfons... | Instructional | Students with Disabil... | 2475 | CE | Active | 9/1/2024 | ▼ |
| 8 | 018563... | Provisional | Spencer Lorenz... | Instructional | Social Studies | 2300 | Limited CE | Active | 12/1/20... | ▼ |
| 9 | 018435... | Provisional | Radeyyah Hoss... | Instructional | Mathematics | 1900 | CEAS | Active | 9/1/2024 | ▼ |
| 10 | 016919... | Certificate | Alyssa S Jackso... | Instructional | Students with Disabil... | 2475 | CE | Active | 4/27/20... | ▼ |
| 11 | 018513... | Provisional | Vladimir Andre... | Instructional | Spanish | 1550 | CEAS | Inacti... | 11/25/2... | ▼ |
| 12 | 018296... | Provisional | Susie Kim (/ma... | Instructional | Elementary School Te... | 1001 | CEAS | Inacti... | 2/28/20... | ▼ |
| 13 | 007708... | Certificate | Jessica Jones (/... | Instructional | Art | 1200 | CEAS | Active | 2/1/2011 | ▼ |
| 14 | 017071... | Certificate | Alexis Morales ... | Instructional | Mathematics | 1900 | CEAS | Inacti... | 8/3/2023 | ▼ |
| 15 | 016689... | Certificate | Alexis Morales ... | Instructional | Mathematics | 1900 | Charter S... | Active | 11/15/2... | ▼ |

In accordance with N.J.A.C. 6A:9B-8.4 (b) **The employing school district shall register the provisional teacher within 60 days of the date the CE or CEAS holder begins employment.** A provisional teacher registration submitted after the 60th day will be marked as out of regulation and denied.

Please also note the following when proceeding with **provisional renewals and conversion to standards cases:**

Educator must complete payment within 30 days. If payment is not made within 30 days, the case will expire, and the district will need to submit a new conversion to standard or renewal case for the educator

Provisional Educator Process Virtual Training PowerPoint click the hyperlink: ( (https://www.nj.gov/education/certification/ctydistinfo/)County & District Information (https://www.nj.gov/education/certification/ctydistinfo/) )

Provisional Teacher Program YouTube videos are available on the certification website under County & District Information (https://nam04.safelinks.protection.outlook.com/?url=https%3A%2F%2Fwww.nj.gov%2Feducation%2Fcertification%2Fctydistinfo%2F&data=05%7C02%7CVickie.Sikorski%40doe.nj.gov%7Cd34d1e1032424f561fe508dd93b4698d%7C4b4f7312dd094959b666d5ba6dc8f4b4%7C0%7C0%7C638829125262735135%7CUnknown%7CTWFpbGZsb3d8eyJFbXB0eU1hcGki0nRydWUsIlYiOiIwLjAuMDAwMCIsIlAiOiJXaW4zMiIsIkFOIjoiTWFpbCIsIldUIjoyfQ%3D%3D%7C0%7C%7C%7C&sdata=WXyBPTTI9aOFk93CzyPZuNjL5vyv%2Bstu6zKVOVsNq%2F0%3D&reserved=0)

o **Video 1: NJEdCert video on provisional registration, final summative rating, and termination.** (https://nam04.safelinks.protection.outlook.com/?url=https%3A%2F%2Fyoutu.be%2Fi96CNSI5uCA&data=05%7C02%7CVickie.Sikorski%40doe.nj.gov%7Cd34d1e1032424f561fe508dd93b4698d%7C4b4f7312dd094959b666d5ba6dc8f4b4%7C0%7C0%7C638829125262755648%7CUnknown%7CTWFpbGZsb3d8eyJFbXB0eU1hcGki0nRydWUsIlYiOiIwLjAuMDAwMCIsIlAiOiJXaW4zMiIsIkFOIjoiTWFpbCIsIldUIjoyfQ%3D%3D%7C0%7C%7C%7C&sdata=twBHA89Hfp93SSMczjrpWQWuq9K0%2FXzo2qFUMgZR8v0%3D&reserved=0)

o **Video 2 :How to submit a provisional renewal case in NJEdCert YouTube video** (https://nam04.safelinks.protection.outlook.com/?url=https%3A%2F%2Fyoutu.be%2FZlvukarXeqY&data=05%7C02%7CVickie.Sikorski%40doe.nj.gov%7Cd34d1e1032424f561fe508dd93b4698d%7C4b4f7312dd094959b666d5ba6dc8f4b4%7C0%7C0%7C638829125262770434%7CUnknown%7CTWFpbGZsb3d8eyJFbXB0eU1hcGki0nRydWUsIlYiOiIwLjAuMDAwMCIsIlAiOiJXaW4zMiIsIkFOIjoiTWFpbCIsIldUIjoyfQ%3D%3D%7C0%7C%7C%7C&sdata=%2BZyYLHbxqUGbWN6s4WSvilGjzvegTbN5i06iz9nDI%2B8%3D&reserved=0)

o **Video 3: How to submit a CEAS conversion to standard case in NJEdCert YouTube video** (https://nam04.safelinks.protection.outlook.com/?url=https%3A%2F%2Fyoutu.be%2F9gxDke-W2OI&data=05%7C02%7CVickie.Sikorski%40doe.nj.gov%7Cd34d1e1032424f561fe508dd93b4698d%7C4b4f7312dd094959b666d5ba6dc8f4b4%7C0%7C0%7C638829125262784250%7CUnknown%7CTWFpbGZsb3d8eyJFbXB0eU1hcGki0nRydWUsIlYiOiIwLjAuMDAwMCIsIlAiOiJXaW4zMiIsIkFOIjoiTWFpbCIsIldUIjoyfQ%3D%3D%7C0%7C%7C%7C&sdata=0aNb12%2BtRw3wyDXIpjdDrl0and8MSoUu1YBLZF3NJa0%3D&reserved=0)

o **Video 4: How to submit a CE conversion to standard case in NJEdCert YouTube video** (https://nam04.safelinks.protection.outlook.com/?url=https%3A%2F%2Fyoutu.be%2FzItrKn8x4C4&data=05%7C02%7CVickie.Sikorski%40doe.nj.gov%7Cd34d1e1032424f561fe508dd93b4698d%7C4b4f7312dd094959b666d5ba6dc8f4b4%7C0%7C0%7C638829125262797169%7CUnknown%7CTWFpbGZsb3d8eyJFbXB0eU1hcGki0nRydWUsIlYiOiIwLjAuMDAwMCIsIlAiOiJXaW4zMiIsIkFOIjoiTWFpbCIsIldUIjoyfQ%3D%3D%7C0%7C%7C%7C&sdata=qZxTO2EnR9kezK2EXYbCgWDe2%2BwAdbGWs2a7Ac1MnIc%3D&reserved=0)

o **Video 5: How to submit a Customer Service Web to Case in NJEdCert YouTube video** (https://nam04.safelinks.protection.outlook.com/?url=https%3A%2F%2Fyoutu.be%2FRqEb3exIU08&data=05%7C02%7CVickie.Sikorski%40doe.nj.gov%7Cd34d1e1032424f561fe508dd93b4698d%7C4b4f7312dd094959b666d5ba6dc8f4b4%7C0%7C0%7C638829125262809923%7CUnknown%7CTWFpbGZsb3d8eyJFbXB0eU1hcGki0nRydWUsIlYiOiIwLjAuMDAwMCIsIlAiOiJXaW4zMiIsIkFOIjoiTWFpbCIsIldUIjoyfQ%3D%3D%7C0%7C%7C%7C&sdata=dSOUvVIKQZNwCC4WY0LTD6tLEMCj7O3DeptoOX4aAdM%3D&reserved=0)

Register an Educator for a New Provisional

Renew a Provisional License

Initiate Conversion to Standard

Renew an Emergency License

Report Conduct Issues

Register an Educator for Limited Non Citizen Standard





Copyright © State of New Jersey, 1996-2022
Department of Education
PO Box 500
Trenton, NJ 08625-0500
(609) 376-3500

| SUPERINTENDENT | | | |
|---|---|---|---|
| **Detailed Statement of Contract Costs** | | | |
| District: Teaneck | | | |
| Name: Andre D. Spencer | | | |
| Date BOE Authorized Submission to County Office | 9/3/2025 | | |
| District Grade Span | K-12 | | |
| On Roll Students as of 09/03/2025 | 3,914 | | |
| Yrs. In District as Supt 3 Total Yrs. Exp. In Position 5 | Year 1 | Year 2 | Year 3 |
| Contract Term: July 1, 2025 - June 2028 | 2025-2026 | 2026-2027 | 2027-2028 |
| **Salary** | | | |
| Salary | $ 235,005 | $ 239,706 | $ 244,501 |
| High School | $ - | $ - | $ - |
| Longevity | $ - | $ - | $ - |
| Shared Service | $ - | $ - | $ - |
| Total Annual Salary | $ 235,005 | $ 239,706 | $ 244,501 |
| **Additional Salary** | | | |
| Quantitative Merit Goals | $ - | $ - | $ - |
| Qualitative Merit Goals | $ - | $ - | $ - |
| Total Additional Salary | $ - | $ - | $ - |
| Total Annual Salary plus Additional Salary | $ 235,005 | $ 239,706 | $ 244,501 |
| **Board Contribution for Cost of Premiums for:** | | | |
| Health Insurance - Reflects Net of EBC Contribution | $ - | $ - | $ - |
| Prescription Insurance | $ - | $ - | $ - |
| Dental Insurance | $ - | $ - | $ - |
| Vision Insurance | $ - | $ - | $ - |
| Disability Insurance | $ - | $ - | $ - |
| Long-term Care Insurance | $ - | $ - | $ - |
| Life Insurance | $ - | $ - | $ - |
| Other Insurance - Describe: | $ - | $ - | $ - |
| Waiver of Benefits | $ 5,000 | $ 5,000 | $ 5,000 |
| Section 125 Plan Reimbursements - Describe: | $ - | $ - | $ - |
| Board Contribution for Cost of Premiums | $ 5,000 | $ 5,000 | $ 5,000 |
| Employee contribution to health benefits as per law | $ - | $ - | $ - |
| Total Health Benefit Compensation | $ 5,000 | $ 5,000 | $ 5,000 |
| **Other Compensation** | | | |
| Travel and Expense Reimbursement (Estimated Annual Cost) | $ 5,000 | $ 5,000 | $ 5,000 |
| Professional Development (Capped Amount or **Estimated** Annual Cost) | $ 3,000 | $ 3,000 | $ 3,000 |
| Tuition Reimbursement | $ - | $ - | $ - |
| Mentoring Expenses - Describe: Dr. Spencer has a certificate of eligibility and must be mentored | $ 3,000 | $ 3,000 | $ 3,000 |
| National/State/County/Local/Other Dues | $ 3,500 | $ 3,500 | $ 3,500 |
| Subscriptions | $ - | $ - | $ - |
| Board Paid Cell Phone or Reimbursement for Personal Cell Phone | $ - | $ - | $ - |
| Computer for Home use, including supplies, maintenance, internet | $ - | $ - | $ - |
| Other - Describe: | $ - | $ - | $ - |
| Total Other Compensation | $ 14,500 | $ 14,500 | $ 14,500 |
| **Sick and Vacation Compensation** | | | |
| Max Paid for Unused Sick Leave Upon Retirement | $ 15,000 | $ 15,000 | $ 15,000 |
| Max Paid for Unused Vacation Leave - Retirement or Separation | $ - | $ 34,573 | $ 47,019 |
| Total Sick and Vacation Compensation | $ - | $ 46,097 | $ 47,019 |
| **TOTAL CONTRACT COSTS** | $ 254,505 | $ 305,303 | $ 311,020 |
| Tot. Vac. Days__25__ Holidays__13__ Personal__4__ Total__42____ | | | |

# Exhibit H

**TEANECK BOARD OF EDUCATION**
Office of the Superintendent of Schools

Andre D. Spencer, ED.d.
Superintendent of Schools
Superintendent@teaneckschools.org

Lorena Meadows
Director of Counseling
Lmeadows@teaneckschools.org

Connie Le
Director of Partnership, Outreach, and Special Projects
Cle@teaneckschools.org

Dear Teaneck Families:

In the midst of the latest incidents in the cycle of violence in the Middle East, we recognize the fear, grief, and pain that our community is experiencing. Therefore, we want to express a strong sense of compassion for our communities. The unfortunate situation in the Middle East has far-reaching implications on many of our community members, and for this reason, we want to let our families know that Teaneck Public Schools stands ready to support.

It is highly recommended that Teaneck Public Schools foster an open dialogue, accompanied by respectful discussions, between our scholars, staff, and the broader community. It is imperative that we collaborate to gain a comprehensive understanding of the complex factors impacting our world and preventing world peace. As the Teaneck Family, we can reassure our children that they are safe, listen to them to understand how they are feeling, discuss the important issues in an age and developmentally appropriate way, and limit media exposure on television and social media.

We would like to convey that counseling services are readily available for our scholars and staff who may require assistance to cope with recent events. If any of our parents need counseling support, do not hesitate to contact us as well. We will do our best to connect you with local counseling services. Our scholars and staff are encouraged to contact their campus principal and/or counselor for support services. Our parents are encouraged to contact Mrs. Lorena Meadows, Director of Counseling for support services. In Teaneck Public School, we want our community to know that we are here to support you during these difficult times. Our counseling staff are trained to provide empathetic and confidential guidance.

Teaneck, We Stand Together!!

Educationally yours,

*Dr. Andre D. Spencer*

André D. Spencer, Ed.D.

Superintendent of Schools

Teaneck Public Schools

#ScholarsFirst

651 Teaneck Road,  Phone: 201-833-5498

Teaneck, NJ 07666    Fax: 201-837-9468

Exhibit I

# The Most Jewish City in New Jersey Has a Muslim Mayor and a Ban on Sunday Shopping

**How did this New York suburb, which decades ago suffered from racism and anti-Semitism, evolve into an example of coexistence?**

       Save  Zen Read



**Teaneck Mayor Mohammed Hameeduddin, right, and his deputy, Elie Katz.** Credit: Natan Dvir



**Tzach Yoked**
🔔 Follow
May 5, 2018

TEANECK – Over five decades ago, Teaneck was a drowsy suburb in northern New Jersey; a small town with a population of barely 30,000 whose main attraction was its proximity – less than 10 kilometers away – to New York City. It was during that period, in the early 1950s, that Teaneck, like hundreds of other American towns, experienced a dramatic population surge. Across the United States, people flocked from big, overcrowded cities to spacious, quiet suburbs. Millions of Americans were captivated by the idea of a private home, their own backyard and a garage. It was the American dream come true.

The transformation was as problem-ridden as it was rapid. The suburban, middle-class, white Christian majority, which saw their communities

morphing into something new, different and unwanted, tried to curb the phenomenon, sometimes using methods infected by overt racism and covert anti-Semitism. Entire locales found themselves divided into racially and religiously homogeneous neighborhoods. White Christians on one – almost always the nicer – side of town; blacks and other minorities on the other. Jews too, in most cases, were shunted to the margins, often becoming neighbors of the African-American minority. "The most characteristic feature of the postwar northern housing market," wrote historian Thomas J. Sugrue in his 2008 book "Sweet Land of Liberty: The Forgotten Struggle for Civil Rights in the North," "was its nearly complete segregation by race."

Teaneck was an extreme case. If in 1940 Jews constituted 1 percent of its population, by 1960 they accounted for 20 percent of the town's residents, and a few years later constituted no less than one-third of them. Just as dramatic as this growth was the hysterical reaction of the other inhabitants, which was unusually fierce compared to the situation in neighboring suburbs.

In a history thesis written at Columbia University in 2011, Rachel Mark notes how, "Both Jews and African Americans who moved to Teaneck in the 1950s experienced discrimination as the model town struggled to adapt to the transition." She adds that the social segregation there, manifested most blatantly in the form of separate residential areas, stemmed not only from the racism of the residents themselves but was also rooted in the local authorities, as manifested by "restrictive covenants, federal housing policies, and real estate agents."

Mark quotes sociologist Albert Gordon, who, in 1959, observed that "anti-Jewish discrimination is still a source of grave concern." Gordon, in his book "Jews in Suburbia," found that "there is sufficient evidence to indicate that restrictive covenants and other devices used to prevent Jewish settlement in suburban communities are part of a discriminatory pattern."

**It Looks Like Any American Suburb, but It Has a Dark Nazi Past**

**What Needs to Happen for Israel's Jews and Arabs to Coexist**

**Time to Nix the Two-state Solution. Here's the Alternative**

Eleanor Kieliszek, who served as Teaneck's first female mayor (1974-1978), recalled, as quoted in Mark's thesis, that when she first moved to the town, "there were people who, when they became conscious of the growth of the Jewish community, felt that it wasn't the community for them any longer." As a result, many of them simply moved away. Almost overnight, streets that had been synonymous with quality of life became ghost areas with rows of "for sale" signs in front of the homes.

But just then, as is often the case in cities that undergo rapid demographic change, the expressions of prejudice generated a counter-reaction of social solidarity. In protest against the mass flight, some residents began to put up "not for sale" signs in their front yards. The leaders of Teaneck's Jewish and black communities, aided by local civil rights activists, forged a united front in the struggle against racism and sought to improve the town's image.



**Teaneck, New Jersey.**  Credit: Natan Dvir

A watershed event was the sudden death, in 1959, of the town's mayor, August Hanniball, Jr., and his replacement by his Jewish deputy, Matthew Feldman. Feldman adopted a militant stance against the rampant bigotry he saw, even telling The New York Times that there was no Great Wall of China around the town preventing anyone who wasn't satisfied with Teaneck's urban fabric from leaving.

Within a few years, not only had the mass departures stopped, but, by 1964, Teaneck had become a symbol of tolerance nationally. It was the

first white-majority city in the United States to voluntarily adopt a policy of school integration. This went far beyond acceptance of a token number of black students by white-majority schools: There was organized busing of black children to schools in the white sections. The leaders of the Jewish community, who for years had found themselves on the side of the discriminated, were in the forefront of the fight for school desegregation.

Today, it would probably be hard to find a more established and thriving Jewish community than that of Teaneck anywhere in the United States. Its Jewish population of about 15,000 (most of them Modern Orthodox), out of a total population of 36,000-37,000, maintains a vibrant way of life that even neighboring New York can only envy. There are no fewer than 17 Modern Orthodox synagogues and four private Jewish schools (high-school yeshivas), three kosher supermarkets, five Jewish delis where people wait in line to buy gefilte fish and kugel for Shabbat, a host of glatt-kosher restaurants and cafes grouped together in a few adjacent streets.

**'There are so many like-minded things between Judaism and Islam. We both live our lives around prayers, we both have dietary restrictions, we can't eat pork, and family is important.'**

Then as now, even after full school integration was achieved and discrimination faded away, there appears to be something in the character of Teaneck that causes it to go on making history time and again, even in the face of all local political-social logic. Otherwise, how to explain the fact that for most of this decade the most "Jewish" city in New Jersey has had a mayor named Mohammed Hameeduddin – the first Muslim mayor in the history of the state, and only the third in the United States?

A devout Muslim whose parents were immigrants from India, Hameeduddin is now in his second term as mayor; he served in the post from 2010 to 2014, and was reelected after running again in April 2016 by the town council, following the death of the incumbent mayor, Lizette Parker.

"The Jewish community sells me the hametz [leavened food] every year before Passover for a nominal amount. I have the contract," Hameeduddin tells me when I meet him in his office, which is situated on a street packed with kosher restaurants. His Jewish deputy, Elie Katz, adds that the community feels comfortable selling its hametz to Hameeduddin for the week, since, "the most expensive thing is the alcohol, and we know that he won't drink it."

For the religiously observant Katz, Teaneck-born and the graduate of a local yeshiva, Hameeduddin is far more than Shabbes goy – an emissary through whom a religious commandment is fulfilled. When Katz ran for deputy mayor, "Mohammed ran my campaign," he notes, adding that in the last election, "the only kick-off party I had was hosted by the Muslim

community and the only victory party I had was hosted by the Muslim community."



**A sign calls for Elie Katz's re-election as deputy mayor of Teaneck, New Jersey.**  Credit: Natan Dvir

The mayor says he is often a Sabbath-meal guest in the home of the deputy mayor. "There are so many like-minded things between Judaism and Islam. We both live our lives around prayers, the food; we both have dietary restrictions, we can't eat pork, the family is very important," explains Hameeduddin, adding that there are only a few hundred Muslim residents in town.

The mayor mentions that he lives near both Katz and his synagogue, and that when the deputy "drops by with his kids on his way home on Shabbat, my kids will turn off the TV because they know it's Shabbat."

You don't have to be a political analyst or an expert in interpersonal dynamics to understand, within minutes of the start of the meeting, on which side the bread is buttered and which of the two has substantially more political and public backing. Which naturally raises the question of why Katz opted to make do with being the deputy (both serve in a part-time capacity).

Katz: "[Hameeduddin] not only offered to support me for mayor two years ago but also four years ago, six years ago and eight years ago, but I have no interest in it. I like to represent the people of Teaneck, and as mayor I feel like you have to do a balancing act to try to manage colleagues, and what I really want is to bring the voice of the people and not have to worry about other things."

Members of the Jewish community have their own explanation. "However you look at it, we are still in the Diaspora and not in the Land of Israel," says a leading Teaneck rabbi who asked not to speak for attribution. "It's true, thank God, that there is no anti-Semitism in Teaneck and that we enjoy full equal rights. But even today, despite all that, when I leave the yeshiva, I tuck my prayer fringes into my trousers. I have no desire to draw attention to my Jewishness, and the last thing people in the community want is a mayor who wears a kippa and who will draw fire. It's not a healthy situation for people to occupy themselves with the mayor's religious identity and with his being Jewish.

"In addition," the rabbi continues, "there is a real danger here of blasphemy. We don't want a religious mayor who will have to intervene and decide about issues relating to Shabbat violation or in matters relating to Christians or Muslims. That's a situation that can lead to many halakhic [Jewish law-related] problems that it's best to avoid."

**'The last thing people in the community want is a mayor who wears a kippa and who will draw fire.'**

Elie Y. Katz's "Discover Teaneck Tid-bits"

Share



Watch on YouTube

Another local rabbi, representing the predominantly Modern Orthodox population of Teaneck – which has virtually no ultra-Orthodox Jews, and only a very modest Conservative and Reform presence – provides an

additional perspective: "From our point of view, it makes no difference who the mayor is. We have our own system which is hardly connected to the municipal public system. We send our children to private schools, our synagogues are funded by donations, we have kosher restaurants. Thank God, we are well off, and if there is something we need from City Hall, such as police protection outside the synagogues on Shabbat, or public transportation to yeshivas, we have taken care of that, too. As far as we are concerned, the less we are involved in municipal politics, the better."

Hameeduddin will not be drawn into questions of identity politics. "It is meaningless whether I am Muslim, Christian or Jewish," he declares. "I represent all the people of Teaneck and I aspire to act out of a consensus." But like most Muslim public figures in the United States, he too has learned that in the local political reality there are some things you can't escape. For example, asked why he entered politics, he relates, "After the 9/11 attack, we submitted a request to enlarge one of our two mosques in Teaneck and didn't get approval." That refusal, he adds, went on for about six years, until 2007.

"At one stage," says Hameeduddin, "a close friend who was elected to the city council asked me to try to help out. Even though I had no political ambitions, I agreed to sit on the city's planning board and help with the matter of expanding the mosque. As a result, I became more involved in local politics. Two years later I ran for councilman and four years later for mayor."

Three years ago, Hameeduddin was part of a delegation of Muslim public figures and academics from the United States who came to Israel as part of their participation in a two-year program about Judaism, sponsored by the pluralistic Shalom Hartman Institute in Jerusalem. Hameeduddin got into a vociferous argument – which, according to reports on pro-Arab websites, deteriorated into physical violence – with several local Arabs who didn't like the idea of Muslims taking part in a "Zionist" program.

Hameeduddin describes the program, which is only for Muslims, as "a rare opportunity to learn about religious issues from a modern perspective. About how we can examine the traditional scriptures and project from them about our way of life today, about how traditional Judaism needs to be a large tent for different communities – as does Islam. About how we can and need to learn to respect other religions."

**'.It's very expensive to live a Jewish life'**

The 10-day visit to Israel was the culmination of two years of lectures via internet and four weekend sessions. "I had general knowledge about the Jewish religion, but I'd never had the chance to learn about it from an academic point of view," Hameeduddin notes. "About the Six-Day War, about the challenges that Judaism is confronting today, such as intermarriage and the Jews' affinity for the land." Speakers included the

institute's president, Rabbi Donniel Hartman, and journalist Yossi Klein Halevi.

The trip to Israel was an "extraordinary experience," the mayor says, emphasizing that as far as he is concerned, the apparently violent incident – which occurred during prayers in Al-Aqsa Mosque – was merely an attempt by Muslim activists to generate headlines. "There were two men who harassed the women of the delegation while they were praying in the mosque," he recalls. "They walked around with a camera and documented the attempt to embarrass them, asked all kinds of questions and deliberately bothered them. At one point I went over and told them to leave the women in peace. Between one thing and another, they claimed I broke their camera and hit them."



**Teaneck Mayor Mohammed Hameeduddin, right, and his deputy, Elie Katz.** Credit: Natan Dvir

Despite the singularity of Teaneck – a mixed bag of a city with 30 percent Jews, a similar proportion of blacks and a Muslim mayor, all of whom live together harmoniously – there is nevertheless one common denominator with Israel, with its recent furor over the opening of supermarkets on Shabbat.

Teaneck has no restrictions about businesses opening on Shabbat, but anyone who wants to, say, buy a washing machine or a pair of shoes on the Christian Sabbath, Sunday, will have to travel far beyond the boundaries of Bergen County, New Jersey. The reason: a blue law that prohibits all commerce on Sunday, other than the sale of food. Blue laws – which date from the colonial period in America – now exist in only two counties in the entire United States, one of them being Bergen. This is particularly onerous for the city's religiously observant Jews, as it denies them the opportunity to shop locally on the weekend. Nevertheless, and despite the law's archaic character, the last attempt to annul it in a referendum, in the 1980s, was rejected by a majority of some 35,000 residents.

Hameeduddin tries to avoid taking a stand on the issue, but his deputy, Katz, takes a decidedly contrary view. "I think stores should be given the option to open on Sunday," he says. "After all, Amazon will deliver to me whatever I want on Sunday. I think a lot of the business community is suffering; they can't compete. But there are a few reasons why people don't want it, some because of religious reasons, some because their towns are overwhelmed with cars and malls, and some don't want it because they represent malls from other counties that now get the benefit of having my wife going to their malls on Sunday."

Just before our conversation ends, as Shabbat will soon begin, I ask Hameeduddin to enumerate the greatest difficulties faced by the small local Muslim community of a few hundred. "The challenge for the Muslim community is the same as for every other community in Teaneck: Everybody is talking about affordability and services," he says, noting the high annual property taxes, among the highest in New Jersey, of about $10,000 per family.

And what are the challenges for the Jews? "The biggest challenge is the snow," Katz says, laughing, but immediately turns serious and also cites economics, but of a very different sort: "It's very expensive to live a Jewish life [here]. Jewish private schools, we are talking about between $16,000 to $18,000 per year for elementary school and $24,000 to $30,000 for high school per year. And on top of that you have Jewish camps and kosher food."

Multiply those figures by 12 years of schooling times three-four children on average per family and you have the price of a new apartment in Manhattan. But despite this, as the local press has reported lately, and as Katz also points out, the demand to live in town keeps growing, attesting to the economic resilience of the local Jewish community.

I ask Hameeduddin whether he would like to see more Jews in the public school system. "My kids are going to public schools," he replies.

"Everybody has the choice to make about what education they want for their children. I don't have private schools like the Jewish schools, and I couldn't afford to spend $50,000 to $60,000 for a private school. But what I have here is a good public school. So for us, religious education comes after school."

All in all, then, not only is the transformation complete, but it possibly succeeded beyond expectations. Seventy years after the first Jews started to move to Teaneck, and almost 60 years after segregation in local schools was eliminated, there are once again two separate education systems in the city – even if this time around it's not a matter of discrimination but the free choice of the people.

**Click the alert icon to follow topics:**

🔔 Jews in America     🔔 Orthodox Jews     🔔 Jewish Diaspora     🔔 Jews and Muslims

Exhibit J

**REPORT**

# Audit of Antisemitic Incidents 2025



Matthew Hatcher/Getty Images

The aftermath of an arson attack at the Pennsylvania Governor's Mansion and Gov. Josh Shapiro's residence on April 13, 2025, in Harrisburg, Pennsylvania.

Published: 05.06.2026

## Introduction

The year 2025 was the third-highest year on record for antisemitic incidents since the Anti-Defamation League (ADL) began tracking them in 1979.

Each year, the ADL tracks incidents of antisemitic harassment, vandalism and physical assault in the United States in our annual Audit of Antisemitic Incidents. While incidents of harassment and vandalism decreased significantly in 2025 from record highs in 2023 and 2024, physical assaults this past year were higher than ever before. In 2025, there was an average of 17 incidents per day, compared to an average of eight incidents per day between 2020 and 2022.

More than two years after October 7, 2023, fundamentally transformed the landscape of antisemitism in America, the data make clear that while the fight against antisemitism and the work that ADL does has yielded measurable progress, the work of tracking, confronting and dismantling antisemitism demands our continued, unwavering vigilance. Rigorous, year-over-year tracking of antisemitic incidents is essential to understand the true size and scope of this threat, identify emerging trends, and measure which efforts are working and where more action is needed.





## Key Findings

**Antisemitic incidents decreased significantly in 2025 compared to 2024, but levels remained much higher than in years prior to 2023.**

This report catalogues quantitative trends in antisemitic incident data in 2025. But each incident represents a real person and a community impacted by antisemitism. View more information on each of the 6,274 incidents of antisemitism in the United States in 2025 below.

## Total Antisemitic Incidents in 2025

1/2

ADL counted 6,274 incidents of antisemitic harassment, vandalism & assault in 2025. Hover over each bubble to learn more. Click the arrow to view a breakdown by state and location type.

**In 2025, ADL tracked 6,274 antisemitic incidents in the United States. This was 33% lower than the 9,354 incidents tabulated in 2024, but five times higher than a decade ago.**

## Antisemitic Incidents | U.S.

Ten-Year Review | 2016 – 2025



# Antisemitic Incidents | U.S.

Incidents Per Month | 2024 vs. 2025

Hover over each bar to view incident totals.



NOTE: High levels of bomb threats against Jewish institutions as well as incidents related to the anti-Israel encampment movement on campuses contributed to particularly high levels of antisemitic incidents in early 2024.

*Helping to protect Jewish community institutions from elevated threats, ADL successfully advocated for a $30 million increase in federal Nonprofit Security Grant Program funding for fiscal year 2026.* **Click to learn more.**

## Incident Types

**Incidents of harassment and vandalism decreased but physical assaults, including two deadly incidents, remain on the rise.**

# Antisemitic Incidents | U.S.

Incidents by Type | 2024 vs. 2025

Physical assaults rose from 196 in 2024 to 203 in 2025. Incidents of antisemitic harassment decreased by 39% to 4,003 incidents. Vandalism decreased by 21% to 2,068 incidents.



In 2025, three people were killed in antisemitic attacks. At least 300 people—children, parents, colleagues, and friends—were victimized by these assaults. It was the first year since 2019 in which Jewish people were murdered in the United States in antisemitic attacks.

A shooting at the Capital Jewish Museum in Washington, D.C.; an attack with Molotov cocktails at a Run for Their Lives event in Colorado; a firebombing of Governor Josh Shapiro's residence in Pennsylvania while the first family was inside; a stabbing of a Jewish man on the streets of New York—these events represent four out of 32 antisemitic assaults involving a deadly weapon in 2025, up from 23 such incidents in 2024.

In seven of these incidents, victims were targeted for their real or perceived support for Israel. Violently targeting members of the Jewish community in America, regardless of their relationship with Israel, is antisemitic and inexcusable. The fact that antisemitic assaults have not decreased over two years since October 7, 2023, is a sobering reminder that this fight is far from over, and that the safety of Jewish communities depends on our collective willingness to meet this moment with urgency.

## Notable Violent Incidents

Click the cards to read more about each incident.

 

### Pennsylvania Governor's Mansion Arson

April 13, 2025

Pennsylvania

### Capital Jewish Museum Murders

May 21, 2025

Washington D.C.

### Colorado Firebombing

June 1, 2025

Colorado

### Brooklyn Stabbing

December 16, 2025

New York

*ADL is calling for our federal government to protect the Jewish community by strengthening the Nonprofit Security Grant Program at $1 billion and advancing comprehensive legislation to counter antisemitism.* **Click to learn more**.

## Where Antisemitism Occurs

### Colleges and Universities

Incidents decreased most significantly on college and university campuses, by 66% (from 1,694 to 583).

# Antisemitic Incidents | U.S.

Incidents by Location Type | 2024 vs. 2025

**Year**   2024   2025



The "Government Building" location type was added in 2025. Government buildings were previously counted under the "Public Area" location type.

The most significant factor contributing to the decrease in incidents on college campuses in 2025 was the decline of the anti-Israel encampment movement that drove the spike in incidents on campuses in the spring of 2024. Antisemitic incidents related to anti-Israel protests, including encampments, decreased by 83% on college campuses in 2025 compared to the year before.

Vandalism and assault incidents on college campuses also dropped steeply, by 51% and 72%, respectively. The anti-Israel protests that swept campuses in 2024 coincided with, and sometimes directly drove, antisemitic property destruction and physical violence. Efforts to address this activity appear to have had a meaningful impact, reducing not only the volume of antisemitic messaging on campuses, but also making those campuses safer for Jewish students and community members.

But the threat of antisemitism on college campuses is far from gone. Incidents on college campuses remained almost three times higher in 2025 than in 2021.

# Antisemitic Incidents | U.S.

Incidents on College Campuses by Day | 2023 – 2025

| 2023-2025 | **2023** | **2024** | **2025** |



*Combating campus antisemitism is a major priority for ADL. Since its 2024 launch, ADL's* Campus Antisemitism Report Card *has driven meaningful progress in how colleges address antisemitism, with the share of schools earning A and B grades rising significantly in 2026 as they increasingly adopt ADL-recommended policies.* **Click to learn more**.

## Jewish Institutions

Incidents at Jewish institutions decreased by 34% in 2025, from 1,702 to 1,129. In 2023 and 2024, synagogues experienced massive waves of bomb threats and swatting threats that disrupted Jewish life. In 2025, ADL recorded 59 bomb threats against Jewish institutions, down from 627 in 2024 and 996 in 2023.

While the volume of hoax bomb threats has reduced significantly, the Jewish community still faces an unprecedented threat environment. For example, a Chabad Jewish Center in Punta Gorda, Florida faced an arson attack in September. In June in San Antonio, Texas, a man wielding a knife threatened congregants near a synagogue, yelling: "Go back to your (expletive) country, you (expletive) Jews." In addition to the fatal shooting at the Capital Jewish Museum in Washington, D.C., these examples demonstrate the physical threats still facing the Jewish community at their places of worship, education and communal gathering.

*ADL works around the clock to detect and prevent threats against the Jewish community. Our Threat Monitoring Unit has identified and reported hundreds of potential threats, including potential mass casualty attacks, since its establishment in 2024.* **Click to learn more**.

## K-12 Schools

Unlike at most other location types, incidents at non-Jewish K-12 schools remained relatively stable in 2025 (825) compared to 2024 (860). Incident levels at other major location types are more often driven by organized group activity, both in anti-Israel and white supremacist spaces. At K-12 schools, by contrast, the vast majority of incidents involve individual, peer-to-peer

behavior, such as antisemitic bullying or students vandalizing classrooms with swastikas. The persistence of this trend underscores the urgent need for greater investment in educational programs that teach students, parents and educators about antisemitism and how to combat it.

*This is why we are calling for proactive and comprehensive approaches in K–12 schools through clear definitions, robust education, consistent enforcement and fact-based curricula.* **Click to learn more**.

## Themes and Trends

**Antisemitic incidents carried out by white supremacists continued to decrease, but groups still distributed propaganda widely.**

## Antisemitic Incidents | U.S.

Antisemitic White Supremacist Propaganda & Events | 2022 – 2025

In 2025, white supremacist groups carried out 495 antisemitic propaganda distributions and held public events on 21 occasions. Antisemitic white supremacist propaganda and event incidents were down 51% in 2025.

| White Supremacist Propaganda | White Supremacist Event |

# White Supremacist Propaganda & Events

Top three groups & networks that held antisemitic events or distributed antisemitic propaganda in 2025

 

**White Lives Matter**

**White Lives Matter**, a white supremacist network advocating for "white racial consciousness" placed stickers, dropped fliers and held small flash demonstrations to spread its message in 2025, with some propaganda reading "Juden Out" and "Resist Jewish Power."

In 2025, WLM was involved in 25 antisemitic white supremacist propaganda distributions and three antisemitic white supremacist events.

**Incidents related to Israel or Zionism made up a large portion of antisemitic incidents, remaining exceedingly elevated compared to pre-October 7, 2023, levels.**

Incidents with elements related to Israel or Zionism made up slightly less than half of all incidents in 2025 (2,847 or 45%), a smaller proportion than the 58% (5,452) Israel-related incidents in 2024. By comparison, between 2020 and 2022, only about 10% of antisemitic incidents were Israel- or Zionism-related.

The single most important factor in the decline in Israel-related antisemitic incidents was the lower level of antisemitic activity at rallies organized by anti-Israel groups. The number of antisemitic incidents that occurred at or in the vicinity of anti-Israel protests decreased by 67% between 2024 and 2025, reflecting a general decline in anti-Israel protest activity. These incidents do not include legitimate political protest of Israeli policies or general pro-Palestinian activism, which ADL is careful to distinguish from antisemitic rhetoric.

Nonetheless, anti-Israel protests were still the site of a concerning 856 antisemitic incidents, the majority (68%) of which were organized by one or more of the anti-Israel groups highlighted below. Protesters at these rallies often openly displayed support for violence against the Jewish community, including by glorifying U.S.-designated Foreign Terrorist Organizations like Hamas and Hezbollah that have an antisemitic ideology or have carried out antisemitic violence, and celebrating the Hamas-led

October 7, 2023, terror attack. In other antisemitic incidents that took place at anti-Israel rallies, protesters promoted classic antisemitic tropes or targeted Jewish institutions and harassed Jewish individuals.

## Antisemitic Incidents Related to Anti-Israel Rallies

Explore the number of rallies with antisemitic incidents for each group below. The images depict examples of antisemitic messaging that appeared at rallies sponsored by each group. More than two-thirds of antisemitic incidents related to anti-Israel rallies occurred at events hosted by one or a combination of these groups.





**Al-Awda**

Al-Awda organized 117 rallies where antisemitic incidents occurred. 79 (68%) of those rallies were co-sponsored with one or more groups on this list.

*ADL works to protect the Jewish community by representing victims of antisemitism, extremism and hate through strategic litigation designed to secure systemic change and hold bad actors accountable. Since 2023, ADL has filed more cases than in its entire 113-year history.* ***Click to learn more.***

## Incidents by State

**As in 2024, antisemitic incidents occurred in all 50 states and Washington, D.C.**

## Antisemitic Incidents | U.S.

### Incidents by State | 2025

In line with trends in past years, the states with the most antisemitic incidents in 2025 were New York (1160), California (817), and New Jersey (687).

**Total number of Incidents**  3 ▭▭▭ 1,160



Within those states, major metropolitan areas with large Jewish populations continued to experience the highest levels of incidents, including New York City (860), Los Angeles County (398), and Bergen County in New Jersey (139).

## Antisemitic Incidents | U.S.

### Incidents by Type and State

Total ▾



2021                2022

## Top 10 States

*ADL urges every state to establish Nonprofit Security Grant Programs and dedicated antisemitism task forces to better protect vulnerable communities through coordinated funding, prevention efforts and comprehensive statewide strategies.* **Click to learn more.**

# Taking Action

## What We're Doing

### 1. Campus Report Card

ADL launched the Campus Antisemitism Report Card in 2024 to evaluate how colleges are addressing antisemitism, assessing schools across administrative actions, Jewish campus life and overall campus climate. Since its launch, the initiative has demonstrated clear and measurable impact, with the proportion of schools earning A and B grades rising significantly from 23.5% in 2024 to 61% in 2026. This progress has been accompanied by strong institutional engagement, as 89% of the 150 campuses assessed in 2026 actively collaborated with ADL to inform the report card. Notably, half of the 135 institutions evaluated in 2025 improved their grades in 2026, reflecting consistent upward momentum. Much of this improvement can be attributed to colleges and universities adopting ADL-recommended policies, including stronger enforcement measures, training on antisemitism, dedicated task forces and enhanced incident reporting systems.

### 2. Threat Monitoring

Every day, the ADL Center on Extremism Threat Monitoring Unit (TMU) races to protect the Jewish community from those who seek to harm it. Since its establishment in 2024, TMU has leveraged proprietary technology and expert analysis to identify and report more than 300 potential threats, including planned mass casualty attacks targeting Jewish institutions, schools and public spaces, as well as arson and hate crimes. This cutting-edge approach provides law enforcement and communal security partners with crucial intelligence needed to intervene before violence occurs and protect communities in the U.S. and around the globe.

**3. Funding to Protect Jewish Institutions**

ADL is helping to protect Jewish community institutions across the country. ADL drove a multifront campaign to fight for increased funding for the life-saving Nonprofit Security Grant Program (NSGP), which protect at-risk Jewish institutions and other vulnerable communities. ADL was able to secure a $30 million increase in NSGP funding for fiscal year 2026, which is directly helping Jewish community institutions secure themselves against elevated threats.

**4. Representing Victims of Antisemitism, Extremism and Hate**

ADL protects the Jewish community by representing victims targeted by antisemitism, extremism and hate. ADL's litigation work gives voice to victims who have been targeted, while delivering legal results that reach far beyond any individual legal matter. Our cases are designed to secure systemic change, deter discrimination, hold those who violate the law accountable and provide redress for victims. Since 2023, ADL has filed more cases than in the organization's entire 113-year history, including lawsuits on behalf of individuals who have faced antisemitic discrimination at business establishments, on campuses and at workplaces. ADL represents victims of the October 7 terrorist attack in their ongoing fight for justice, as well as those targeted by extremist groups. ADL has filed civil rights and legal complaints against colleges and public school districts to address antisemitic environments for Jewish students, including successfully resolved matters against the Concord-Carlisle Regional School District, Pomona College, Occidental College and the Santa Ana Unified School District.

## What We're Calling For (Policy Recommendations)

**1. Federal**

- **Strengthen and Fund the Nonprofit Security Grant Program (NSGP) at $1 billion.** The need to strengthen the Nonprofit Security Grant Program (NSGP) has never been more urgent. This bipartisan, lifesaving program provides synagogues, schools, and other at-risk institutions with the resources they need to prevent attacks before they occur, including security personnel, surveillance systems, reinforced infrastructure, and training. Its impact is well documented, helping protect communities in moments of real threat, including in Colleyville, Texas and Memphis, Tennessee. Recent attacks in Jackson, Mississippi and West Bloomfield, Michigan underscore that these threats are ongoing and nationwide. Yet demand continues to far outpace available funding, with nearly $1 billion requested in recent cycles and thousands of applicants left without support. ADL urges Congress to fund NSGP at $1 billion to ensure vulnerable communities have the protection they need.
- **Protect Safe Access to Houses of Worship.** Across the country, individuals seeking to pray in peace are increasingly facing targeted harassment, intimidation and obstruction outside their houses of worship. Addressing this growing challenge requires a clear and consistent federal framework that protects both religious freedom and free speech rights. The Safeguarding Access to Congregations and Religious Establishments from Disruption (SACRED) Act would establish 100-foot safe access zones around houses of worship, prohibiting conduct intended to intimidate or obstruct congregants while preserving the right to peaceful protest. ADL urges Members of Congress to support the SACRED Act (H.R. 8239) to protect safe access to houses of worship nationwide.

**2. State**

- **Establish and Fund State Nonprofit Security Grant Programs (NSGP).** ADL urges every state to establish and fund a robust Nonprofit Security Grant Program (NSGP) to help protect houses of worship, schools, community centers, and other

nonprofits at risk of hate-motivated violence. State programs are essential to complement federal funding and address persistent gaps in unmet need, particularly as demand for security resources continues to grow. By providing support for personnel, physical security enhancements, technology upgrades, and training, these programs ensure that vulnerable institutions have the tools they need to protect their communities. States should view these programs as a core component of their public safety strategy.

- **Enact Safe Worship Zone Laws to Protect Access to Houses of Worship.** Faith communities nationwide are facing a rise in harassment, intimidation and obstruction outside houses of worship that interferes with the right to free exercise of religion. States should enact carefully tailored "safe worship zone" laws that protect safe ingress and egress for worshippers. Model legislation should include clear definitions for basic access protections with fixed and floating buffer zones against conduct intended to intimidate or obstruct worshippers, and meaningful remedies. ADL urges every state to adopt safe worship zone legislation to protect religious freedom without restricting lawful speech.

### 3. Education

- **Strengthen Institutional Responses to Antisemitism on College Campuses.** Colleges and universities must take a comprehensive and sustained approach to addressing antisemitism, including by establishing clear policies, ensuring consistent enforcement of campus rules and regulations governing students, staff, faculty and campus organizations, and fostering education and awareness across the campus community. Institutions should maintain dedicated infrastructure, such as a Title VI coordinator or office, to handle complaints, ensure timely investigations, support affected students, and track patterns of bias. Clear accountability and transparency are essential to ensuring that antisemitic incidents are addressed promptly and effectively and that Jewish students are able to learn in a safe environment.
- **Promote Proactive and Comprehensive Approaches in K–12 Schools.** K–12 schools must take a proactive and comprehensive approach to addressing antisemitism, grounded in clear definitions, strong education, and consistent enforcement. Schools must ensure that rules and policies are clearly communicated, consistently enforced, and supported by transparent reporting and investigation procedures so that students, families, and staff have confidence that incidents of bias, harassment and discrimination will be taken seriously and addressed promptly. Training for educators and staff should be ongoing, ensuring educators are equipped to recognize and respond to antisemitism effectively. Curriculum and classroom instruction must remain fact-based and free from bias, particularly on topics related to Judaism, Israel, and the Holocaust.

## Methodology

The ADL Audit of Antisemitic Incidents is comprised of both criminal and non-criminal incidents of harassment, vandalism, and assault against individuals and groups as reported to ADL by victims, law enforcement, the media, and partner organizations. It is not a public opinion poll or an effort to catalog every expression of antisemitism.

Incidents are defined as vandalism of property, or as harassment or assault of individuals or groups, where either 1) circumstances indicate anti-Jewish animus on the part of the perpetrator, or 2) a reasonable person or group of people could plausibly conclude that they have been victimized due to their Jewish identity. Vandalism of Jewish cultural, educational, or religious institutions, as well as cemeteries, is generally included. Cases of robbery or theft are generally not included unless evidence of specific antisemitic animus is present.

Credibility and tabulation: ADL carefully examines the credibility of all reported incidents, including obtaining independent verification when possible. Each antisemitic action is counted only once, regardless of how many times it has been reported to

ADL. ADL counts certain "sprees" of incidents only once. For example, if antisemitic fliers from an extremist group are distributed to several homes in one city over the course of a weekend, this is considered one incident for the purpose of the Audit. Similarly, if multiple expressions of antisemitism take place at a single public event, those expressions are only counted as one incident.

Online Content: The Audit includes cases where individuals or groups are harassed online via antisemitic content in direct messages, on listservs, or in social media settings where they would have the reasonable expectation of not being subjected to antisemitism. The Audit does not attempt to assess the total amount of antisemitism online.

Incident Locations: Online incidents are logged under the location type of any associated institution, school or business (e.g., an antisemitic email sent to a synagogue is logged under Jewish Institution). If no institution is involved, online incidents are logged under the Online location type (e.g., a Jewish individual receiving antisemitic direct messages on social media). Incidents occurring in the vicinity of a location type may also be logged under that location type (e.g., a student harassed by a classmate across the street from their school is logged under K-12 School).

Israel and Zionism: ADL is careful to not conflate general criticism of Israel or anti-Israel activism with antisemitism. Legitimate political protest, support for Palestinian rights or expressions of opposition to Israeli policies are not included in the Audit. ADL's approach to Israel-related expressions comports with the International Holocaust Remembrance Alliance's (IHRA) working definition of antisemitism.

Since October 7, 2023, ADL began to include in the Audit certain expressions of opposition to Zionism, as well as support for violent resistance against Israel or Zionists that could be perceived as supporting terrorism or attacks on Jews, Israelis or Zionists.

When they occur during public activism (such as at protests), in confrontations between individuals or in the form of vandalism (such as graffiti), these expressions constitute an implicit attack on the great majority of American Jews who view a relationship with Israel to be an integral part of their religious, cultural and/or social identities. Such rhetoric can be traumatizing to many American Jews and has led to their exclusion from some spaces simply because of that element of how they define and express their Jewishness.

Physical scuffles or verbal insults between pro- and anti-Israel protestors are generally not included in the Audit unless the context suggests an antisemitic or anti-Zionist motivation for the assaults.

The Audit includes all cases of picketing of Jewish religious or cultural institutions for their perceived or real support for Israel. It does not include protests outside pro-Israel political activist groups or Israeli embassies/consulates unless those protests incorporate anti-Zionism, support for terrorism or classic antisemitic tropes.

Burning or desecrating Israeli flags is generally not included in the Audit.

Swastikas: The appearance of swastikas, which are generally interpreted by Jews to be symbols of antisemitic hatred, is included in the Audit. However, swastikas are generally not included in circumstances when they appear to be targeting a different minority group. Swastikas used as a means of political protest in non-Israel-related issues are also not included.

The Audit excludes the following types of incidents:

Antisemitic activities or statements that take place in private venues (e.g., at a private meeting) or in a manner that requires potential victims to "opt-in" to access them (e.g., by going to websites where unmoderated discussion occurs, looking at specific individuals' social media pages, etc.)

Instances of discrimination (e.g., a Jewish employee not receiving an accommodation for Rosh Hashanah), unless the discrimination is accompanied by verbal harassment as described above.

General expressions of white supremacy or other hateful ideologies, unless those expressions include overt antisemitic elements.

Data Sources:

The largest source of incidents included in the Audit are those reported to ADL directly by victims. ADL Center on Extremism researchers also monitor media reports and other online spaces for credible reports of antisemitic incidents and extremist activity.

In 2021, the Audit began incorporating reports of antisemitic incidents from other Jewish organizations with whom ADL has established partnerships. In 2025 those organizations included the AEPi, Chabad on Campus, Community Security Initiative (CSI), Community Security Service (CSS), Hillel International, Israel on Campus Coalition (ICC), Israeli American Council (IAC), Jewish Community Relations Council (JCRC), Jewish Federations of North America (JFNA), Jewish Grad Organization (JGO), Jewish on Campus, Secure Communities Network (SCN), Stop Hate in Schools, Union for Reform Judaism (URJ) and United Synagogue of Conservative Judaism (USCJ). We thank these organizations for their ongoing efforts to help encourage reporting of antisemitic incidents. All incidents are assessed by ADL for credibility and are deduplicated before being included in the Audit. Incident totals reported in the ADL Audit may differ from totals announced by partner agencies due to methodological differences pertaining to how incidents are defined and tabulated.

ADL appreciates the assistance of the over 380 law enforcement agencies that have shared information about antisemitic incidents and criminal activity with us since 2020.

## Donor Acknowledgements

The work of ADL's Center on Extremism is supported, in part, through the generosity of:

The ADL Lewy Family Institute for Combatting Antisemitism
Horace W. Goldsmith Family Foundation
Joyce and Irving Goldman Family Foundation
Lisa and Douglas Goldman Fund
Lillian and Larry Goodman Family Foundation
The Morningstar Foundation
The Charles and Mildred Schnurmacher Foundation

**A Way to Take Action**

**Protect Houses of Worship**

The bipartisan SACRED Act would create a buffer zone around houses of worship; click here to urge your U.S. Representative to co-sponsor this bill today.



Exhibit K

# WEINER LAW GROUP LLP

629 Parsippany Road
P. O. Box 0438
Parsippany, New Jersey 07054
(P) 973-403-1100         (F) 973-403-0010
www.weiner.law

**MARK A. TABAKIN**
**Member of the Firm**

███████████████████

November 16, 2023

<u>**VIA EMAIL AND CERTIFIED MAIL – R.R.R.**</u>
Keith Kaplan
████████████████

    **Re:**  **Conduct During October 18, 2023 Board of Education Meeting**

Dear Mr. Kaplan:

   Please be advised that this Firm represents the Teaneck Board of Education (the "Board"). I am writing to address your conduct during the recent Board meeting on October 18, 2023. Your conduct, including screaming and yelling, was disruptive and crossed the boundaries of constructive dialogue. The public participation portion of a Board meeting is a "limited public form." This means that the Board may regulate decorum and the general subject matter of public comments. The Board may prohibit profane or abusive language having no other purpose than to be threatening. The Board will not allow any speaker to commandeer public participation for personal and/or private grievances that have no nexus to the school community. The Board's goal is to cultivate a space where all voices are heard in a manner that advances a conducive and respectful exchange of ideas. However, reasonable time, place, and manner restrictions on speech are lawful, and the Board will not allow the type of behavior you exhibited. The Board takes no position with respect to the subject matter of your comments. Simply put, while the Board is sensitive to content-based prohibitions, in this situation, it was not what you said, it was how you comported yourself that is objectionable.

   Due to your overtly aggressive and threatening conduct directed towards students and Board members in connection with what can be characterized as a non-Board matter, you created actual and imminent disruption. Thus, you were asked to leave to prevent further interference with the meeting. District Policy 01167 regarding Public Participation in Board Meetings, provides as follows:

> The Board of Education recognizes the value of public comment on educational issues and the importance of allowing members of the public to express themselves on school matters of community interest.
>
>       * * *

Keith Kaplan                                                  November 16, 2023
**Re: Conduct During October 18, 2023 Board of Education Meeting**    Our File No.: TEA001
                                                             Page 2

Public participation shall be governed by the following rules:

5.  The presiding officer may:

    b.  Interrupt and/or warn a participant when the statement, question, or inquiry is abusive, obscene, or may be defamatory;

    c.  Request any person to leave the meeting when that person does not observe reasonable decorum;

    d.  Request the assistance of law enforcement officers in the removal of a disorderly person when that person prevents or disrupts a meeting with an act that obstructs or interferes with a meeting;

    e.  Call for a recess or an adjournment to another time when the lack of public decorum interferes with the orderly conduct of the meeting; and

    f.  Waive these rules when necessary for the protection of privacy or to maintain an orderly operation of the Board meeting. (emphasis added).

While the Board values public input and encourages active participation, it must be done in a manner that respects the rights and perspectives of others. To the extent you wish to participate in future public meetings, you must comport yourself to the Board's stated decorum guidelines. If you fail to do so, you will be removed. If you cannot comport yourself in an appropriate manner, you may be barred from attending future meetings.

Keith Kaplan                                                      November 16, 2023
**Re: Conduct During October 18, 2023 Board of Education Meeting**    Our File No.: TEA001
                                                                              Page 3

Please be guided accordingly.

Very truly yours,

WEINER LAW GROUP LLP

By: *Mark A. Tabakin*
Mark A. Tabakin
A Member of the Firm

MAT:DS

cc: Dr. Andre Spencer, Superintendent of Schools
    Sebastian Rodriguez, Board President
    Victoria Fisher, Vice-President

# Exhibit L

| | |
|---|---|
| **From:** | Victoria Fisher <vfisher@teaneckschools.org> |
| **Sent:** | Thursday, October 19, 2023 9:47 PM |
| **To:** | ▮▮▮▮▮▮▮ |
| **Subject:** | Re: Councilman Kaplan - Hate Speech |

Thank you for reaching out. I share your outrage with the behavior of too many of the adults last evening,  and I share your concern for our community and most of all, pur precious children.  We are following up as appropriate and I am confident the Superintendent will handle this.

Thank you,

Victoria

On Thu, Oct 19, 2023, 8:36 AM ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ > wrote:

Good morning,

As a member of the NJ community, legal community, and a long term resident of Bergen County, I am reaching out to you today in regard to Councilman Kaplan's reprehensible display of hate speech on his kippah at your last school board meeting.

There is no question that tensions are high due to the current state of affairs. As you are well aware, our school systems are being readily affected. Under the First Amendment, inciting imminent and lawless criminal activity is considered hate speech. To bring such rhetoric to a school board meeting is dangerous and administers the encouragement of war crimes to our youth. The youth is, and has always been, our future. Allowing hate speech like this on your school grounds does nothing but deter our children from bettering our society and world as a whole. I, among many others, strongly urge you to take action against Councilman Kaplan. At the very least, Mr. Kaplan should no longer be allowed on school grounds. Preaching hate does nothing but fear-monger, divide, and distress the populous. It is crucial that we as a society refrain from allowing this kind of display to be casually received.

I hope and trust that the appropriate action will be taken against Councilman Kaplan, the same way it would for a councilman or councilwoman of any other religious sector.

# Exhibit M

## Weiner Law Group LLP
### Attorneys at Law
629 Parsippany Road
Parsippany, NJ  07054 - 0438
(973) 403-1100 Fax (973) 403-0010
Tax ID ████

Teaneck Board of Education
Attn:  Haqquisha Q. Taylor, BA
651 Teaneck Road
Teaneck, New Jersey  07666

Invoice Date:      11/30/2023
Billed Through:    November 30, 2023
Client:            TEANECKBOE
Attorney:          MAT

| Client | Matter | Matter Name | Invoice Number | Invoice Amount |
|--------|--------|-------------|----------------|----------------|
| TEANECKBOE | TEA001 | General Legal Matters | 306034 | $4,453.53 |
| TEANECKBOE | TEA005 | Donald LaClair v. Teaneck Public School, I | 306035 | $10,815.20 |
| TEANECKBOE | TEA008 | Lottie M. Watson v. Taneck Board of Educ | 306036 | $332.93 |
| TEANECKBOE | TEA010 | Board Policies | 306037 | $4,655.00 |
| TEANECKBOE | TEA011 | Teaneck Ed. Assoc. - Arbitration - Docket | 306038 | $402.50 |

Invoice Totals:        $20,659.16

# *Weiner Law Group LLP*
## *Attorneys at Law*
629 Parsippany Road
Parsippany, NJ 07054-0438
(973) 403-1100 Fax (973) 403-0010
Tax ID: █████████

Teaneck Board of Education
Attn: Haqquisha Q. Taylor, BA
651 Teaneck Road
Teaneck, New Jersey 07666

Invoice #:   306034
Attorney:    MAT
Date:        11/30/23

RE:    TEANECKBOE - TEA001

General Legal Matters

| Date | | Description | Hrs | Amount |
|------|---|-------------|-----|--------|
| **Professional Time** | | | | |
| 11/02/23 | DS1 | Begin preparation of opinion letter re ████████████ ████████ | 1.70 | 297.50 |
| 11/03/23 | MAT | Email from █████ Re: case summary; preparation of case summary and case strategy conference with with attorneys | 1.00 | 175.00 |
| 11/03/23 | SJE | Initial review of █████ information | 0.40 | 70.00 |
| 11/07/23 | MAT | Telephone call and emails from/to ████████ | 0.40 | 70.00 |
| 11/08/23 | MAT | Prepare for, participate in Executive Session | 1.60 | 280.00 |
| 11/08/23 | MAT | Telephone conference with V. Fisher; email to/from ████████ ██████ | 0.40 | 70.00 |
| 11/09/23 | DS1 | Review and modify specified policies to bring to compliance with new standards assessed by Strauss Esmay policies and transmit to L.K. for consideration attention to upcoming Board policy meeting | 2.30 | 402.50 |
| 11/13/23 | AMR | OPRA - receive and review OPRA request and proposed list; confer with colleague; confer with client representative and provide guidance; confer with BA and assistant, review list, provide guidance; save documents and notes to file | 1.80 | 315.00 |
| 11/13/23 | MAT | Correspondence to K. Kaplan; case strategy conference with CRW Re: DeRuith; case strategy conference with AMR Re: OPRA | 0.60 | 105.00 |
| 11/14/23 | AMR | OPRA matter – vendor records – continue receipt and review request and records, emails and confer with assistant and BA, review records, receipt and review final production | 1.80 | 315.00 |
| 11/15/23 | DGM | Review of electronic correspondence from Board Architect relating to ████████████████████ Follow-up review of ████ ████████ Review of prior bidding documents; Review of electronic correspondence and Advertisement; Follow-up outline of Front End Documents and Instructions to Bidders; Outline and update Construction Documents, Instruction to bidders, construction contracts and other front end documents | 1.70 | 297.50 |

**Weiner Law Group LLP**
**TEA001**                                        Invoice #:  306034                           Date:   11/30/23
                                                                                              Page:   2 of 3

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 11/16/23 | DGM | Review and finalize Instruction to Bidders; Review and assemble front end documents; Prepare electronic correspondence to Board Architect relating to same | 1.30 | 227.50 |
| 11/16/23 | DS1 | Telephone conference with Dr. Spencer re subsequent updates to letter prepared re ███████ | 0.40 | 70.00 |
| 11/16/23 | DS1 | Research re requirements of resident district boards of education to ███████ | 3.10 | 542.50 |
| 11/17/23 | DGM | Review of electronic correspondence from Board Architect relating to ███████; Follow-up review; Prepare outline in preparation for bid review. | 0.60 | 105.00 |
| 11/22/23 | SJE | Review correspondence and drawing from DOT | 0.30 | 52.50 |
| 11/27/23 | DS1 | Draft and prepare letter to parents and guardians of ███████ | 2.60 | 455.00 |
| 11/28/23 | DS1 | Conduct final review of ███████ transmit to Board staff for review | 0.40 | 70.00 |
| 11/28/23 | DS1 | Conference call with Dr. Spencer re ███████ | 0.60 | 105.00 |
| 11/28/23 | MAM | Case strategy conference with MAT and DS re: ███████ | 0.40 | 70.00 |
| 11/29/23 | AMR | OPRA - initial receipt of OPRA and email with link to records, review, respond requesting access, will not download; emails | 0.80 | 140.00 |
| 11/30/23 | AMR | Work on OPRA request re: board member email accounts, download and review zip files; email with client representative, guidance provided | 1.20 | 210.00 |

|  | **Total Professional Time** | **25.40** | **$4,445.00** |
|--|--|--|--|

| 11/30/23 | Postage and/or Certified Mail | 1.00 | 8.53 |
|--|--|--|--|

|  | **Total Disbursements** | **$8.53** |
|--|--|--|

Weiner Law Group LLP
**TEA001**

Invoice #:  306034

Date:  11/30/23
Page:  3 of 3

## Attorney Summary

| | | Hrs | Rate | Amount |
|---|---|---|---|---|
| AMR | Rizzuto, Anne Marie | 5.60 | 175.00 | $980.00 |
| DGM | Murphy, Denis G | 3.60 | 175.00 | $630.00 |
| DS1 | Santiago, Dianna | 11.10 | 175.00 | $1,942.50 |
| MAM | Miller, Margaret A | 0.40 | 175.00 | $70.00 |
| MAT | Tabakin, Mark A | 4.00 | 175.00 | $700.00 |
| SJE | Edelstein, Stephen J | 0.70 | 175.00 | $122.50 |

## Billing Summary

| | |
|---|---|
| Total Professional Time | $4,445.00 |
| Total Costs and Disbursements | +$8.53 |
| Total New Charges This Invoice | $4,453.53 |

**TO ASSURE PROPER CREDIT TO YOUR ACCOUNT PLEASE INCLUDE THE INVOICE NUMBER ON YOUR REMITTANCE CHECK.**